UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BLAKES, et al., for themselves and on behalf of similarly situated others, | ) ) ) ) | 11 CV 336 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| ILLINOIS BELL TELEPHONE COMPANY, d/b/a AT&T Illinois, | ) ) ) ) | |
| | ) | June 15, 2011 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiffs James Blakes, Steven Clark, Herman Deckys, Bradley Hunt, Phillipe Porter, Ernest Roberts, Jr., and Larry Williams ("Plaintiffs") are currently or were formerly employed by Illinois Bell Telephone Company ("AT&T Illinois") as cable splicers. Plaintiffs have sued AT&T Illinois under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, alleging that it failed to compensate them for work they performed after the end of their shifts and during their lunch breaks. Plaintiffs seek to pursue their FLSA claims as a collective action, and accordingly, they have filed the current Motion in Support of Judicially Supervised Notice Under 29 U.S.C. § 216(b). For the following reasons, the motion is granted in part and denied in part:

**Background**

AT&T Illinois is one of the largest providers of local telephone service in Illinois. It employs thousands of cable splicers whose job it is to install, maintain, and repair AT&T

Illinois's vast network of fiber optics, cable, and telephone services. According to Plaintiffs, cable splicers typically begin their day at one of AT&T's garages, where they are assigned their job for the day. Once they have their assignment, they drive to their assigned work site where they often work with exposed wiring and open manholes. While present at the job site cable splicers are expected to keep the site secure to protect their own safety and that of the public. Cable splicers work an eight-and-a-half-hour work day, typically from 7:00 a.m. to 3:30 p.m., with 30 minutes designated as an unpaid lunch break. Plaintiffs claim that they are paid on an hourly basis and that they are entitled to overtime pay for working in excess of 40 hours per week.

Plaintiffs' FLSA claims spring from their assertions that AT&T Illinois requires cable splicers to include a 30-minute lunch break on their daily time sheets, regardless of whether they took a lunch break. They assert that they often must drive from site to site during the work day, and that those travel obligations coupled with the requirement that they must maintain a safe work site mean they frequently are not able to take an uninterrupted lunch break. Plaintiffs also claim that AT&T Illinois requires them to complete their time sheets back at the garage at the end of a shift, but does not have enough computers at the garages to allow everyone to clock out before their shift ends. Plaintiffs assert that the computer shortage routinely prevents them from clocking-out on time, but AT&T Illinois does not pay them for completing their time sheets after the end of their shift. According to Plaintiffs, overtime must be pre-approved by a supervisor and AT&T Illinois routinely disciplines cable

splicers who seek overtime compensation that has not been pre-approved. As a result, Plaintiffs claim that cable splicers have been intimidated into not asking for overtime pay due to them.

Plaintiffs seek certification of a collective action under the FLSA so that they may represent other cable splicers who allegedly were denied overtime compensation. They assert that there are up to 1,500 cable splicers who have been subjected to the same allegedly unlawful compensation practices. In each of their declarations, Plaintiffs assert that, "[f]rom talking with people I know who worked at [AT&T Illinois], the pay practices described above are consistent for all similarly situated persons" employed by Illinois AT&T and based out of their garages. (See, e.g., R. 25-2, Deckys Decl. ¶ 37.) Accordingly, they seek to have this court authorize the mailing of a proposed notice of this lawsuit "to all persons currently or formerly employed as Cable Splicers by the Defendant from January 17, 2008, through the present." (R. 25-1, Pls.' Mem. at 18.) The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c).

**Analysis**

Section 216(b) of the FLSA authorizes plaintiffs to bring a collective action against an employer to recover unpaid overtime compensation for themselves and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b); *Rottman v. Old Second Bancorp, Inc.*, 735 F.Supp.2d 988, 990 (N.D. Ill. 2010). Although a collective action resembles a class action, "[t]he principle difference is that plaintiffs who wish to be included in a collective

3

action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). This court follows a two-step approach to determine whether potential class members are "similarly situated," *Rottman*, 735 F.Supp.2d at 990, a term which this court interprets leniently, *Jirak v. Abbott Labs., Inc.*, 566 F.Supp.2d 845, 848 (N.D. Ill. 2008). First, the plaintiffs must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003) (*quoting Tallion v. Kahler Rental Power, Inc.,* No. 02 CV 8882, 2003 WL 2006593, at *1 (N.D. Ill. April 29, 2003)). Once the plaintiffs meet this burden, the court may conditionally certify the class and authorize the plaintiffs to send notice of the case to the similarly situated plaintiffs, who then may opt-in to the collective action. *See Heckler v. DK Funding, LLC*, 502 F.Supp.2d 777, 779 (N.D. Ill. 2007). At the second stage, the parties typically engage in fact discovery, at the end of which the defendant may ask the court to de-certify the class if it can show that there is insufficient similarity to allow the named and opt-in plaintiffs to proceed with their claims on a collective basis. *Russell v. Illinois Bell Tel. Co.*, 575 F.Supp.2d 930, 933 (N.D. Ill. 2008). "If the Court determines that such similarities do not exist, it may revoke the conditional certification." *Heckler*, 502 F.Supp.2d at 779.

AT&T Illinois raises several objections to Plaintiffs' motion for judicially supervised notice. First, it argues that Plaintiffs have not shown that they are similarly situated to other potential class members because they have not pointed to a common policy or plan that is unlawful. It also argues—citing its own declarations and an expert report submitted in rebuttal to Plaintiffs' declarations—that Plaintiffs' claims require detailed individual analyses which render inappropriate even pre-conditional certification of the collective action. The parties also disagree over related points, such as whether the statute of limitations should be tolled with respect to potential opt-in plaintiffs and whether Plaintiffs' proposed notice is fair and accurate.

This court finds that Plaintiffs have made the modest showing of similarity required to justify sending judicial notice of this lawsuit to potential class members. Under the lenient review which the allegations and declarations enjoy at this stage, Plaintiffs have presented adequate evidence that the job duties of cable splicers are consistent throughout the eleven garages where they have worked, collectively, and that those similarities extend to other garages in AT&T Illinois's network. *See Persin v. Careerbuilder, LLC*, No. 05 CV 2347, 2005 WL 3159684, at *1, *4 (N.D. Ill. Nov. 23, 2005) (noting sufficiency of showing that potential plaintiffs "shared some fundamental employment characteristics that extend beyond job titles"). They have also presented adequate evidence that AT&T Illinois maintains an across-the-board unwritten policy that results in cable splicers working off-the-clock.

Plaintiffs' strongest point on this front is their assertion that they are required to maintain the safety of their work site throughout their presence at the assigned location, and that this requirement routinely forces them to work through their lunch break. As they point out, the Second Circuit has implicitly approved collective treatment of a similar claim when it held that an employer's requirement that a class of workers stay on site and maintain the security of their job location during their lunch hour violates the FLSA. *See Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 65 (2d Cir. 1997). In *Reich*, the court noted that even though workers were given time to eat during the day, their employer's requirement that they remain at the site and maintain its security made their lunch breaks compensable, because "in their absence, the company would have to pay others to perform those same services." *Id.* Although here the potential class members travel from site to site, they have shown that AT&T Illinois's cable splicers are required to maintain the security of a job site throughout their presence, which frequently requires them to work through their lunch break. (See, e.g., R. 25-2, Clark Decl. ¶ 24.) At this stage, that is sufficient to make a modest showing that cable splicers are subject to a common unlawful policy. *See Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 CV 2746, 2009 WL 140126, at *2 (N.D. Ill. Jan. 20, 2009).

On shakier ground, but not so tremulous as to preclude pre-conditional certification, is Plaintiffs' claim that cable splicers are similarly situated because their travel from work site to work site precludes them from taking a lunch break. Claims of lunch-break violations

that fall outside the category described in *Reich* appear to be somewhat controversial. For example, in *Jonites v. Exelon Corporation*, 522 F.3d 721, 725 (7th Cir. 2008), the Seventh Circuit characterized a class of employees with unpaid lunch-break claims as "hopelessly heterogeneous." But the court described the *Jonites* class as a "special case," where the plaintiffs sought overtime pay for their lunch breaks even though only some of the class members sometimes worked at lunch, and even though the class included employees who worked the night shift. *Id.* at 725-26.

After the *Jonites* decision, courts in this district have continued to allow pre-conditional certification of collective actions involving claims of unpaid lunch breaks where named plaintiffs submit substantially similar statements that they were required to work during lunch without logging the time. *See, e.g., Anyere v. Wells Fargo, Co., Inc.*, No. 09 CV 2769, 2010 WL 1542180, at *2 (N.D. Ill. April 12, 2010); *Russell*, 575 F.Supp.2d at 935. Even at the more stringent second-stage review, common questions regarding an employer's policies have been found to predominate where some but not all of the plaintiffs in an opt-in class claim to have performed work during their lunch break. *See Russell v. Illinois Bell Tel. Co., Inc.*, 721 F.Supp.2d 804, 812-13 (N.D. Ill. 2010). In *Russell*, not all of the plaintiffs claimed to have worked through lunch, but the court found the class suited to collective action treatment based on a class-wide claim that the employer's log-in requirements and rules regarding the completion of customer-service related tasks applied across the board. *Id.* at 813. Individualized questions regarding whether the policy required a given employee

to work into his or her lunch break or before or after his or her shift did not justify decertification. *Id.* Here, Plaintiffs have submitted adequate evidence that all cable splicers often are required to travel from job site to job site during the day, and that this requirement prevents them from breaking for lunch. (R. 25-2, Clark Decl. ¶ 24.) That evidence is sufficient to justify issuing notice of the uncompensated lunch-break claim.

Plaintiffs have also met their burden with respect to their claim that AT&T Illinois fails to pay them for time spent completing time sheets after their shift ends. According to the declarations submitted by the seven named plaintiffs, AT&T Illinois does not allow cable splicers to return to their assigned garage until 20 minutes before the end of their shift, despite the fact that they require more than 20 minutes to complete their time sheets on the garage computers. They assert that as a result of the shortage they routinely have to stay past the end of their shift, but are not paid for the additional time. According to AT&T Illinois, Plaintiffs have not shown that they are similarly situated to other cable splicers because not all of the garages use computers for time entry and even those which do have only used computers for a portion of the three-year claim period. (R. 35, Def.'s Resp. at 3.) But to the extent that it is shown that not all of the opt-in plaintiffs are impacted by the computer shortage, as long as they are all subject to the same policy with respect to unpaid lunch breaks, the claim with respect to post-shift work could proceed as a subset of the whole. *See Alvarez*, 605 F.3d at 449; *Russell*, 721 F.Supp.2d at 812-13. Accordingly, Plaintiffs are

authorized to send judicial notice of the uncompensated post-shift work aspect of Plaintiffs' claim.

AT&T Illinois's central argument in opposition to Plaintiffs' motion is that the only common policy is a lawful one. It asserts that company policy requires employees to report to their manager any work conducted outside their shift and to the extent that there have been deviations from that policy, they are best addressed on a case-by-case basis. But Plaintiffs are not claiming that AT&T Illinois's compensation policies are facially unlawful. Rather, they assert that AT&T Illinois enforces an unwritten de facto policy that discourages employees from seeking compensation for work performed outside their shift and that forces them to perform uncompensated work off-the-clock. Courts in this district "regularly allow" plaintiffs to pursue collective actions under the FLSA in these circumstances. *Madden v. Corinthian Colleges, Inc.*, 08 CV 6623, 2009 WL 4757269, at *2 (N.D. Ill. Dec. 8, 2009) (collecting cases); *Anyere*, 2010 WL 1542180, at *3. That is because regardless of what a company's official policy says, some evidence that a separate policy is enforced by "more than a rogue manager or two" supports a conclusion that similarly situated employees were subject to a common practice violating the FLSA. *Russell* 575 F.Supp.2d at 935.

AT&T Illinois also argues that Plaintiffs' claims require individualized inquiries which render collective treatment unmanageable and inappropriate. Specifically, AT&T Illinois argues that the court will have to evaluate how often each class member worked more than 40 hours per week without payment, why class members did not report compensable

9

time, and whether their supervisors knew they were working off-the-clock. AT&T Illinois makes the point that cable splicers are unsupervised for most of their work day, and it is up to them to exercise their discretion as to when and where to break for lunch. Accordingly, it reasons that a collective action will force individualized inquiries into how each class member exercised his or her discretion on any given work day during the claim period.

But as Plaintiffs point out, to the extent there are individual variances in time worked or damage computation, it is standard in FLSA cases for the claims to proceed through representational discovery. *See Russell v. Illinois Bell Tel. Co.*, No. 08 CV 1871, 2009 WL 1209025, at *1 (N.D. Ill. Apr. 30, 2009). At this stage, the court's task is simply to determine whether it can "envision a scenario" where the Plaintiffs and potential class members are similarly situated. *Persin*, 2005 WL 3159684, at *1. Plaintiffs have outlined a scenario in which cable splicers throughout AT&T Illinois's garages routinely eat lunch while maintaining the security of a job site, eat lunch while traveling from job site to job site based on pressure to fulfill expectations that they complete work at two sites in the course of an eight-hour shift, and frequently stay past the end of their shifts to complete time entry. That alleged common policy is enough to fulfill their modest burden for purposes of this motion. The possibility that the claims will eventually require a more individualized inquiry does not preclude sending a notice of their claims at this stage. *See Heckler*, 502 F.Supp.2d at 780-81; *Gambo v. Lucent Techs., Inc.*, No. 05 CV 3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005). Rather, once the issues have been fleshed out through discovery, all involved will be

in a better position to determine whether individualized issues will predominate over the common policies that Plaintiffs have outlined. *See Anyere*, 2010 WL 1542180, at *3.

In support of their argument that Plaintiffs are not similarly situated to each other or to potential class members, AT&T Illinois has submitted data it collected and analyzed showing—at least according to AT&T Illinois—that Plaintiffs routinely completed time sheets before the end of their shifts, took regular lunch breaks, and were paid overtime on 12-36% of the days they worked. (R. 35, Defs.' Resp. at 15, 19-24.) This court has considered that data to determine whether it defeats Plaintiffs' modest showing of substantial similarity to other potential class members. *See Howard*, 2009 WL 140126 at *5 (noting that the court is not required to accept as true plaintiff's allegations at stage one and can consider oppositional affidavits). But AT&T Illinois's data speaks to the merits of Plaintiffs' claims rather than the appropriateness of pre-conditional certification. Essentially, the purpose of the data is to show that Plaintiffs' declarations are not credible. But credibility is not an appropriate stage-one consideration because it is difficult to make a thorough or accurate credibility assessment without the benefit of full discovery. *See Anyere*, 2010 WL 1542180 at *3; *Russell*, 575 F.Supp.2d at 937. The problem is illustrated by AT&T Illinois's expert report, which attempts to show that Plaintiffs are not similarly situated based on any common policy because, according to the report, they have all received some overtime compensation, routinely clock-out before the end of their shifts, and have been tracked on a GPS device at restaurants for more than their half-hour lunch break. (R. 36-1, Johnson Report ¶¶ 17-18,

11

41.) But as Plaintiffs point out, the expert bases this assertion on data from one-week periods for each of the named plaintiff, but the chosen week is inconsistent. Plaintiffs suggest that the weeks may have been cherry-picked to paint them in the worst possible light. Without the benefit of mutual discovery, it is impossible to evaluate whether the report is based on an accurate portrait of Plaintiffs' typical work weeks. At the second stage, after both sides have had the chance to flesh out the report's conclusions, Plaintiffs will be held to a more stringent evidentiary standard and AT&T Illinois will have the chance to present similar data to argue that the class should be de-certified. *See Gambo*, 2005 WL 352485, at *5.

Finally, at least with respect to the similarly-situated analysis, AT&T Illinois argues that Plaintiffs have not met their burden because their only evidence that employees at other garages are subjected to the same alleged policies is hearsay, and because they have not submitted any evidence showing that other individuals are interested in opting-in. The latter argument can be disposed of quickly; plaintiffs are not required to show at the first stage of certification that other employees are interested in opting-in. *See Heckler*, 502 F.Supp.2d at 780. As the *Heckler* court explained, to require such a showing:

> would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs.

*Id.* As for the hearsay argument, because the current motion is non-dispositive and filed without the benefit of discovery, Plaintiffs "need not come forward with evidence in a form

12

admissible at trial." *Howard*, 2009 WL 140126 at *3 (quotation omitted); *see also Anyere*, 2010 WL 1542180, at *2 n.1. Although Plaintiffs will be held to a higher standard at the second stage, for now it is enough that their assertions are based on their personal knowledge. *Howard*, 2009 WL 140126, at *3. For all these reasons, this court finds that judicially supervised notice of Plaintiffs' claims is warranted at this time.

Turning to the parties' arguments related to the logistics of issuing notice, Plaintiffs assert that they are entitled to expedited discovery of the potential opt-in plaintiffs' names, addresses, phone numbers, email addresses, and social security numbers. AT&T Illinois first argues that Plaintiffs' counsel is not entitled to any of this information because notice can and should be facilitated by a third-party administrator. But courts in this district have regularly rejected that argument, finding that a protective order can allay any privacy concerns caused by furnishing contact information to named plaintiffs' attorneys. *See Anyere*, 2010 WL 1542180, at *4; *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554-55 (N.D. Ill. 2008).

AT&T Illinois asserts that even if Plaintiffs' counsel send the notice themselves, there is no need to supply potential plaintiffs' phone numbers, email addresses, or social security numbers. According to AT&T Illinois, the individual privacy interests attached to that information outweigh its utility to Plaintiffs' counsel in issuing the notice. This court agrees. Although Plaintiffs are entitled to discover potential plaintiffs' names and addresses, *see Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989), "providing sensitive

13

personal data such as a social security number is not to be done lightly," *see Vennet v. American Intercont'l Univ. Online*, No. 05 CV 4889, 2006 WL 908030, at *3 (N.D. Ill. April 5, 2006). Email addresses and phone numbers may not be as sensitive as social security numbers, but their release also carries privacy concerns and that information is not crucial to providing notification. Accordingly, at this stage AT&T Illinois will only be required to turn over the names and addresses of people who meet the class description. *See Howard*, 2009 WL 140126, at *9. To the extent that notices are returned as undeliverable, Plaintiffs may request individual phone numbers on a rolling basis, subject to production under a protective order limiting the use of that information to tracking purposes. *See Vennet*, 2006 WL 908030, at *3 (noting that "people who appear to have no or little interest in joining the lawsuit" should not "be faced with the possibility of being contacted by telephone or having additional personal information released").

As for the form of the notice itself, the parties present a litany of disagreements. Plaintiffs attached a proposed notice to their motion, but rather than presenting their own proposed notice, AT&T Illinois argues that the court should "reject Plaintiffs' proposed notice form," and "allow the parties a reasonable period of time to meet and confer regarding the agreed-upon form and method of notice." (R. 35, Def.'s Resp. at 29, 31.) Understandably, given the ever-running statute of limitations, Plaintiffs object to that proposal. Along with their reply, they filed an amended proposed notice which accounts for some, but not all, of AT&T Illinois's objections to the original notice. Plaintiffs ask that

rather than delaying the issuance of notice by allowing additional time for the parties to meet and confer, this court should resolve the outstanding disagreements now. Because the parties had ample time to negotiate the terms of the proposed notice after Plaintiffs filed their motion, this court agrees that efficiency is best served by resolving the remaining disputes without further delay.

The first dispute remaining in light of Plaintiffs' revised proposed notice is the parties' disagreement over the proposed statement regarding retaliation. The dispute is based on needless hair-splitting. Plaintiffs drafted the line, "Illinois Bell/AT&T has taken the position that it will not retaliate against anyone for participating in this case," whereas AT&T Illinois would prefer the line, "Illinois Bell will not retaliate against anyone for participating in this case." (*See* R. 35, Def.'s Resp. at 30.) According to AT&T Illinois, their version is "less accusatory" and "correct." (Id.) Plaintiffs' explanation for their insistence on their version is unconvincing. They say the difference is subtle but important because "Plaintiffs' proposal tells the putative class member that Illinois Bell has affirmatively taken the position that it will not retaliate, while Illinois Bell's suggestion is simply a statement." (R. 41-1, Pls.' Reply at 23.) This court finds it hard to see the difference in that distinction and views AT&T Illinois's proposed phrase as the more straight-forward of the two proposals. Accordingly, Plaintiffs are directed to replace the retaliation line with AT&T Illinois's version.

The parties also dispute the fairness and accuracy of Plaintiffs' proposed description of the relevant unpaid work. AT&T Illinois objects to proposed language saying that the unpaid work at issue "includes, but is not limited to," working through meal breaks and completing time-sheets post shift. (R. 35, Def.'s Resp. at 30.) They argue that this language is over-inclusive because the only claims subject to conditional certification are the unpaid lunch-breaks and post-shift work completing time sheets. Plaintiffs argue that excluding the limiting language "may mislead a putative class member into not opting into the case because he does not believe it applies to him." (R. 41-1, Pls.' Reply at 23.) But it is Plaintiffs' proposed language that is likely to mislead. This case is about unpaid lunch breaks and time spent post-shift completing time sheets. Plaintiffs' language suggests that it is about any possible FLSA claim under the sun. Thus this court agrees with AT&T Illinois that the phrase "but is not limited to" should be excised from Plaintiffs' description of the unpaid work at issue.

Next AT&T Illinois argues that the proposed notice should be revised to include language addressing the obligations of the class members should they choose to opt-in, including the possibility that they will have to respond to written discovery, sit for depositions, and testify at trial. Plaintiffs argue that such language is overly intimidating and misrepresents the costs and benefits of opting-in to the action. They suggest excluding the language from the notice, but assert that they will provide the information to any potential opt-in plaintiffs who contact Plaintiffs' attorneys. But Plaintiffs' attorneys will be able to

16

explain the risks and benefits to potential opt-in plaintiffs who contact them with concerns about their obligations regardless of the notice language. Because the proposed language is both fair and accurate, Plaintiffs must add the following sentence to the revised proposed notice: "While the suit is proceeding, you may be required to provide information, have your deposition taken, and testify in court." *See Petersen v. Marsh USA, Inc.*, No. 10 CV 1506, 2010 WL 5423734, at *6 (N.D. Ill. Dec. 23, 2010).

AT&T Illinois also argues that the notice should include a more descriptive explanation of its position in this case, including "its contention that Plaintiffs were paid for all time worked, that Illinois Bell opposed conditional certification, and that Illinois Bell intends to move to de-certify the class at the appropriate time." (R. 35, Def.'s Resp. at 31.) The court would be more sympathetic to this argument had AT&T Illinois included the proposed language, rather than just citing its absence as a deficiency and asking for more time. As things stand, inclusion of a lengthy position statement is likely to create an unnecessarily long document that confuses potential plaintiffs about the role of the notice. Thus AT&T Illinois's request for more time to develop a position statement is denied.

Next the parties dispute whether the opt-in period should last 120 days as Plaintiffs propose or 60 days as AT&T Illinois proposes. There is precedent in this district for both. *Compare Shiner v. Select Comfort Corp.*, No. 09 CV 2630, 2009 WL 4884166, at *5 (N.D. Ill. Dec. 9, 2009) (applying 60-day opt-in deadline), *with Anyere*, 2010 WL 1542180, at *4 (allowing 120-day opt-in period). But in *Anyere*, the court allowed the longer opt-in period

because there the plaintiffs represented "that this length of time is necessary because the potential class is transitory and there is a high turnover rate, meaning that additional investigation may be required in order to contact potential opt-in plaintiffs." 2010 WL 1542180, at *4. Plaintiffs have not argued that the targeted class is particularly transitory nor explained their belief that AT&T Illinois will be unable to provide them with information sufficient to adequately provide notice. And their suggestion that they would use the time to make "reminder phone calls" bumps up against the court's finding that phone numbers should be used as a tracing tool rather than for direct solicitation. (R. 41-1, Pls.' Reply at 26.) Accordingly, the court agrees with AT&T Illinois that a 60-day period is a reasonable span of time for the opt-in period in this case.

AT&T Illinois lodges two final unresolved objections to the form of the proposed notice. First, they argue that there is no reason to post the notice in both English and Spanish. But they have provided no reason why the notice should *not* be posted in both languages, and given Plaintiffs' counsel's understanding that Spanish is the native language of a significant number of potential class members, issuing the notice in both languages will help ensure that its recipients are aware of and understand their rights with respect to this case. Second, AT&T Illinois argues that it "should not have to incur the burden and expense of posting notices throughout all of its garages." (R. 35, Def.'s Resp. at 31.) Their concern should be allayed by Plaintiffs' offer to "send its own people to the various garages to physically post the material if Defendant is averse to the minimal cost that would entail."

18

(R. 41-1, Pls.' Reply at 26.) Thus AT&T Illinois is ordered not to interfere with Plaintiffs' efforts to physically post the notice in the various garages wherever other employment-related postings are placed.

Lastly, the court notes that Plaintiffs argue that "any potential delay caused by the Defendant in the granting of this Motion, or in the production of accurate mailing information for the potential opt-ins," should result in this court tolling the statute of limitations for the opt-in plaintiffs. Plaintiffs are concerned that any delay has the potential to extinguish claims because the statute of limitations continues to run against the claims of unnamed plaintiffs until they opt-in to the suit. *See* 29 U.S.C. § 256. But as AT&T Illinois points out, the tolling of a statute of limitations is an extraordinary equitable remedy meant to be used sparingly. *Bensman v. United States Forest Serv.*, 408 F.3d 945, 964 (7th Cir. 2005). Plaintiffs have not pointed to any special circumstance that would support their request. To the extent that they have some supportable basis in the future to argue for equitable tolling, they are free to file a motion at a later stage. *See Vennet*, 2006 WL 908030, at *3.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion in Support of Judicially Supervised Notice Under 29 U.S.C. § 216(b) is granted in part and denied in part. It is granted to the extent that Plaintiffs are authorized to send the proposed notice, with the modifications described above, to the identified class of potential plaintiffs. Plaintiffs' motion is denied to the extent that they seek to have the statute of limitations tolled for plaintiffs who have yet to opt-in to the suit.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**