# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES BLAKES, STEVEN CLARK, HERMAN DECKYS, BRADLEY HUNT, PHILLIPE PORTER, ERNEST ROBERTS, JR., LARRY WILLIAMS, for themselves and on behalf of similarly situated others,<br><br>      Plaintiffs,<br><br>  v.<br><br>ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T Illinois,<br><br>      Defendant. | Case No. 11-cv-336<br><br>Hon. Judge Manning<br><br>Magistrate Judge Kim |

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' THIRD SET OF DOCUMENT REQUESTS AND RULE 30(b) NOTICE OF DEPOSITION SEEKING MANAGEMENT COMPENSATION AND EVALUATION INFORMATION

Defendant Illinois Bell Telephone Company ("Defendant" or "Illinois Bell"), by its attorneys, and pursuant to Federal Rule of Civil Procedure 26(c), respectfully submits this Motion for Protective Order Regarding Plaintiffs' Third Set of Document Requests and Rule 30(b)(6) Notice of Deposition Seeking Management Compensation and Evaluation Information. In support of this Motion, Defendant states as follows:

## I. INTRODUCTION

A protective order barring Plaintiffs' third set of discovery requests and Rule 30(b)(6) deposition notice is necessary because they seek information about Illinois Bell supervisors' and other managers' evaluations and compensation that is wholly irrelevant to Plaintiffs' claims. In addition to the invasive and burdensome nature of these requests – i.e., seeking all performance evaluations, bonus information, and "efficiency or productivity goals or efficiency of productivity expectations" for _60_ different management-level employees throughout the class period – and the fact such information is highly confidential and personal, the requested

information has nothing to do with the theories on which Plaintiffs moved for conditional certification and on which this Court authorized notice. As explained more fully below, the Court's conditional certification decision was premised solely on Plaintiffs' allegations of unpaid lunch breaks, tied exclusively to alleged safety policies confining technicians to the job site and technicians allegedly having to travel to different job sites throughout the day, and technicians allegedly having to complete electronic timesheets post-shift. Nonetheless, since the Court issued this decision, Plaintiffs' theory of their case has devolved from these limited grounds on which this Court based its decision into asserting any conceivable off-the-clock activity, resulting in classwide litigation becoming a shell of what this Court contemplated when it authorized notice. Plaintiffs' latest discovery requests and deposition notice appear based on the notion that how managers were compensated or evaluated ended up resulting in technicians working without pay, yet another theory that Plaintiffs never previously alleged and that this Court never concluded warranted conditional class certification. This protective order is necessary to stop the floodgates on Plaintiffs' discovery strategy of pursuing, to use this Court's term, "any possible FLSA claim under the sun" (Doc. No. 56, at 16),[1] and of litigating a brand new case than the one before the Court when it issued notice.

---

[1] *See infra*, p. 6.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs Move For FLSA Section 216(b) Conditional Certification Based On Discrete Allegations Of Working Through Lunch Breaks And Completing Electronic Timesheets After Their Shifts.

On April 22, 2011, Plaintiffs filed their Motion and Memorandum in Support of Judicially Supervised Notice under 29 U.S.C. § 216(b). (Doc. No. 34).[2] In this motion for conditional certification, Plaintiffs alleged only two types of uncompensated work: (1) time spent working through unpaid lunch breaks, and (2) time spent completing electronic timesheets in company garages after their shifts had ended.

In particular, with respect to alleged unpaid lunch breaks, Plaintiffs argued that they and other Cable Splicers have not been paid all overtime compensation due because they must "maintain[ ] security and safety on Illinois Bell's behalf." (Doc. No. 34, at 5). Plaintiffs also alleged that they are owed overtime compensation for lunch break work resulting from having to "travel from job site to job site, which eliminates any opportunity [they] may otherwise have had to an uninterrupted 30 minute lunch break." (*Id.*). The second type of alleged unpaid work was post-shift, electronic timesheet entry. (*Id.* at 4) ("Before they can leave for the day, Illinois Bell requires Cable Splicers to complete their time sheet for the day."). As Plaintiffs explain:

> As part of their job, Cable Splicers are scheduled to work at various job sites to which they must drive from their respective garages. *Id.* at ¶14. If they have to work at different job sites in a given day, they must travel between job sites. *Id.* at ¶18. The Cable Splicers must remain at the job sites which often include dangerous hazards for themselves and the public, including open manholes and exposed wiring. *Id.* at ¶15. The Cable Splicers are required to monitor the job sites to maintain security and to ensure their safety and the safety of their co-workers, and the public. *Id.* at ¶16. Once

---

[2] Plaintiffs had originally filed a notice motion on March 25, 2011. (Doc. No. 25). After the parties briefed the issue of the degree of pre-conditional certification discovery that should take place (*see* Doc. Nos. 29-33), Plaintiffs filed their motion again on April 22, 2011.

> work has begun on a job site, the Cable Splicers cannot take any
> breaks and must continue to work until the job is completed. *Id.* at
> ¶17. For example, once a man hole [sic] has been opened, it must
> remain open until all work is completed. *Id.* Once the Cable
> Splicers are done with their work, they must return to their garage
> and complete their time sheets before leaving for the day. (*Id.*).

According to Plaintiffs' conditional certification motion, employees do not report this alleged work and, as a result, the work is unpaid, because Illinois Bell allegedly only pays for pre-approved overtime and "regularly disciplines cable splicer's [sic] that put overtime on their time-sheet that was not pre-approved." (*Id.* at 5-6).

Thus, Plaintiffs did not seek conditional certification based on any alleged pre-shift work activities, on any lunch break work aside from that allegedly resulting from safety policies and travel among job sites, or on any post-shift work activities other than completing electronic timesheets. Nor did they allege that Illinois Bell's job performance or efficiency expectations compelled off-the-clock work. Instead, the only "policies" Plaintiffs cited were those pertaining to alleged safety and security policies once at a job site, requiring Cable Splicers to complete their timesheets, and "not [ ] paying for any hours worked in excess of 40 unless those hours have been pre-approved by a supervisor." (Doc. No. 34, at 4-5).

### B. This Court Preliminarily Certifies A Class And Authorizes Notice Based Exclusively On The Limited Theories In Plaintiffs' Conditional Certification Motion.

On June 15, 2011, this Court issued its Memorandum Opinion and Order on Plaintiffs' Conditional Certification Motion, granting Plaintiffs' Motion but imposing certain limits on the content of the notice and its method of distribution. (Doc. No. 56). The Opinion was clear as to the scope of Plaintiffs' allegations and the theories underlying their request for notice:

> Plaintiffs' FLSA claims spring from their assertions that AT&T
> Illinois requires cable splicers to include a 30-minute lunch break
> on their daily time sheets, regardless of whether they took a lunch

break. They assert that they often must drive from site to site during the work day, and that those travel obligations coupled with the requirement that they must maintain a safe work site mean they frequently are not able to take an uninterrupted lunch break. Plaintiffs also claim that AT&T Illinois requires them to complete their time sheets back at the garage at the end of a shift, but does not have enough computers at the garages to allow everyone to clock out before their shift ends. Plaintiffs assert that the computer shortage routinely prevents them from clocking-out on time, but AT&T Illinois does not pay them for completing their time sheets after the end of their shift. According to Plaintiffs, overtime must be pre-approved by a supervisor and AT&T Illinois routinely disciplines cable splicers who seek overtime compensation that has not been pre-approved. As a result, Plaintiffs claim that cable splicers have been intimidated into not asking for overtime pay due to them. (Doc. No. 56, at 2-3).

The Court then marched through each category of Plaintiffs' alleged uncompensated work. First, the Court found notice was justified on Plaintiffs' "assertion that they are required to maintain the safety of their work site throughout their presence at the assigned location, and that this requirement routinely forces them to work through their lunch break." (Doc. No. 56, at 5). Second, the Court acknowledged "[o]n shakier ground, but not so tremulous as to preclude pre-conditional certification, is Plaintiffs' claim that cable splicers are similarly situated because their travel from work site to work site precludes them from taking a lunch break." (*Id.* at 6). Finally, the Court determined that "Plaintiffs have also met their burden with respect to their claim that AT&T Illinois fails to pay them for time spent completing time sheets after their shift ends." (*Id.* at 8). As the Court concluded, "Plaintiffs have outlined a scenario in which cable splicers throughout AT&T Illinois's garages [1] routinely eat lunch while maintaining the security of a job site, [2] eat lunch while traveling from job site to job site based on pressure to fulfill expectations that they complete work at two sites in the course of an eight-hour shift, and [3] frequently stay past the end of their shifts to complete time entry. *That alleged common*

*policy* is enough to fulfill their modest burden for purposes of this motion." (*Id.* at 10) (emphasis added).

This Court's recognition that conditional certification was based on only these discrete theories of uncompensated work was further evidenced by how it resolved the parties' dispute over one element of the proposed notice form. Plaintiffs' proposed notice had included the following statement regarding their claims: "Such unpaid work *includes, but is not limited to*, working through meal breaks and completing time sheets at the end of the shift." (Doc. No. 34-1, at 1) (emphasis added). Defendant argued in its opposition brief that this "includes, but is not limited to" language was inappropriate because working through meal breaks and completing timesheets post-shift were the only forms of alleged unpaid work identified in Plaintiffs' Complaint and in their conditional certification motion. (Doc. No. 35, at 35). The Court agreed, making clear that "[t]his case is about unpaid lunch breaks and time spent post-shift completing time sheets. Plaintiffs' language suggests that it is about any possible FLSA claim under the sun." (Doc. No. 56, at 16).

### C. After Notice Is Issued, Plaintiffs' Theories Of Uncompensated Work Expand Beyond The Limited Allegations On Which They Moved For Conditional Certification And On Which This Court Authorized Notice.

Once discovery proceeded after this Court's ruling, Plaintiffs' theories devolved into a hodgepodge of alleged uncompensated activities – that is, into "any possible FLSA claim under the sun."

Although never alleged in Plaintiffs' Complaint or in their conditional certification motion, Plaintiffs and the opt-ins upon whom Defendant has served discovery have, to varying degrees, alleged a litany of alleged *pre-shift* activities for which they seek compensation including, *inter alia*, collecting supplies for their trucks, loading their trucks, reviewing job prints, talking to their managers, discussing their jobs with other technicians, deicing their trucks,

and emptying garbage. They also have testified to a comparable laundry list of post-shift activities apart from completing electronic timesheets, including, for example, talking with their managers, cleaning their trucks, putting away or collecting equipment, checking supplies, talking on the phone with engineers, and reviewing their day's activities with other technicians. Of course, the Court never certified a class or issued notice based on any of these alleged activities.

In addition, Plaintiffs have, post-conditional certification, devised a new theory of alleged uncompensated work tied not to safety policies, intra-site travel, or timesheet entry, but rather to Defendant's performance management processes. Plaintiffs' counsel shifted course when discovery showed they would be unable to establish that employees were routinely disciplined for reporting overtime and when their clients acknowledged that they were paid for all time they reported.[3] Plaintiffs' new theory appears to be that Cable Splicers work off-the-clock – before their shift, during unpaid lunch breaks, and/or after their shift – due to pressures to meet efficiency objectives, particularly under Defendant's Management Systems Operations Control or "MSOC" performance protocol that was implemented at Illinois Bell in early 2010.[4]

---

[3] Citations to deposition testimony in this case are denoted as "[Name] Dep. p.___," transcripts of which are attached as Exs. A - G. *See e.g.*, Smith Dep. p. 56 (Q: "And in the times that you reported, you would get paid overtime?" A: "If I reported it, yes."), pp. 78-79 (testifying that he is not aware of any other technician or himself ever asking to be paid for pre-approved overtime and *not* being paid for such time); Blakes Dep. p. 60 (Q: "Are you aware of any occasion in which you reported on your timesheet, either a manual timesheet or a timesheet entered electronically, that you worked more than 40 hours in a week and were not paid overtime?" A: "No."); Deckys Dep. p. 125 ("There is never a time that I worked overtime and did not get paid for it. No. I've always been paid my overtime that has been reported."); Roberts Dep. p. 352 (testifying that he has been paid for non-preapproved overtime when he reported it); Schilling Dep. pp. 136-38 (notwithstanding stating in interrogatory response that "in my experience, Illinois Bell has a strict policy of disciplining employees that seek to be compensated for work that was not pre-approved by management," testifying that he was never so disciplined and that he could not identify any other employees who were either); Palenske Dep. p. 143 (notwithstanding stating in interrogatory response that "in my experience, Illinois Bell has a strict policy of disciplining employees that seek to be compensated for work that was not pre-approved by management," testifying that he could not think of any employees so disciplined).

[4] *See e.g.*, Blakes Dep. pp. 181, 183 (testifying that he works through lunch at least two days per week to meet MSOC efficiency numbers, but acknowledging that sometimes he can complete jobs in the

(Footnote Continued)

### D. Plaintiffs Serve A Third Set Of Document Requests And A Rule 30(b)(6) Deposition Notice Seeking Compensation And Evaluation Information For 60 Different Illinois Bell Managers And Supervisors.

Thus far, Defendant has been more than accommodating in providing Plaintiffs discovery on these new theories, even though nothing about working pre-shift, post-shift, or through lunch to meet efficiency objectives factored into Plaintiffs' conditional certification motion or this Court's decision on that motion. Defendant has produced extensive information on MSOC, including Plaintiffs' and opt-ins' efficiency and productivity data. (Declaration of G. Abrams, attached hereto as Ex. H, ¶ 2). Plaintiffs also already have deposed an MSOC Coach (on May 3, 2012) as a fact witness on MSOC issues. (*Id.* ¶ 3). Nonetheless, Plaintiffs' kitchen-sink approach to their claims still continues.

To that end, on September 25, 2012, Plaintiffs served their third set of discovery requests (all of which were requests for production) and a Rule 30(b)(6) deposition notice. (Ex. H, ¶ 4, ex. 1, ¶ 5, ex. 2). Plaintiffs' document requests ask for "[a]ny and all evaluations" for 38 supervisors and 22 area managers. (Ex. H, ex. 1, ¶¶ 33-34). Plaintiffs also seek "[a]ny and all documents relating to any bonuses or team awards given, awarded or paid" to these same 60 supervisors and managers, "[a]ny and all documents relating to any guidelines or policies regarding bonuses or team awards" for first level supervisors and area mangers since 2008, and "[a]ny and all documents related to efficiency or productivity goals or efficiency or productivity expectations" for the above 60 supervisors and managers. (*Id.* at ¶¶ 35-38, 40-41).[5] Plaintiffs' deposition notice calls for testimony essentially on the same topics. (Ex. H, ex. 2).

---

time allocated without working through lunch); Deckys Dep. pp. 189-90, 199 (testifying that he underreports his time to avoid low efficiency numbers and avoid discipline); Olmstead Dep. p. 279 (testifying that she has misreported her time to increase her efficiency numbers since 2001).

[5] Defendant does not seek a protective order concerning Plaintiffs' Request for Production No. 39 as it pertains to technician information, not supervisors. (Ex. H, ex. 1, ¶ 39).

On October 25, 2012, Defendant served its Responses and Objections to Plaintiffs' third set of discovery requests, objecting to Plaintiffs' document requests as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (Ex. H, ¶ 6, ex. 3, pp. 3-9). Defendant that day also objected to Plaintiffs' Rule 30(b)(6) notice on the same grounds, as well as because the deposition Plaintiffs sought would result in invading third parties' privacy. (Ex. H, ¶ 7, ex. 4).

On October 30, 2012, at 12:30 p.m., pursuant to Local Rule 37.2 and Fed. R. Civ. P. 37(a)(1), Defendant's counsel (George Stohner and Greg Abrams) conferred by telephone with Plaintiffs' counsel (Walker Lawrence) regarding Plaintiffs' document requests and Rule 30(b)(6) deposition notice. When asked for the basis for these requests, Mr. Lawrence explained that it was his understanding from his own clients that managers are all evaluated in a uniform matter. Mr. Lawrence suggested that a "stipulation" that management was incentivized through job evaluations and/or compensation decisions to increase productivity might alleviate the need for some of this discovery. Defendant's counsel explained how they did not believe the requests called for discoverable information and were invasive. The parties were unable to reach an accord despite this consultation. (Ex. H, ¶ 8).

### III. ARGUMENT

Under Federal Rule of Civil Procedure 26(c), this Court has broad discretion to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including … forbidding the disclosure or discovery … [and] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (c)(1)(D); *see also Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998) (district courts have broad discretion on matters related to discovery) (quotations and citations omitted). With respect to the discovery Plaintiffs seek, it is essential to recognize that even

though the Federal Rules of Civil Procedure provide for liberal discovery, "the evidence must still be relevant." *See Silva v. Fortis Benefits Ins. Co.*, 437 F. Supp. 2d 819, 831 (N.D. Ill. 2006). Indeed, when Federal Rule of Civil Procedure 26(b)(1) was amended in 2000 to narrow the scope of discovery from that which was "relevant, to the subject matter of the case" to that which is "relevant to [ ] [a] claim or defense," the Advisory Committee "signal[ed] to the parties that they have no entitlement to discovery to develop new claims or defenses that are *not already identified in the pleadings.*" Advisory Committee Notes, 2000 Amendments to Rule 26, Subdivision (b)(1) (emphasis added); *see also Asher v. Baxter Int'l, Inc.*, No. 02 C 5608, 2007 WL 3223396, at *3 (N.D. Ill. Oct. 25, 2007) (explaining same).

Here, the evaluation and compensation information that Plaintiffs seek by way of their third set of discovery requests and Rule 30(b)(6) deposition notice have nothing to do with Plaintiffs' Complaint or the theories on which this case was conditionally certified. Instead, it is just the latest in Plaintiffs' ongoing attempt to create a new lawsuit from the one they filed and the one that this Court determined warranted notice. The Court therefore should deny such discovery. *See Asher*, 2007 WL 32223396, at *3 (denying request to produce documents because they were "irrelevant to the claims alleged in the complaint"); *Bassett v. Tennessee Valley Auth.*, No. 5:09-CV-39, 2010 WL 2044545, at *2 (W.D. Ky. May 21, 2010) (denying motion to compel filed post-FLSA conditional certification that sought information beyond the present claims in the action); *cf. Vakaharia v. Swedish Covenant Hosp.*, No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994) ("The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts – and no more.").

Compensation and job performance information also is unquestionably confidential and personal. Its disclosure would invade the privacy interests of non-parties to this case. *See e.g.*, *Spencer v. GM Corp.*, No. 1:06-cv-1197-DFH-WTL, 2007 WL 3171504, at **1-2 (S.D. Ind. Oct. 25, 2007). Further, because certain of the Plaintiffs and many opt-ins remain current Illinois Bell employees, it would be inappropriate for them to have access to such sensitive information about their own supervisors and managers. For example, such discovery could disclose those managers and supervisors undergoing counseling for poor performance or otherwise reveal information that no subordinate should be allowed to access about his or her manager. The Court should reject these intrusive requests, particularly when they are so far beyond the scope of anything Plaintiffs have ever alleged in this case. *See e.g.*, Fed. R. Civ. P. 26(1) (protective order may be issued to protect against "embarrassment" and "oppression").

Finally, it would be an unreasonable imposition upon Defendant to collect 60 different supervisors' and managers performance evaluations throughout the class period (amounting to hundreds of such evaluations), as well as any documents "relating" to bonuses or similar compensation provided to these individuals. Such a request arguably means producing not just all compensation records for 60 people for the three-year class period, but also all documents that may "relate" to such compensation, e.g., any documents discussing the supervisor or manager's compensation, any document reflecting achievements that may have factored into such compensation, and any documents evaluating the company's financial performance or any other metrics that may have influenced such compensation.[6] Likewise, it would be unreasonable for a deponent to be expected to testify to the same breath of compensation and evaluation information demanded in Plaintiffs' Rule 30(b)(6) notice. *See e.g.*, Fed. R. Civ. P. 26(b)(2)(c)(iii) (requiring

---

[6] The same issue animates Plaintiffs' requests for documents "related to" efficiency or productivity goals. (Ex. H, ex. 1, ¶ 40-41).

the Court to limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit"); *Carolus v. General Electric Co.*, No. 07-cv-00714, 2007 WL 4225802, at *3 (D. Col. Nov. 28, 2007) (granting motion for protective order staying any Rule 30(b)(6) depositions in order to "prevent undue expense and annoyance").

IV. **CONCLUSION**

At some point, Plaintiffs' evolving theories and concomitant new requests for still further discovery must reach an end. Plaintiffs' new demands for information well beyond the scope of anything ever before alleged or ever presented to this Court simply have gone too far and should be denied. Therefore, Defendant Illinois Bell respectfully requests that this Court enter an order pursuant to Rule 26(c) prohibiting the discovery sought in Plaintiffs' September 25, 2012 Rule 30(b)(6) Notice of Deposition and Requests 33-38, and 40-41 of Plaintiffs' Third Discovery Requests.

Respectfully submitted,

Illinois Bell.

By: /s/ Gregory P. Abrams
     One of their attorneys

George A. Stohner (*pro hac vice*)
Morgan, Lewis & Bockius LLP
300 South Grant Ave., Twenty-Second Floor
Los Angeles, California 90071-3132
213-612-2500
1111 Pennsylvania Ave., NW
Washington DC 20004
202-739-3000
gstohner@morganlewis.com


Gregory P. Abrams
Rita Srivastava
Morgan, Lewis & Bockius, LLP

77 W. Wacker Drive  
Chicago, Illinois 60601  
312-324-1000  
gabrams@morganlewis.com  
rsrivastava@morganlewis.com

**CERTIFICATE OF SERVICE**

There undersigned attorney hereby certifies that on October 30, 2012, a true and correct copy of the foregoing document was served by electronic means through the Court's ECF System to:

>Aaron Maduff
>Maduff & Maduff LLC
>205 North Michigan Avenue
>Suite 2050
>Chicago, IL 60601
>ABMaduff@madufflaw.com
>
>Walker Lawrence
>Maduff & Maduff LLC
>205 North Michigan Avenue
>Suite 2050
>Chicago, IL 60601
>WRLawrence@madufflaw.com

s/ Gregory P. Abrams