# Exhibit B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES BLAKES, STEVEN CLARK, HERMAN DECKYS, BRADLEY HUNT, PHILLIPE PORTER, ERNEST ROBERTS, JR., LARRY WILLIAMS, for themselves and on behalf of similarly situated others, | Case No. 11-cv-00336 |

JAMES BLAKES, STEVEN CLARK, HERMAN     |     Case No. 11-cv-00336
DECKYS, BRADLEY HUNT, PHILLIPE PORTER,     |
ERNEST ROBERTS, JR., LARRY WILLIAMS,     |
for themselves and on behalf of similarly situated     |
others,     |
    |
                   Plaintiffs,     |
    |
        vs.     |
    |
ILLINOIS BELL TELEPHONE COMPANY d/b/a     |
AT&T ILLINOIS,     |
    |
           Defendant.     |
_____ |


**EXPERT REPORT OF**
**JOHN H. JOHNSON, IV, PH.D.**

## I. INTRODUCTION

1.      I am the President and CEO of Edgeworth Economics, L.L.C. ("Edgeworth") and an Affiliated Professor at the Georgetown Public Policy Institute.  I have previously submitted an expert report in this matter dated May 13, 2011.[1]  My updated CV, which includes a list of my previous expert testimony and publications, is attached as **Appendix A** to this report.  Edgeworth Economics is compensated for my services in this matter at a rate of $575 per hour.  Staff members at Edgeworth Economics have assisted me on this matter and are charged at their standard rates ranging between $185 and $500 per hour.

2.      In my prior report I analyzed data for the 7 named plaintiffs.  I have now been provided additional data for 18 opt-in employees and for the 7 named plaintiffs.  In my previous report I was asked to: (1) determine whether the available data from Illinois Bell support the allegations in the Amended Complaint and in the declarations of the named plaintiffs; (2) assess whether a common methodology can be applied to these data to determine whether every member of the proposed class worked overtime due to the lack of a lunch break, inadequate time to fill out a timesheet, or other reasons, and whether those employees were paid for such overtime; and (3) analyze, based on the available data, the extent to which the experiences of the 7 named plaintiffs, with respect to overtime, support plaintiffs' claims that all members of the proposed class are "similarly situated."[2]

3.      For this report I have been asked by counsel for Illinois Bell to review the available data and assess whether any of the additional data changes my prior opinions.  In addition, I was asked to assess whether a common methodology, using the available data, can be used to determine:

- whether any plaintiff or individual who elected to opt-in performed uncompensated work after their shift in order to submit their electronic timesheet;

- whether any plaintiff or such individual was unable to take an uninterrupted lunch break in order to maintain a manhole; and

---

[1] Expert Report of John H. Johnson, IV, Ph.D., May 13, 2011 ("Johnson Report").  I incorporate by reference all the conclusions, analyses, and materials cited in my prior report.

[2] Ibid, p. 4.

- whether any plaintiff or such individual was unable to take an uninterrupted lunch break due to traveling to multiple job sites.

I was also asked to review the available data and assess whether technician "efficiency" scores vary substantially across the plaintiffs or opt-in employees and over time.

4.      In preparing my report, I, and economists under my direction, reviewed data and documents produced by Illinois Bell and by plaintiffs in this matter.  **Appendix B** lists the materials I considered in forming my opinions.  I reserve the right to revise my conclusions if additional information is provided to me or if additional research, reflection, or the correction of inadvertent errors leads me to change my opinion.

## II.   SUMMARY OF CONCLUSIONS

5.      Based on my analysis to date, I have reached the following conclusions:

- the available data indicate that plaintiffs' allegations regarding work conditions and overtime are not supported across individuals or across time for each of the opt-in employees or for the named plaintiffs;

- to determine whether each employee performed uncompensated work after their shift in order to submit their electronic timesheet, or was unable to take an uninterrupted lunch break due to maintaining a manhole or traveling between multiple job sites, it would be necessary to conduct an individualized review for each plaintiff and opt-in employee.  At a minimum this would include an analysis of multiple Illinois Bell electronic databases that track employees' daily work history, as well as paper records and individual recollections of the employees and their supervisors;

- the experiences of the plaintiffs and opt-in employees demonstrate a range of circumstances and differences with respect to daily work patterns, overtime worked, efficiency scores and other relevant factors; and

- nothing in the additional data I received leads me to alter the opinions I provided in my prior report.

## III. REVIEW OF AVAILABLE DATA

6.      I received data from several different AT&T databases, including time-keeping records ("JAM"), Vehicle Tracking System records ("VTS"), and records from the management system and operations control reports ("MSOC").  My analysis focused on the following datasets:

- JAM – tracks daily timesheet entries, by job and task; and

- VTS - contains information about where each technician's vehicle traveled and for how long.

- MSOC – contains information concerning each technician's efficiency.

7.      I describe each dataset further below.

### A. JAM Records

8.      I have received "JAM" records for 24 of the 25 plaintiffs and opt-in employees.[3]  The JAM database tracks daily timesheet entries for each technician, by job and task.  **Exhibit 1** shows a sample of the JAM data.  For each work day ("TR_WORKED_DATE") and employee ("LOGON_ID"), JAM includes the following relevant fields (among others):

- The amount of time worked ("AMT_HRS") per task ("TSK_NBR") and job ("UT_NBR");

- the date and time when the timesheet was first saved to the computer system (timesheet "CREATED_DATE");

- an identification code for the employee who first entered the timesheet into the system (timesheet "CREATED_BY");

---

[3] There was no JAM data provided for Hiram Anderson.

- the date and time when each line on a timesheet was first saved to the computer system (timesheet "CREATED_DATE_1");

- an identification code for the employee who first entered each line of the timesheet into the system (timesheet "CREATED_BY_1");

- the date and time when the timesheet was most recently maintained in the system (timesheet "MAINTAINED_DATE");

- an identification code for the employee who most recently maintained the timesheet in the system (timesheet "MAINTAINED_BY");

- codes for overtime and premium pay, holidays, and other attendance-related issues ("EC_CODE");

- codes that identify Functional Time Increments ("Func_ID"), and

- the scheduled start ("Start_Time") and end ("End_Time") times for the technicians' shifts.[4]

9.    As I discussed in my previous report, these data cannot be used to determine, on a class-wide basis, whether any given class member took a lunch break, submitted an electronic timesheet during the regularly scheduled work day, or was paid sufficient overtime.[5]  I address this issue further in Section IV below.

---

[4] Deposition of Gigi Severson (Severson Deposition), July 12, 2012, pp. 50-51; 155-171.
[5] Johnson Report, pp. 7-8.

**Exhibit 1**
**Sample of JAM Data**
**Bruce Blanchette, Week of January 11, 2010**

| TR_WORKED_DATE | LOGON_ID | CREATED_BY | CREATED_DATE | CREATED_BY_1 | CREATED_DATE_1 | MAINTAINED_DATE | MAINTAINED_BY | SCHED_HRS | TRL_LINE_NBR | AMT_HRS | TSK_NBR | EC_CODE | UT_NBR | FUNC_ID | START_TIME | END_TIME |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/11/2010 00:00:00 | BB2938 | BB2938 | 01/11/2010 17:18:32 | BB2938 | 01/11/2010 17:18:32 | 01/11/2010 17:18:32 | BB2938 | 8.00 | 1 | 1.00 | | | | | 0700 | 1730 |
| 01/11/2010 00:00:00 | BB2938 | BB2938 | 01/11/2010 17:18:32 | BB2938 | 01/11/2010 17:18:32 | 01/11/2010 17:18:32 | BB2938 | 8.00 | 2 | 7.00 | 34,671,434 | | 7433523 | SA100 | 0700 | 1730 |
| 01/11/2010 00:00:00 | BB2938 | BB2938 | 01/11/2010 17:18:32 | BB2938 | 01/11/2010 17:18:32 | 01/11/2010 17:18:32 | BB2938 | 8.00 | 3 | 2.00 | 34,671,434 | | 7433523 | SA100 | 0700 | 1730 |
| 01/11/2010 00:00:00 | BB2938 | BB2938 | 01/11/2010 17:18:32 | BB2938 | 01/11/2010 17:18:32 | 01/11/2010 17:18:32 | BB2938 | 8.00 | 4 | 0.00 | 34,671,434 | | 7433523 | SA711 | 0700 | 1730 |
| 01/11/2010 00:00:00 | BB2938 | BB2938 | 01/11/2010 17:18:32 | BB2938 | 01/11/2010 17:18:32 | 01/11/2010 17:18:32 | BB2938 | 8.00 | 5 | 2.00 | | EXTA | | | 0700 | 1730 |
| 01/12/2010 00:00:00 | BB2938 | BB2938 | 01/12/2010 15:10:19 | BB2938 | 01/12/2010 15:10:19 | 01/12/2010 15:10:19 | BB2938 | 8.00 | 1 | 1.00 | | | | | 0700 | 1530 |
| 01/12/2010 00:00:00 | BB2938 | BB2938 | 01/12/2010 15:10:19 | BB2938 | 01/12/2010 15:10:19 | 01/12/2010 15:10:19 | BB2938 | 8.00 | 2 | 7.00 | 34,671,434 | | 7433523 | SA100 | 0700 | 1530 |
| 01/12/2010 00:00:00 | BB2938 | BB2938 | 01/12/2010 15:10:19 | BB2938 | 01/12/2010 15:10:19 | 01/12/2010 15:10:19 | BB2938 | 8.00 | 3 | 0.00 | 34,671,434 | | 7433523 | SA700 | 0700 | 1530 |
| 01/13/2010 00:00:00 | BB2938 | BB2938 | 01/13/2010 15:08:12 | BB2938 | 01/13/2010 15:08:12 | 01/13/2010 15:08:12 | BB2938 | 8.00 | 1 | 0.50 | | | | | 0700 | 1530 |
| 01/13/2010 00:00:00 | BB2938 | BB2938 | 01/13/2010 15:08:12 | BB2938 | 01/13/2010 15:08:12 | 01/13/2010 15:08:12 | BB2938 | 8.00 | 2 | 1.00 | | | | | 0700 | 1530 |
| 01/13/2010 00:00:00 | BB2938 | BB2938 | 01/13/2010 15:08:12 | BB2938 | 01/13/2010 15:08:12 | 01/13/2010 15:08:12 | BB2938 | 8.00 | 3 | 4.00 | 34,671,432 | | 7433523 | SA100 | 0700 | 1530 |
| 01/13/2010 00:00:00 | BB2938 | BB2938 | 01/13/2010 15:08:12 | BB2938 | 01/13/2010 15:08:12 | 01/13/2010 15:08:12 | BB2938 | 8.00 | 4 | 0.00 | 34,671,437 | | 7433523 | SA711 | 0700 | 1530 |
| 01/13/2010 00:00:00 | BB2938 | BB2938 | 01/13/2010 15:08:12 | BB2938 | 01/13/2010 15:08:12 | 01/13/2010 15:08:12 | BB2938 | 8.00 | 5 | 2.50 | 34,671,437 | | 7433523 | SA700 | 0700 | 1530 |
| 01/14/2010 00:00:00 | BB2938 | BB2938 | 01/14/2010 15:08:16 | BB2938 | 01/14/2010 15:08:16 | 01/14/2010 15:08:16 | BB2938 | 8.00 | 1 | 1.00 | | | | | 0700 | 1530 |
| 01/14/2010 00:00:00 | BB2938 | BB2938 | 01/14/2010 15:08:16 | BB2938 | 01/14/2010 15:08:16 | 01/14/2010 15:08:16 | BB2938 | 8.00 | 2 | 0.00 | 34,671,468 | | 7433523 | SA711 | 0700 | 1530 |
| 01/14/2010 00:00:00 | BB2938 | BB2938 | 01/14/2010 15:08:16 | BB2938 | 01/14/2010 15:08:16 | 01/14/2010 15:08:16 | BB2938 | 8.00 | 3 | 4.00 | 34,671,468 | | 7433523 | SA711 | 0700 | 1530 |
| 01/14/2010 00:00:00 | BB2938 | BB2938 | 01/14/2010 15:08:16 | BB2938 | 01/14/2010 15:08:16 | 01/14/2010 15:08:16 | BB2938 | 8.00 | 4 | 3.00 | 34,671,468 | | 7433523 | SA700 | 0700 | 1530 |
| 01/15/2010 00:00:00 | BB2938 | BB2938 | 01/15/2010 15:09:25 | BB2938 | 01/15/2010 15:09:25 | 01/15/2010 15:09:25 | BB2938 | 8.00 | 1 | 1.00 | | | | | 0700 | 1530 |
| 01/15/2010 00:00:00 | BB2938 | BB2938 | 01/15/2010 15:09:25 | BB2938 | 01/15/2010 15:09:25 | 01/15/2010 15:09:25 | BB2938 | 8.00 | 2 | 7.00 | 34,531,679 | | 7561168 | SA100 | 0700 | 1530 |
| 01/15/2010 00:00:00 | BB2938 | BB2938 | 01/15/2010 15:09:25 | BB2938 | 01/15/2010 15:09:25 | 01/15/2010 15:09:25 | BB2938 | 8.00 | 3 | 0.00 | 34,531,679 | | 7561168 | SA203 | 0700 | 1530 |

Source:  ATTBLAKES 015406 – CONFIDENTIAL.xls

Note:  The JAM database includes a number of additional fields not shown here.

### B.  VTS Data

10.      Another potentially relevant source of data is AT&T's VTS database.  This database tracks the location and status (drive, idle, or stop) of the technicians' service trucks throughout the day.  The "VTS Details Report" (sample shown in **Exhibit 2**) aggregates the data by stop and shows the location of each stop, amount of time stopped (engine off) or idled, and driving time between stops.[6]

11.      As I show below, the VTS database demonstrates that the frequency of daily stops made by each technician varied by individual as well as across time for each technician.  These data are also insufficient to demonstrate the allegations that the plaintiffs and opt-in employees were unable to take an uninterrupted lunch break due to factors such as 1) maintaining a job site such as a manhole; or 2) traveling between multiple job sites.[7]  It is clear that a complete analysis of the entire relevant time period for all individuals who have consented to opt-in would require knowledge of the specific job schedule and locations for each technician, driving and idling time, and numerous other factors particular to the specific employee and day considered.  Determining whether these allegations were true, for even a single individual on any particular day would require individualized analyses.

**Exhibit 2**
**Sample of VTS Details Data**
**Herman Deckys, August 1, 2010**

| Technician | SBC VIN | Seq. # | WC/CO | Drive Time | Idle Time | Time of Stop | Dur. | Address | City | County | State |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DECKYS, HERMAN | | 1 | WC | | 0 | 8/1/2010 7:32 | 0 | 2300 - 2332 W 63RD ST | CHICAGO | COOK | IL |
| | | 2 | CO | 32 | 45 | 8/1/2010 8:48 | 4 | 6200 - 6299 S KILBOURN AVE | CHICAGO | COOK | IL |
| | | 3 | | 20 | 17 | 8/1/2010 9:29 | 50 | 4653 - 4699 W 85TH ST | CHICAGO | COOK | IL |
| | | 4 | | 19 | 53 | 8/1/2010 11:32 | 5 | 8550 - 8599 S CALIFORNIA AVE | CHICAGO | COOK | IL |
| | | 5 | | 3 | 1 | 8/1/2010 11:39 | 27 | 8550 - 8599 S WASHTENAW AVE | CHICAGO | COOK | IL |
| | | 6 | WC | 14 | 5 | 8/1/2010 12:27 | 30 | 6200 - 6295 S CLAREMONT AVE | CHICAGO | COOK | IL |
| | | 7 | | 12 | 14 | 8/1/2010 13:23 | 6 | 8550 - 8599 S ROCKWELL ST | CHICAGO | COOK | IL |
| | | 8 | | 2 | 0 | 8/1/2010 13:31 | 57 | 8550 - 8599 S CALIFORNIA AVE | CHICAGO | COOK | IL |
| | | 9 | | 8 | 17 | 8/1/2010 14:53 | 21 | 6601 - 6699 S WESTERN AVE | CHICAGO | COOK | IL |
| | | 10 | WC | 3 | 0 | 8/1/2010 15:17 | 0 | 2300 - 2332 W 63RD ST | CHICAGO | COOK | IL |

Source: ATTBLAKES 006811.xlsx

Note:  The "Technician" field is generally only populated in the first row of the source file; the field has been filled in based on the value in the first row.

---

[6] I have received VTS Detail Reports for 12 of the 25 plaintiffs and opt-in employees.
[7] Amended Complaint for Damages for Violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, filed February 9, 2011 ("Amended Complaint"), p. 5.

### C.  Management System Operations Control Reports

12.     The other data I analyze are AT&T's Management System Operations Control (MSOC) reports. These reports (sample shown in **Exhibit 3**) track, among other data, the "efficiency" of each employee's performance on a day-by-day and/or month-by-month basis, as measured by the time recorded by the employee to perform each job ("Earned" hours) relative to time estimated by AT&T to perform each job ("Demand" hours).[8]  The employees' efficiency ("%Eff") for each day is equal to the total Earned hours divided by the total Demand hours for all the jobs during that day.[9]

**Exhibit 3**
**Sample of MSOC Data**
**Emanuel Tripolitakis, July 2010**

| Date | Home Disp | Total ESM Performance | | | | | |
|------|-----------|--------|-------|-------|--------|--------|------|
| | | %Eff | %Util | %Prod | Earned | Demand | O/U |
| 1-Jul-10 | N | 85 | 100 | 85 | 6.8 | 8 | 1.2 |
| 2-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 3-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 4-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 5-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 6-Jul-10 | N | 102.25 | 100 | 102.25 | 8.18 | 8 | -0.18 |
| 7-Jul-10 | N | 94.75 | 100 | 94.75 | 7.58 | 8 | 0.42 |
| 8-Jul-10 | N | 84.63 | 100 | 84.62 | 6.77 | 8 | 1.23 |
| 9-Jul-10 | N | 68 | 100 | 68 | 2.72 | 4 | 1.28 |
| 10-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 11-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 12-Jul-10 | N | 88.63 | 100 | 88.62 | 7.09 | 8 | 0.91 |
| 13-Jul-10 | N | 92.25 | 100 | 92.25 | 7.38 | 8 | 0.62 |
| 14-Jul-10 | N | 106.13 | 100 | 106.12 | 8.49 | 8 | -0.49 |
| 15-Jul-10 | N | 88 | 100 | 88 | 7.04 | 8 | 0.96 |
| 16-Jul-10 | N | 65.63 | 100 | 65.62 | 5.25 | 8 | 2.75 |
| 17-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 18-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 19-Jul-10 | N | 51 | 100 | 51 | 6.12 | 12 | 5.88 |
| 20-Jul-10 | N | 77 | 100 | 77 | 6.16 | 8 | 1.84 |
| 21-Jul-10 | N | 49.75 | 100 | 49.75 | 3.98 | 8 | 4.02 |
| 22-Jul-10 | N | 116.88 | 100 | 116.87 | 9.35 | 8 | -1.35 |
| 23-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 24-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 25-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| 26-Jul-10 | N | 94.63 | 100 | 94.62 | 7.57 | 8 | 0.43 |
| 27-Jul-10 | N | 61.76 | 100 | 61.76 | 5.25 | 8.5 | 3.25 |
| 28-Jul-10 | N | 149.6 | 100 | 93.5 | 7.48 | 5 | -2.48 |
| 29-Jul-10 | N | 0 | 100 | 21.25 | 1.7 | 0 | -1.7 |
| 30-Jul-10 | N | 53 | 100 | 39.75 | 3.18 | 6 | 2.82 |
| 31-Jul-10 | N | 0 | 0 | 0 | 0 | 0 | 0 |
| | | Eff | Util | Prod | Earned | Demand | O/U |
| Summary | | 84.65 | 100 | 77.43 | 118.09 | 139.5 | 21.4 |

Source: ATTBLAKES 010475 – CONFIDENTIAL.xlsx

---

[8] Deposition of Arether Macon, May 3, 2012, pp. 95, 110-113.
[9] *Ibid.*

## IV.    INDIVIDUALIZED ANALYSES ARE REQUIRED TO DETERMINE WHETHER ANY MEMBER OF THE PROPOSED CLASS PERFORMED  UNCOMPENSATED WORK AFTER THEIR SHIFT

13.    In my previous report I concluded that, in order to determine whether adequate time was provided for each technician to complete their electronic timesheet or whether sufficient overtime was paid, it would be necessary, at a minimum, to conduct an individualized review of several Illinois Bell electronic databases that track employees' daily work history, as well as paper records and individual recollections.[10]  The additional data provided to me further demonstrate that any determination of whether a particular employee actually prepared an electronic timesheet after regular work hours and whether that employee received sufficient overtime pay must be conducted on a case-by-case basis.

### A.  The JAM Records Alone Are Insufficient to Determine Whether Uncompensated After-Shift Work Occurred

14.    Plaintiffs make allegations in their Amended Complaint regarding post shift work, specifically regarding the completion of timesheets, including:

- Illinois Bell does not provide a sufficient number of computers to allow the Plaintiffs and "similarly situated others" to complete their timesheets before the end of their scheduled shifts;

- on a regular basis, Plaintiffs and "similarly situated others" work at least 15 minutes beyond their scheduled shift completing their timesheets; and

- Illinois Bell does not pay Plaintiffs and "similarly situated others" for completing their timesheets after the end of their scheduled shift.[11]

15.    I understand that the technicians at issue here did not begin to submit their own timesheets (i.e., personally enter the information into the Illinois Bell computers) until approximately December 2009.[12] This can be observed in the JAM data, which show that the employee who created the timesheet ("CREATED_BY") is different from the technician whose time is being tracked ("LOGON_ID") every

---

[10] Johnson Report, p. 5.
[11] Amended Complaint, p. 5.
[12] Severson Deposition, p. 103.

day until sometime in December 2009 for each of the plaintiffs and opt-in employees. These data demonstrate that Plaintiffs' allegation regarding a lack of overtime pay to compensate for entering timesheet information into computers does not apply prior to December 2009.

16.     For the period starting in December 2009 when the technicians were responsible for submitting their own timesheets, the times recorded in the JAM database are inconsistent with the allegations made by Plaintiffs. As shown in **Exhibit 4**, on most days in the data the technicians' electronic timesheets were created and submitted either (i) prior to the end of their 8 hour shift or (ii) on a day other than the day they worked according to the timesheet. In addition, on a majority of the days when the technicians submitted their electronic timesheets after the scheduled end of their shift, they received overtime pay and submitted their timesheets within the window of recorded overtime.[13] In fact, on 403 days, technicians actually submitted their time *at least 15 minutes or more before* the end of their recorded overtime. These data belie the claims that the plaintiffs and opt-in employees worked beyond their scheduled shift "on a regular basis" completing their electronic timesheets and were not paid.[14]

17.     Furthermore, **Exhibit 5** shows the differences between each plaintiff's or opt-in employee's time submissions as reflected in the JAM records. Some employees, such as Brian Ericson (161 out of 467 days), Bradley Hunt (125 out of 229 days), and Robert Schilling (124 out of 254 days) had many days when they created or updated their timesheets on a day other than the day they worked. Other employees, like Jeff Palenske and William Sterk, had no days where they submitted their timesheets after the end of their shift without overtime recorded. These data demonstrate the individual differences between the technicians and show that the experiences of one individual cannot be accurately used to extrapolate the experiences of others.

---

[13] For example, a technician whose 8-hour shift was scheduled to end at 3:30 pm but didn't submit their timesheet until 3:45 pm would be considered within the window of recorded overtime if they recorded at least 0.25 hours of overtime on this day.
[14] Amended Complaint, p. 5.

**Exhibit 4**
**JAM Data Summary**
**For 7 Named Plaintiffs and 15 Opt-In Employees[1]**
**December 2009[2] – May 2012**

| Category | Days | % of Total Days |
|---|---|---|
| [a] | [b] | [c] |
| Timesheet created/updated by technician on the same day as work date and before end of shift[3] | 3,902 | 62.8% |
| Timesheet created by a different person [4] | 219 | 3.5% |
| Timesheet created/updated by technician on a day after work date | 1,160 | 18.7% |
| Timesheet created/updated by technician on a day before work date | 20 | 0.3% |
| Timesheet created/updated by technician on the same day, after end of shift and before end of submitted overtime [5] | 616 | 9.9% |
| Timesheet created/updated by technician on the same day, less than 15 minutes after the end of shift and any submitted overtime | 168 | 2.7% |
| Timesheet created/updated by technician on the same day, more than 15 minutes after the end of shift and any submitted overtime | 125 | 2.0% |
| Total technician work days [6] | 6,210 | |

Notes:

[1] There is no JAM data for Hiram Anderson. There is no JAM data after November 2009 for Patrick Chambers and Gary Crowder.

[2] Technicians did not begin to submit their own time sheets until approximately December 2009.

[3] "Created/updated" is based on the latest time in the "Created_date", "Created_date_1" or "Maintained_date" field submitted by the technician performing the work.

[4] A day is considered "Created by a different person" when the ID in the "Created_by" field is different from the technician's ID.

[5] For 403 of the 616 days, timesheet are submitted 15 minutes or more before the end of submitted overtime.

[6] "Work day" defined as days with 8 or more hours recorded in JAM, excluding days that have only exception codes recorded. (For example, "VAC1" for vacation.)
There are 1,700 technician days with exception codes only.

Sources:
ATTBLAKES 015406-CONFIDENTIAL.xls - ATTBLAKES 015429 - CONFIDENTIAL.xls

11

**Exhibit 5**
**JAM Data Summary**
**By Technician for 7 Named Plaintiffs and 15 Opt-In Employees[1]**
**December 2009[2] – May 2012**

| Logon ID | Technician | Total technician work days[3] | Timesheet created/updated by technician on the same day as work date and before end of shift[4] | Timesheet created by a different person[5] | Timesheet created/updated by technician on a day after work date | Timesheet created/updated by technician on a day before work date | Timesheet created/updated by technician on the same day, after end of shift and before end of submitted overtime[6] | Timesheet created/updated by technician on the same day, less than 15 minutes after the end of shift and any submitted overtime | Timesheet created/updated by technician on the same day, more than 15 minutes after the end of shift and any submitted overtime |
|---|---|---|---|---|---|---|---|---|---|
| [a] | [b] | [c] | [d] | [e] | [f] | [g] | [h] | [i] | [j] |
| BB2938 | Bruce Blanchette | 435 | 331 | 3 | 22 | 0 | 76 | 3 | 0 |
| BE1259 | Brian Ericson | 467 | 260 | 26 | 161 | 0 | 18 | 1 | 1 |
| BH3983 | Bradley Hunt | 229 | 77 | 9 | 125 | 0 | 9 | 7 | 2 |
| DM5156 | David Mckey | 227 | 160 | 5 | 17 | 5 | 12 | 1 | 27 |
| DS9671 | Donald Smith | 567 | 439 | 4 | 64 | 0 | 57 | 1 | 2 |
| EA2751 | Efran Arvizu | 569 | 435 | 7 | 58 | 0 | 39 | 3 | 27 |
| EH1361 | Elizabeth Olmstead | 423 | 250 | 6 | 85 | 0 | 80 | 2 | 0 |
| ER2979 | Ernest Roberts | 199 | 59 | 16 | 73 | 0 | 33 | 12 | 6 |
| ET7636 | Emanuel Tripolitakis | 298 | 177 | 39 | 39 | 5 | 14 | 20 | 4 |
| GD2527 | Gary Denny | 106 | 87 | 3 | 6 | 0 | 9 | 1 | 0 |
| HD1674 | Herman Deckys | 242 | 57 | 18 | 73 | 0 | 54 | 27 | 13 |
| JB9757 | James Blakes | 151 | 98 | 8 | 26 | 10 | 5 | 3 | 1 |
| JP2632 | Jeff Palenske | 159 | 134 | 0 | 8 | 0 | 17 | 0 | 0 |
| KP8531 | Kirk Parro | 132 | 78 | 9 | 13 | 0 | 18 | 9 | 5 |
| LW1763 | Larry Williams | 200 | 62 | 15 | 53 | 0 | 31 | 21 | 18 |
| MR4368 | Mark Rentschler | 243 | 184 | 4 | 48 | 0 | 5 | 2 | 0 |
| PP2169 | Phillipe Porter | 139 | 68 | 8 | 26 | 0 | 27 | 7 | 3 |
| RH1469 | Ramsey Haynes | 555 | 429 | 15 | 66 | 0 | 43 | 2 | 0 |
| RS7916 | Robert Schilling | 254 | 108 | 2 | 124 | 0 | 9 | 3 | 8 |
| SC2438 | Steven Clark | 234 | 94 | 16 | 42 | 0 | 39 | 38 | 5 |
| TW8232 | Tony Wright | 154 | 134 | 5 | 6 | 0 | 1 | 5 | 3 |
| WS8753 | William Sterk | 227 | 181 | 1 | 25 | 0 | 20 | 0 | 0 |

Notes:

[1] There is no JAM data for Hiram Anderson. There is no JAM data after December 2009 for Patrick Chambers and Gary Crowder.

[2] Technicians did not begin to submit their own time sheets until approximately December 2009.

[3] "Work day" defined as days with 8 or more hours recorded in JAM, excluding days that have only exception codes recorded. (For example, "VAC1" for vacation.)
There are 1,700 person days with exception codes only.

[4] "Created/updated" is based on the latest time in the "Created_date", "Created_date_1" or "Maintained_date" field submitted by the technician performing the work.

[5] A day is considered "Created by a different person" when the ID in the "Created_by" field is different from the technician's ID.

[6] For 403 of the 616 days, timesheets are submitted 15 minutes or more before the end of submitted overtime.

Sources:
ATTBLAKES 015406-CONFIDENTIAL.xls - ATTBLAKES 015429 - CONFIDENTIAL.xls

12

18.     In addition, while the Plaintiffs allege that they did not receive overtime pay, **Exhibit 6** shows that the plaintiffs and opt-in employees actually recorded overtime for between 4 percent and 34 percent of the days in the available JAM database.  Furthermore, the JAM records indicate that the minimum overtime payment received by each of the plaintiffs or opt-in employees varied between 0.25 hours and 1.0 hours. To determine whether these small increments could potentially indicate an extension of the work day to accommodate the lack of a lunch break or the time to complete a timesheet, an individual analysis is required.

19.     Finally, the JAM records alone are insufficient to determine whether the plaintiffs and opt-in employees performed post shift work or received compensation for any potential work performed after their shift; further individual inquiries are necessary.  For example, a technician who appears to have submitted his or her timesheet late without any overtime recorded may not have started his or her shift on time.  An individual comparison of the JAM and VTS data illustrates this potential issue.  For example, as shown in **Exhibit 7**, on April 1, 2010 Herman Deckys submitted his timesheet at 3:44 PM.  However, a review of his VTS records show that his truck didn't leave the garage until 9:03 AM, more than two hours later than the normal start time for his shift.  In addition, his truck returned to the garage at 3:06 PM, nearly 40 minutes prior to when he submitted his timesheet.  I cannot determine, from this data, at what time Mr. Deckys started working or what he did between returning to the garage at 3:06 PM and submitting his timesheet at 3:44 PM.  However, it is clear from the available data that further analysis is required to determine whether Mr. Deckys was working for the 2 hours between the scheduled start of his shift and when he left the garage as well as the 38 minutes between when he returned to the garage and submitted his timesheet.

**Exhibit 6**
**JAM Records Overtime Analysis**
**By Technician for 7 Named Plaintiffs and 15 Opt-In Employees[1]**
**December 2009 – May 2012**

| LOGON_ID | Technician | Minimum Overtime Hours | Average Overtime Hours | Maximum Overtime Hours | Number of days with Overtime Recorded | Number of days in JAM data | Percent of days with Overtime Recorded |
|---|---|---|---|---|---|---|---|
| [a] | [b] | [c] | [d] | [e] | [f] | [g] | [h] |
| BB2938 | Bruce Blanchette | 0.50 | 3.05 | 10.50 | 124 | 507 | 24% |
| BE1259 | Brian Ericson | 1.00 | 4.75 | 12.00 | 109 | 589 | 19% |
| BH3983 | Bradley Hunt | 0.50 | 3.72 | 9.50 | 38 | 340 | 11% |
| DM5156 | David Mckey | 0.75 | 4.94 | 12.50 | 27 | 316 | 9% |
| DS9671 | Donald Smith | 0.50 | 3.66 | 11.00 | 150 | 663 | 23% |
| EA2751 | Efran Arvizu | 0.25 | 4.64 | 11.00 | 103 | 669 | 15% |
| EH1361 | Elizabeth Olmstead | 0.50 | 3.64 | 14.50 | 114 | 544 | 21% |
| ER2979 | Ernest Roberts | 0.25 | 4.89 | 15.50 | 78 | 279 | 28% |
| ET7636 | Emanuel Tripolitakis | 0.50 | 3.06 | 8.00 | 25 | 340 | 7% |
| GD2527 | Gary Denny | 0.50 | 3.45 | 8.50 | 11 | 143 | 8% |
| HD1674 | Herman Deckys | 0.50 | 3.57 | 15.50 | 108 | 363 | 30% |
| JB9757 | James Blakes | 1.00 | 5.11 | 10.00 | 34 | 368 | 9% |
| JP2632 | Jeff Palenske | 1.00 | 5.16 | 12.00 | 28 | 223 | 13% |
| KP8531 | Kirk Parro | 0.25 | 4.09 | 10.50 | 40 | 321 | 12% |
| LW1763 | Larry Williams | 0.50 | 4.27 | 15.00 | 93 | 270 | 34% |
| MR4368 | Mark Rentschler | 0.25 | 2.48 | 6.50 | 12 | 309 | 4% |
| PP2169 | Phillipe Porter | 0.25 | 4.63 | 11.00 | 56 | 273 | 21% |
| RH1469 | Ramsey Haynes | 0.50 | 4.65 | 9.25 | 92 | 660 | 14% |
| RS7916 | Robert Schilling | 0.50 | 3.00 | 9.50 | 54 | 325 | 17% |
| SC2438 | Steven Clark | 0.50 | 2.27 | 10.00 | 62 | 317 | 20% |
| TW8232 | Tony Wright | 1.00 | 7.27 | 8.00 | 15 | 231 | 6% |
| WS8753 | William Sterk | 1.00 | 4.53 | 8.00 | 45 | 269 | 17% |

Notes:

[1] Overtime is defined as the ec_code field having a value of "EXTA"

[2] Amt_hrs field is used to sum overtime hours

[3] Records include overtime worked on weekends

Sources:

ATTBLAKES 015406-CONFIDENTIAL.xls - ATTBLAKES 015429 - CONFIDENTIAL.xls

**Exhibit 7**
**Daily Travel Map for Herman Deckys**
**April 1, 2010**



**Notes:**

JAM data for April 1, 2010 show Mr. Deckys submitting his 8 hours of time on his timesheet at 3:44 PM.

Stops shown on map are of at least 10 minutes.

Sources: ATTBLAKES 015417 – CONFIDENTIAL.xls, ATTBLAKES 006811.xlsx

15

## V.  INDIVIDUALIZED ANALYSES ARE ALSO REQUIRED TO DETERMINE WHETHER ANY MEMBER OF THE PROPOSED CLASS WORKED THROUGH THEIR LUNCH BREAKS

20.   The plaintiffs allege they were unable to take an uninterrupted lunch break due to factors such as 1) maintaining the security and safety of their job sites, such as a manhole; or 2) traveling between multiple job sites in order to perform work at multiple locations.[15] In my previous report I concluded that there is no single, class-wide approach to determine whether any individual technician had adequate time to take a lunch break on any particular day, or how frequently such instances occurred.[16]  The additional data provided to me further demonstrate that any determination of whether a particular employee actually worked through their lunch break must be conducted on an individual basis.

### A.  Limitations to the Available Data Prevent the Application of a Single Class-Wide Approach

21.   In the JAM database, technicians are able to record the type of work they performed using a functional time increment ("FTI") code.[17]  This code, which is recorded in the JAM database in the "FUNC_ID" field, identifies different types of work performed by technicians including, for example, underground manhole work.[18]  However, as shown in **Exhibit 8**, the majority of the records in the JAM database do not have an FTI code recorded, making it impossible to tell what type of work is being performed by each technician on many days.

---

[15] Amended Complaint, p. 4.
[16] Johnson Report, p. 11.
[17] Severson Deposition, pp. 54-55.
[18] ATTBLAKES 006536 - ATTBLAKES 006779, pp. ii-iii, 69-81; 160-180; 224-229.

**Exhibit 8**
**JAM FTI Code Summary**
**For 7 Named Plaintiffs and 17 Opt-In Employees[1]**
**January 2008 – May 2012**

| Category | Total |
|---|---|
| [a] | [b] |
| Total Hours of work with no FTI code [2] | 82,607.50 |
| Total Hours of work with FTI code | 48,624.25 |
| Total Hours | 131,231.75 |
| Total Hours of work with FTI code for non-Underground work [3] | 34,420.25 |
| Total Hours of work with FTI code for Underground work | 14,204.00 |
| Total Hours of work with FTI code | 48,624.25 |
| Total number of days with no FTI code | 9,766 |
| Total number of days with FTI code | 6,072 |
| Total number of work days [4] | 15,838 |
| Number of days with FTI code for non-Underground work | 3,976 |
| Number of days with FTI code for Underground work | 2,096 |
| Total number of days with FTI code | 6,072 |

Notes:

[1] There is no JAM data for Hiram Anderson.

[2] Working hours are determined by records with no exception code

[3] Underground work determined by FTI code starting with "FU", "PU", "SU"

[4] Excludes days that have only exception codes recorded. (For example, "VAC1" for vacation.)

Sources:

ATTBLAKES 015406-CONFIDENTIAL.xls - ATTBLAKES 015429 - CONFIDENTIAL.xls

ATTBLAKES 006536 - ATTBLAKES 006779

22.     In addition, it is my understanding that just because a technician has recorded an underground FTI code, it doesn't necessarily mean that the technician was physically located at the manhole. For example, at her deposition, opt-in employee Elizabeth Olmstead testified:

> Q. And is it sometimes the case that one of the technicians is not even at the site, may be in the central office or somewhere else?
> A. Yes.
> Q. And would you still consider that underground work though, even if you are not the one personally at the manhole?
> A. I would.[19]

In addition, Brian Ericson testified:

> Q. Okay. And would there be days when -- you said there was running around -- that you might be in a central office and an office building and a manhole all in the same day?
> A. Oh, yes, that's possible.
> Q. Okay.  So you wouldn't necessarily spend the entire day at any one location?
> A. One guy might spend one day running back and forth, while another guy stays at one spot. It was different every day.[20]

As a result, it is not possible to use the data alone to draw any class-wide conclusions as to when, or how frequently, the plaintiffs and opt-in employees worked on an assignment that allegedly restricted their ability to take a lunch, such as underground manhole work.  Rather, an individual analysis would need to occur that relies not only on the available data, but also on the recollection of the relevant individuals, such as the technician, his or her supervisor, or other third parties.

### B.  For the Data with Available FTI Codes, the Time Recorded by Technicians in Underground Assignments Varies

23.     For the records in the available data that have FTI codes recorded, it is clear that the time recorded by each plaintiff and opt-in employee for underground work varied by individual technician. **Exhibit 9** shows both the number of days and the number of hours recorded by each technician in underground work for records that have FTI codes identified.  As the exhibit shows, the number of days that technicians had JAM records indicating that they performed at least some underground work ranged from 0 to 336 days.

---

[19] Deposition of Elizabeth Olmstead (Olmstead Deposition), July 24, 2012, p. 47.
[20] Deposition of Brian Ericson, October 4, 2012, p. 47.

**Exhibit 9**
**Summary of JAM Records for Underground FTI Codes**
**By Technician for 7 Named Plaintiffs and 17 Opt-In Employees[1]**
**January 2008 – May 2012**

| LOGON_ID | Technician | Number of Days with Underground Work [2] | Number of days with FTI Code | Number of Days with Underground Work / Number of days with FTI code | Number of Work Days [3] | Number of Days with Underground Work / Number of Work Days |
|---|---|---|---|---|---|---|
| [a] | [b] | [c] | [d] | [e] | [f] | [g] |
| BB2938 | Bruce Blanchette | 46 | 383 | 12% | 933 | 5% |
| BE1259 | Brian Ericson | 336 | 436 | 77% | 906 | 37% |
| BH3983 | Bradley Hunt | 29 | 237 | 12% | 687 | 4% |
| DM5156 | David Mckey | 70 | 241 | 29% | 661 | 11% |
| DS9671 | Donald Smith | 183 | 575 | 32% | 1021 | 18% |
| EA2751 | Efran Arvizu | 3 | 437 | 1% | 1035 | 0% |
| EH1361 | Elizabeth Olmstead | 191 | 428 | 45% | 875 | 22% |
| ER2979 | Ernest Roberts | 159 | 226 | 70% | 729 | 22% |
| ET7636 | Emanuel Tripolitakis | 89 | 284 | 31% | 742 | 12% |
| GC5752 | Gary Crowder | 0 | 0 | 0% | 303 | 0% |
| GD2527 | Gary Denny | 33 | 112 | 29% | 454 | 7% |
| HD1674 | Herman Deckys | 153 | 230 | 67% | 705 | 22% |
| JB9757 | James Blakes | 73 | 178 | 41% | 541 | 13% |
| JP2632 | Jeff Palenske | 0 | 117 | 0% | 486 | 0% |
| KP8531 | Kirk Parro | 112 | 144 | 78% | 574 | 20% |
| LW1763 | Larry Williams | 142 | 242 | 59% | 483 | 29% |
| MR4368 | Mark Rentschler | 58 | 251 | 23% | 679 | 9% |
| PC5455 | Patrick Chambers | 0 | 0 | 0% | 200 | 0% |
| PP2169 | Phillipe Porter | 172 | 206 | 83% | 595 | 29% |
| RH1469 | Ramsey Haynes | 2 | 413 | 0% | 580 | 0% |
| RS7916 | Robert Schilling | 212 | 262 | 81% | 686 | 31% |
| SC2438 | Steven Clark | 33 | 239 | 14% | 674 | 5% |
| TW8232 | Tony Wright | 0 | 187 | 0% | 585 | 0% |
| WS8753 | William Sterk | 0 | 244 | 0% | 704 | 0% |

Notes:

[1] There is no JAM data for Hiram Anderson.

[2] Underground work determined by FTI code starting with "FU", "PU", "SU"

[3] Excludes days that have only exception codes recorded. (For example, "VAC1" for vacation.)

Sources:

ATTBLAKES 015406-CONFIDENTIAL.xls- ATTBLAKES 015429 - CONFIDENTIAL.xls

ATTBLAKES 006536 - ATTBLAKES 006779

24.     The employees' own statements further discuss the individualized nature of each technician's job assignments. Deposition testimony from the opt-in employees supports the notion that the amount of time technicians spend performing underground work varies across the relevant time period and across technicians.   For example, Elizabeth Olmstead testified that the amount of underground work she performed varied day by day.[21]   Some technicians, like Ramsey Haynes, testified that he worked in a manhole "just a few times a year."[22]   Others, like Jeff Palenske, testified in deposition that he did not perform underground work:

> Q. How is your work different than a copper cable splicer?
> A. I -- I really -- I don't have to deal with the -- going in manholes, or climbing poles, or, you know, physically handling the wire work.[23]
>
> Q. How is your job different than a day -- DAVAR cable splicer?
> A. DAVAR is out to check and condition both aerial and underground lines.  I don't do any of that.[24]

25.     In addition, when technicians worked at different garage locations, the amount of underground work they performed could change.  For example, in his deposition Steven Clark testified that he worked at garages in Hastings and Glenwood.[25]   The available VTS data show that Mr. Clark worked at the Hastings garage from January 29, 2010 to October 16, 2010.  Then, from October 18, 2010 to November 29, 2010 he worked at a garage in Glenwood.[26]   An analysis of Mr. Clark's JAM records during these periods shows that his assignments varied based on the garage locations.  At the Hastings garage, Mr. Clark recorded work in an underground FTI code for 104.25 hours (approximately 8.3 percent) out of the 1,254.25 work hours with FTI codes.  At the Glenwood garage, Mr. Clark recorded only 4.75 hours (approximately 2.4 percent) of underground work out of the 198.5 work hours with FTI codes.

26.     Attempting to extrapolate experiences across the technicians or time period is inappropriate and would require, instead, individual analyses.  For example, as shown in **Exhibit 10**, on June 21, 2010

---

[21] Olmstead Deposition, p. 46.
[22] Deposition of Ramsey Haynes, September 25, 2012, p. 28.
[23] Deposition of Jeff Palenske, September 27, 2012, p. 20.
[24] Ibid., p. 21-22.
[25] Deposition of Steven Clark, September 15, 2011, p. 26.
[26] He also testified that he worked at Orland Park, however the available VTS records for Mr. Clark do not show any records for this location.

Larry Williams recorded 7.5 hours of underground work in his JAM records. However, a review of his VTS records shows that his vehicle made multiple stops at several different locations throughout the day, including a trip to his garage for 67 minutes in the middle of the day starting at 11:41 AM. I cannot determine, from this data, whether Mr. Williams actually took a lunch break at any of these locations. However, it is clear that these data do not support the allegation that a plaintiff or opt-in employee is unable to leave a job location solely because he or she is working on an underground manhole assignment.

**Exhibit 10**
**Daily Travel Map for Larry Williams**
**June 21, 2010**



**Notes:**

JAM data for June 21, 2010 show Mr. Williams recorded 7.5 hours of underground work.

Stops shown on map are of at least 10 minutes. Underground work determined by FTI Codes in JAM data.

**Sources:** ATTBLAKES 004779.xlsx, ATTBLAKES 015421 - CONFIDENTIAL.xls.

### C. The Number of Daily Job Locations in the VTS Data Varies for Each Technician and Across Technicians

27.     Plaintiffs also allege that, throughout the relevant time period, they were unable to take an uninterrupted lunch break as they were required to travel between multiple job sites.[27]  However, the VTS data, as demonstrated in **Exhibit 11**, show the average number of stops varied across the plaintiffs and opt-in employees – between 1.77 stops per day for Bradley Hunt to 6.99 stops per day for Hiram Anderson.  Furthermore, the average duration of stops also varied between 55.10 minutes for Emanuel Tripolitakis to 223.91 minutes for Elizabeth Olmstead.  In addition, the number of stops each individual technician made during the course of their work day varied in the available data.  For example, on 47 percent of the days in the available VTS data, Donald Smith made only 1-2 stops of 10 minutes or longer each day.   However, on 34 percent of the days he made 3-4 stops of 10 minutes or longer each day and on 19 percent of the days he made 5 or more stops of 10 minutes or longer each day.   This range of work patterns varies across the plaintiffs and opt-in employees.  For example, only 2 percent of the VTS records for Mr. Hunt and 3 percent of the VTS records for Brian Ericson had five or more stops of 10 minutes or longer each day while 79 percent of the VTS records for Mr. Tripolitakis had five or more stops of 10 minutes or longer.   This variation for each technician and across technicians further demonstrates that any analysis of whether a technician did or did not take a lunch due to working at multiple locations must be conducted on an individual basis.

### D. The VTS Data Alone Cannot Be Used to Determine Whether A Technician Worked Through a Meal Break; an Individual Analysis is Required

28.     The VTS data alone cannot be used to determine whether a technician was unable to take a lunch break due to travel between job sites.   As shown in **Exhibit 12**, on August 1, 2010 Herman Deckys' truck made 5 different stops of at least 10 minutes of length during the course of his work day, including a 30 minute stop at 12:27 PM at a garage at Claremont Avenue, a different garage than the one where he started and ended. I cannot determine, from this data, whether Mr. Deckys actually took a lunch break at

---

[27] Amended Complaint, p. 5.

any of these locations.  However, these data alone do not support the allegation that a technician is unable to take an uninterrupted lunch because they had to travel between locations.

**Exhibit 11**
**Summary of Stops Recorded in VTS Details Report**
**By Technician for 5 Named Plaintiffs and 6 Opt-In Employees[1]**
**January 2010 – August 2012**

| Technician | Average Minutes of Stops | Average Number of Stops per Day | # of Days | 1-2 Stops Per Day | % of Days with 1 -2 Stops | 3-4 Stops per day | % of days with 3-4 stops | 5+ stops per day | % of Days with 5+ Stops |
|---|---|---|---|---|---|---|---|---|---|
| [a] | [b] | [c] | [d] | [e] | [f] | [g] | [h] | [i] | [j] |
| Bradley Hunt | 86.33 | 1.77 | 176 | 142 | 81% | 30 | 17% | 4 | 2% |
| Brian Ericson | 58.54 | 1.80 | 69 | 54 | 78% | 13 | 19% | 2 | 3% |
| Donald Smith | 109.93 | 2.97 | 259 | 122 | 47% | 89 | 34% | 48 | 19% |
| Efran Arvizu | 107.51 | 2.82 | 250 | 129 | 52% | 78 | 31% | 43 | 17% |
| Elizabeth Olmstead | 223.91 | 2.16 | 160 | 112 | 70% | 38 | 24% | 10 | 6% |
| Emanuel Tripolitakis | 55.10 | 5.89 | 162 | 9 | 6% | 25 | 15% | 128 | 79% |
| Ernest Roberts | 128.61 | 2.63 | 144 | 90 | 63% | 32 | 22% | 22 | 15% |
| Herman Deckys | 75.42 | 3.15 | 127 | 59 | 46% | 43 | 34% | 25 | 20% |
| Hiram Anderson | 57.55 | 6.99 | 262 | 2 | 1% | 28 | 11% | 232 | 89% |
| Larry Williams | 79.20 | 2.78 | 198 | 98 | 49% | 68 | 34% | 32 | 16% |
| Steven Clark | 84.06 | 2.65 | 237 | 120 | 51% | 97 | 41% | 20 | 8% |

Notes:

[1] 89 percent of the days for Phillipe Porter had only one location identified. Therefore I have excluded his data from the table above.

[2] A stop is defined as one or more consecutive observations at the same location for 10 mins or longer.

Sources:

VTS Details data

**Exhibit 12**
**Daily Travel Map for Herman Deckys**
**August 1, 2010**



**Notes:** Stops shown on map are of at least 10 minutes.

**Sources:** ATTBLAKES 015417 – CONFIDENTIAL.xls, ATTBLAKES 006811.xlsx

26

## VI. THE DATA DEMONSTRATE A RANGE OF EFFICIENCY SCORES OVER TIME AND ACROSS PLAINTIFFS AND OPT-IN EMPLOYEES

29.     I also examined the MSOC data for the plaintiffs and opt-in employees to evaluate the extent to which the efficiency scores of the technicians, as well as their potential incentives to work through lunch to maintain or improve their efficiency scores, as I understand they now allege,[28] may have varied over time and across individuals.

30.     For example, **Exhibits 13 – 16** chart the monthly efficiency for David McKey, William Sterk, Mark Rentschler, and Tony Wright as reported in MSOC and **Exhibits 17-20** chart the daily efficiency for these same technicians, respectively.[29] These charts show that the technicians' efficiency scores fluctuated from month to month and day to day for each technician and varied between technicians as well.  These fluctuations could be due to a number of factors, including, but not limited to, changes in the number of job assignments, the difficulty of the jobs assigned, or the relative skill of the technician (or the partner they're working with) at completing different types of jobs.  To determine whether or if any technician had any incentive to work through their meal break in order to maintain or improve their efficiency scores, at a minimum an analysis of their individual performance, their assignments that day and prior days, their prior MSOC scores, and their own anticipated MSOC score that day would be required.  All of these factors must be considered on an individual basis; no class-wide method can be used to make this determination with the available data.

---

[28] See, for example, Deposition of James Blakes, September 20, 2011 ("Blakes Deposition"), pp. 180-182.
[29] These analyses exclude any days for which no earned hours and demand hours were recorded for a technician.

**Exhibit 13**

**MSOC Efficiency, By Month**

**David McKey, March 2010 – February 2011**



Source: ATTBLAKES 010032.xlsx

**Exhibit 14**

**MSOC Efficiency, By Month**

**William Sterk, January 2010 – February 2011**



Source: ATTBLAKES 010030-010031.xlsx

**Exhibit 15**

**MSOC Efficiency, By Month**

**Mark Rentschler, March 2010 – January 2011**



Source: ATTBLAKES 010055.xlsx

**Exhibit 16**

**MSOC Efficiency, By Month**

**Tony Wright, April 2010 – February 2012**



Source: ATTBLAKES 010472.xlsx

29

**Exhibit 17**

**MSOC Efficiency, By Day**

**David McKey, March 1, 2010 – February 10, 2011**



<u>Source:</u> ATTBLAKES 010032.xlsx

**Exhibit 18**

**MSOC Efficiency, By Day**

**William Sterk, January 5, 2010 – February 10, 2011**



<u>Source:</u> ATTBLAKES 010030-010031.xlsx

**Exhibit 19**

**MSOC Efficiency, By Day**

**Mark Rentschler, March 1, 2010 – January 31, 2011**



Source: ATTBLAKES 010055.xlsx

**Exhibit 20**

**MSOC Efficiency, By Day**

**Tony Wright, April 1, 2010 – February 29, 2012**



Source: ATTBLAKES 010472.xlsx

31

I declare under the penalty of perjury that the foregoing is true and correct.

Dated this 14th day of January, 2013 in Washington, DC.


_____
Dr. John H. Johnson, IV

**APPENDIX A**

**CURRICULUM VITAE**

**OF DR. JOHN H. JOHNSON**



1225 19th St, NW
8th Floor
Washington, DC 20036
202-559-4388

January 2013

# John H. Johnson, IV
## President and CEO

### E D U C A T I O N

Massachusetts Institute of Technology
Ph.D., Economics, 1999

University of Rochester
BA, *magna cum laude* with Highest Distinction in Economics, 1995
Phi Beta Kappa

### C U R R E N T   E M P L O Y M E N T

Edgeworth Economics, Washington, D.C.
September 2009-present, President and Chief Executive Officer

Georgetown University, Washington, D.C.
2008-present, Affiliated Professor, Georgetown Public Policy Institute

### E M P L O Y M E N T   H I S T O R Y

Criterion Economics, L.L.C., Washington, D.C.
March 2009-September 2009, President

NERA Economic Consulting, Washington, D.C.
2005-2009 Vice President
2003-2005 Senior Consultant
2001-2003 Consultant

University of Illinois at Urbana-Champaign
1999-2001 Assistant Professor of Economics and of Labor & Industrial Relations

### A P P O I N T M E N T S

*Appleseed Pro Bono Network*
Board of Directors, June 2011-present

*Hawai'i Appleseed Center for Law and Economic Justice*
Board of Directors, January 2013-present

*Antitrust Law Journal*
Associate Editor- June 2011-present
Assistant Editor- June 2010-May 2011

## TEACHING EXPERIENCE

Georgetown University Public Policy Institute Courses
        Antitrust and Public Policy
        Masters in Public Policy Thesis Research Seminar
        The Law and Economics of Labor Discrimination Public Policy

University of Illinois at Urbana-Champaign Courses
        Labor Problems
        Women in the Labor Market
        Graduate Labor Economics

## AWARDS AND HONORS

Pro Bono Innovator Award, Appleseed Pro Bono Network (2012)
Pro Bono Practice Award Recipient, Akin Gump Strauss Hauer and Feld (2012)
Finalist, Competition Economist of the Year, Global Competition Review (2012)
"Top Young Competition Economist", Global Competition Review (2006)

## MEMBERSHIPS

American Economic Association
American Statistical Association
American Bar Association:
    o  Labor and Employment Section
    o  Antitrust Section
National Association of Forensic Economists

## TESTIMONY AND EXPERT REPORTS
## PRIOR FOUR YEARS AS OF JANUARY 2013

*In re: Chocolate Confectionary Opt-Out Antitrust Litigation*
        In the United States District Court for the Middle District of Pennsylvania, Harrisburg Division
        Expert Report August 3, 2012.
        Deposition, August 23, 2012.
        Declaration, October 21, 2012.

*Pacific Bell Wage and Hour Cases,* In Superior Court of the State of California, County of Alameda
        Declaration, October 12, 2012

*Rochelle Cohen v. Bank of New York Mellon Corporation.*
        In the United States District Court, Southern District of New York.
        Expert Report, May 24, 2012.
        Deposition, June 29, 2012.
        Rebuttal Expert Report, October 9, 2012

*In re: Wholesale Grocery Products Antitrust Litigation.*
      In the United States District Court, District of Minnesota
      Expert Report, January 31, 2012.
      Daubert Declaration, January 31, 2012.
      Deposition, March 2, 2012.
      Declaration, April 20, 2012.
      Evidentiary Hearing Testimony, May 22, 2012.
      Declaration, August 24, 2012
      Declaration, October 1, 2012

*Rob Boelk, Jerry Seger, Dave Jacak, Greg Congdon, David Moffitt, and Jeff Sopel, on behalf of themselves and all others similarly situated, vs. AT&T Teleholdings, Inc., Wisconsin Bell, Inc., Ameritech Services, Inc. and AT&T Services, Inc.* In the United States District Court, Western District of Wisconsin.
      Expert Report, September 26, 2012.

*Gabriel Fayerweather v. Comcast Corporation and Comcast Corporation of Contra Costa.* In the Superior Court for the State of California for the County of Contra Costa.
      Expert Report, July 13, 2012.
      Expert Report, March 24, 2010.
      Deposition, October 6, 2011.
      Deposition, August 27, 2012.

*James Bowman, as next friend for Jameel Bowman and Melissa Gibson, as next friend for Courtney Anderson on behalf of themselves and other similarly situated v. International Business Machines Corporation, ACS Human Services LLC, Phoenix Data Corporation and Arbor E & T, LLC.*
      In the United States District Court Southern District of Indiana, Indianapolis Division.
      Expert Report July 6, 2012.
      Deposition, August 8, 2012.

*Monique Da Silva Moore, Maryellen O'Donohue, Laurie Mayers, Heather Pierce, and Katherine Wilkinson on behalf of themselves and others similarly situated v. Publicis Groupe SA and MSL Group.*
      In the United States District Court Southern District of New York.
      Expert Report, March 19, 2012.

*Barbara Gilley v. Eli Lilly and Company.*
      In the United States District Court for the Eastern District of Tennessee at Knoxville.
      Expert Report, February 6, 2012.

*In re Hostess Brands, Inc. et, al.*
      United States Bankruptcy Court, Southern District of New York
      Declaration and Expert Report, January 25, 2012.
      Rebuttal Expert Report, February 25, 2012.
      Deposition, February 28, 2012.
      Rebuttal Expert Report, February 29, 2012.
      Hearing Testimony, April 18, 2012.
      Deposition, May 14, 2012.

*Gerald Paul Bodet, Jr. v. Charter Communications, Inc., Charter Communications Holding Company, LLC and Charter Communications, LLC.*
> In the United States District Court, Eastern District of Louisiana
> Expert Report, January 24, 2012.
> Deposition, April 2, 2012.
> Rebuttal Report, May 15, 2012.

*Equal Employment Opportunity Commission v. JP Morgan Chase Bank, N.A.*
> In the United States District Court for the Southern District of Ohio, Eastern Division.
> Expert Report, December 12, 2011.
> Deposition, January 5, 2012.

*Office of Federal Contract Compliance Programs, United States Department of Labor vs. Bank of America*
> US Department of Labor, Office of Administrative Law Judges.
> Expert Report, December 9, 2011
> Rebuttal Report, March 2, 2012
> Deposition, June 27, 2012.

*District of Columbia Taxi Cab Commission*, Washington DC
> Written Testimony, November 29, 2011

*In Re Wellbutrin XL Antitrust Litigation,* In the United States District Court, Eastern District of Pennsylvania
> Expert Report (Direct Purchasers), September 16, 2011
> Expert Report (Indirect Purchasers), October 3, 2011

*In Re Chocolate Confectionary Class Antitrust Litigation,* In the United States District Court, Middle District of Pennsylvania, Harrisburg Division
> Expert Report, August 12, 2011
> Deposition, September 15, 2011
> Declaration, November 10, 2011
> Rebuttal Declaration, January 6, 2012
> Evidentiary Hearing Testimony, November 15-16, 2011

*Letty Hernandez v. Starbucks Coffee Company.*
In the United States District Court Southern District of Florida, Civil Action No.0:09-cv-60073-WPD.
> Expert Report, May 20, 2011.

*James Blakes, Steven Clark, Herman Deckys, Bradley Hunt, Phillipe Porter, Ernest Roberts, Jr., Larry Williams v. Illinois Bell Telephone Company.*
In the United States District Court Northern District of Illinois Eastern Division, Case No. 11-cv-00336.
> Expert Report, May 13, 2011.

*Margaret Tourtellotte, Karla Krieger, Ashley Hiser and Ana Reyes v. Eli Lilly and Company and Timothy Rowland.*
 In the United States District Court for the Eastern District of Pennsylvania., Case No. 09-CV-0774.
> Expert Reports:
> Regarding Economic Loss of Margaret Tourtellotte, March 16, 2011.
> Regarding Economic Loss of Karla Krieger, March 16, 2011.
> Regarding Economic Loss of Ana Reyes, March 16, 2011.

*Jayme Sanford and Sanford Insurance, Inc. v. Allstate Insurance Company*
District Court, Arapahoe County, Colorado.
Expert Report, November 24, 2010.

*District of Columbia Taxi Cab Commission*, Washington DC
Expert Report (with Kevin Christensen), November 8, 2010

*Louise Knowles c.o.b. as Special Events Marketing v. Arctic Glacier, Inc., Keith E. Corbin, and Reddy Ice Holdings, Inc.* Ontario Superior Court of Justice, Court File No. CV-10-14457.
Affidavit of Dr. John H. Johnson, November 5, 2010.

*United States of America ex. rel. William A. Thomas v. Siemens AG, et al.,* United States District Court Eastern District of Pennsylvania, Case No. 09-4414.
Expert Report, September 13, 2010.
Deposition, October 15, 2010.
Reply Report, November 5, 2010

*Michelle L. Ekstrom v. Wal-Mart Stores, Inc., Andrea Rose, and Gregory J. Sevinsky.* The State of New Hampshire Rockingham, SS. Superior Court. Case No. 08-C-857.
Expert Report, October 12, 2010.

*Nationwide Power Services, Inc. et al v. Eaton Electrical Inc.,* United States District Court Central District of California, Case No. CV 07-0883 JVS (FFMx),
Expert Report, July 2, 2010.

*Affidavit of John H. Johnson, Ph.D. in Support of Motion for Reconsideration of Department of Labor Wage Setting Order No. WD 05-2431*, June 23, 2010.

*Testimony of Dr. John H. Johnson before the District of Columbia Taxi Cab Commission,* Washington, DC.
Oral Testimony, June 16, 2010
Written Testimony (with Kara Gorski), June 24, 2010.

*Equal Employment Opportunity Commission v. Bloomberg, L.P.*
*Jean Patricot, Tanys Lancaster, Janet Loures, and Monica Prestia v. Bloomberg, L.P.*
In the United States District Court, Southern District of New York
Expert Report, December 2, 2009
Reply Report, February 8, 2010
Depositions, December 16, 2009 and February 24, 2010

*In Re Ready Mixed Concrete Antitrust Litigation (Indiana)* In the United States District Court for the Southern District of Indiana, Indianapolis Division
Mediation Report, October 2010

*Univac Dental Corporation and Lactona Corporation v. Dentsply International, Inc.* In the United States District Court for the Middle District of Pennsylvania.
Expert Report, August 17, 2009
Deposition, September 3, 2009

38

*Joseph Antonio, et al. v. Security Services of America, L.L.C., et al.* In the United States District Court for the District of Maryland (Southern Division).

Expert Reports, July 17, 2009
Deposition, October 7, 2009.
Estimate of Economic Loss for Bulan Jules-Antonio and Joseph Antonio
Estimate of Economic Loss for Carolyn Clark and Michael Clark
Estimate of Economic Loss for Angel Fountain-Cooper and Thomas Cooper
Estimate of Economic Loss for Natalie Gibbs and Gregory Gibbs
Estimate of Economic Loss for George Haley and Yvonne Haley
Estimate of Economic Loss for Dawn Tolson-Hightower and Jacque Hightower
Estimate of Economic Loss for Belinda Jackson and Khari Jackson
Estimate of Economic Loss for Cynthia Patricia Jewett and Andrew Jewett Sr.
Estimate of Economic Loss for Crystal Johnson and Michael Johnson
Estimate of Economic Loss for Keth Kankanamage and Jagath Kankanamage
Estimate of Economic Loss for Takeysha Robinson and Keith Robinson
Estimate of Economic Loss for Terri Rookard and Derrick Potts
Estimate of Economic Loss for Beverly Rowe and Everton Rowe
Estimate of Economic Loss for Sharon Smith and Erik Smith
Estimate of Economic Loss for Evora Swoopes and Leonard Swoopes
Estimate of Economic Loss for Samantha Walker and Kendall Walker

*Bonnie Marcus, et al. v. PQ Corporation.* In the United States District Court, Eastern District of Pennsylvania.
Expert Report, April 8, 2009.
Trial Testimony, July 17, 2009.
Trial Testimony, November 6, 2009.

P U B L I C A T I O N S
P R I O R  T E N  Y E A R S  A S  O F  J A N U A R Y  2 0 1 3

Brief of Economists Amici Curiae Before the United States Supreme Court, *Comcast Corporation, et al. vs. Caroline Behrend, et al.* (with Gregory K. Leonard and Laila Haider), August 24, 2012.

"Economic Analysis in Indirect Purchaser Class Actions." *Antitrust Magazine.* Vol. 26, No 1, Fall 2011.

"Systemic Discrimination: Let the Statistics Talk" (with Kara Gorski) *Employment Law 360* (November 2011)

"Rigorous Analysis of Class Certification Comes of Age" (with Gregory Leonard) *Antitrust Law Journal* (2011).

"Antitrust Damages" (with Joseph Ostoyich) in Calculating and Proving Damages. Law Journal Press, New York, NY. 2011.

"Causality and Damages Estimation in Antitrust Litigation: A Case Study" (with Michael Kheyfets and Matthew Milner). *Antitrust Report.* Issue 1, 2011.

"An Economic Analysis of 'Non-Economic' Damages in Labor and Employment Litigation." (with Matthew Miller). Prepared for American Bar Association ABA EEO Labor and Employment Meetings, New Orleans, LA.

"Empirical Evidence and Class Certification in Labor Market Antitrust Cases"
(with Jesse David and Paul Torelli) *Antitrust Magazine.* Fall 2010. Volume 25. Number 1.

"The Increasing Relevance of Expert Testimony in the Wake of *Hydrogen Peroxide*"
(with Boris Vabson and Matthew Milner)  *The Antitrust Practitioner,* September 2010.

"The Standards for Class Certification Expert Testimony After *In Re Hydrogen Peroxide Antitrust Litigation*" *Antitrust Report*, Issue 2, 2009.

"In the Eye of the Beholder: Junk Science in Antitrust Class Certification." (with Gregory Leonard) *Antitrust Magazine*. August 2008.

"A Regression Primer for Labor Practitioners." (with Kristin Terris), *Labor and Employment Law,* 2008.

"Frictions and Sticking Points: Applying the Textbook Model to the Analysis of Cost Pass-Through in Indirect Purchaser Class Actions." (with Gregory Leonard) *Antitrust Insights*, Winter 2008.

"Economic Evidence in Criminal Cartel Cases." in *Economics of Antitrust: Complex Issues in a Dynamic Environment*, ed. Lawrence Wu ((New York: National Economic Research Associates, 2007).

"Common Principles of Antitrust Damages Estimation," *The Antitrust Report*. Issue 1, 2007.

"Don't Feed the Trolls" (with Gregory Leonard, Christine Meyer, and Ken Serwin). *Les Nouvelles*, September 2007.

"Economics and the Rigorous Analysis of Class Certification in Antitrust Cases." (with Gregory K. Leonard) *Journal of Competition Law and Economics* 2007; doi: 10.1093/joclec/nhm009

"Separating Fact from Fiction: Recent Trends in Wage and Hours Litigation." *Labor and Employment Law*, Spring 2007, Vol. 35, No. 3.

"Downstream Discovery in Antitrust Class Actions." (with Laila Haider and Ian Simmons). *The Antitrust Practitioner*. July 2006.

"The Economics of Patent Policy: A Review of Recent Empirical Studies" in *Economic Approaches to Intellectual Property Policy, Litigation, and Management*, ed. Gregory K. Leonard and Lauren J. Stiroh. (New York: National Economic Research Associates, 2005).

"The Use of Event Studies in Intellectual Property Litigation" (with Vinita Juneja) in *Economic Approaches to Intellectual Property Policy, Litigation, and Management*, ed. Gregory K. Leonard and Lauren J. Stiroh. (New York: National Economic Research Associates, 2005).

"Do Long Work Hours Contribute to Divorce?" *Topics in Economic Analysis & Policy*. Vol. 4: No. 1, Article 24, October 2004.

"The Impact of Federal Overtime Legislation on Public Sector Labor Markets." *Journal of Labor Economics*, January 2003.

P R E S E N T A T I O N S

"Battle of the Experts: A Plaintiff and Defense Lawyer's How To On Working With Economists in Antitrust Cases."
        The Bar Association of San Francisco, San Francisco, CA July 2012.

"*Wage and Hours Class Actions After Dukes v. Walmart*" ACI Wages and Hours Class and Consumer Action
        Conference, New York, NY May 2012.

"*Wal-Mart Stores, Inc. v. Dukes and Antitrust Class Actions*" Panel Discussant, American Bar Association Civil and
        Criminal Procedure Committee, New York, NY, September 2011.

"What's This Case Really Worth?" American Bar Association  EEO Labor and Employment Committee Meetings,
        New Orleans, LA, April 2011.

"The Future of U.S. Antitrust: Do Landmark Changes Portend a Turbulent Future?" ABA SIL International Law
        Committee Teleconference., with Ethan Litwin and Samuel Miller., November 2010.

District of Columbia National Institute of Trial Advocacy Advanced Trial Advocacy Program, Faculty.
        Washington, DC.  October 2010.

"The Intersection of Economics and Statistics in Employment and Health Care Litigation."
        Epstein Becker and Green, New York City. September 2010 with Chuck Fields and Matthew Milner.

"Pharmaceutical Patent Litigation: Economic and Data Issues."
        Duane Morris, Washington, DC September 2010 with Jesse David and Matthew Milner.

"The Influence of Daubert on Expert Testimony."
        Duane Morris, Philadelphia, PA, September 2010 with Matthew Milner.

"The Evolution of an Expert Report in a Complex Damages Case"
        Bingham McCutchen, Los Angeles, CA, January 2010, with Jesse David and Matthew Spitzer
        Womble Carlyle, Washington, DC, February 2010, with Paul Torelli and Kara Gorski
        Buchanan Ingersol and Rooney, Philadelphia, PA, April 2010 with Matthew Milner, Kara Gorski, and Jesse
        David.

"Lawyer and Consultant Perspectives on Working Effectively and Efficiently with Testifying and Consulting Experts."
Law Seminars International Litigating Employment Class Actions Conference.
        Washington, D.C., April 6, 2009 with Carter DeLorme.
        San Francisco, CA, July 27, 2009 with Christopher Martin.

"The Economics of Large Corporate Law Firms." Building a Better Legal Profession National Conference of Student
Leaders. Stanford University School of Law, Palo Alto, CA, April 3, 2009.

"The Debate Over the Billable Hour: A Rigorous Look at Competing Law Firm Profitability Models," Eighth Annual
Legal Malpractice & Risk Management Conference, Chicago, March 5, 2009

"Economic Approaches to Wrongful Termination and Labor Discrimination Litigation," Orrick, Herrington & Sutcliffe,
February 17, 2009, with Laila Haider

"Where's the Value: The ACC Model of Law Firm Profitability." with Matthew Milner and
Frank Kyei-Manu. Womble Carlyle Sandridge & Rice, PLLC. November 24, 2008.

"Differences in Difference Estimation in Antitrust Cases."
    Skadden, Arps, Meager, and Flom, Washington, DC. November 17, 2008
    with Gregory Leonard and Fei Deng
    Hogan & Hartson, Washington, D.C., February 2009
    with Fei Deng

"What's in an Average? Misleading Statistics in Labor and Employment Litigation."
    Biltimore Hotel, Los Angeles, California, October 23, 2008
    with Kristin Terris, Elizabeth Newlon, and Travis Gemoets

    Mayflower Hotel, Washington, DC, November 13, 2008
    with Laila Haider and Johnine Barnes

    Gibson, Dunn & Crutcher, January 28, 2009
    with Laila Haider

"The Economics of Class Actions." with Gregory Leonard and Anne Gron.
    Drinker Biddle, Chicago, Illinois, September 2008.
    O'Melveny and Myers, October 2008.

"The Supreme Court and Antitrust Economics." NERA Antitrust and Trade Regulation Seminar, Santa Fe, NM. July 2008 (panel moderator).

"Recent Evolution of Class Certification Standards." 56th American Bar Association Antitrust Law Spring Meeting, March, 2008.

"Don't Be Afraid: Statistics for OFCCP Audits." Virginia State Society of Human Resource Management Conference, October 2007.

"Antitrust Econometrics." with Michael Egge. Latham and Watkins Antitrust Academy, Orlando, FL. March 2007.

"Effectively Working with Statistical Experts." Jones Day, Washington, DC. February 2007.

"Antitrust Class Certification" with Laila Haider, Weil, Gotshal, and Manges, New York City, January 2007.

"The Post E-Bay World and Patent Damages" with Lynn Malinoski and Rodger Smith, Law Seminars International Conference on Proving and Calculating Patent Damages, Philadelphia, PA, October 30, 2006.

"Statistical Detection of Cheating: The Chicago Black Sox Scandal of 1919" as panelist on Frameworks for Effectively Presenting and Impeaching Cutting Edge Expert Testimony at the Edward Bennett Williams Inns of the Court, Washington, DC, October 19, 2006.

"Cutting Edge Econometrics in Antitrust Class Certification." NERA Antitrust and Trade Regulation Seminar, Santa Fe, NM, July 2006.

"Patent Trolls and Injunctive Relief." NERA Economic Consulting Intellectual Property Practice Presentation. Villard Mansion, New York City, June 2006.
"The Economics of Antitrust Class Certification. Presentations at:
    Cadwalader, Wickersham & Taft, New York City, December 2005;
    Hogan & Hartson, Washington, DC, January 2006;

O'Melveny & Myers, Washington, DC, February 2006.

"The Economics of Reasonable Royalties." Presentation at Hunton & Williams , Washington, DC, November 2005.

"The Role of Economists in Intellectual Property Litigation." Presentation at Hunton & Williams (with George Korenko), Washington, DC, November 2004.

Panelist, *Special Ethics Concerns in Class Actions.* Federal Trade Commission Conference on Protecting Consumer Interests in Class Actions, Washington, DC, September 2004.

"Class Certification: Theory and Practice." NERA Antitrust and Trade Regulation Seminar, Santa Fe, NM, July 2003.

"The Role of Economists in Litigation." CLE Course at Williams and Connolly (with James Jordan), Washington, DC, May 2003.

"The Economics of Antitrust Damage Estimation." Presentation at Wilmer, Cutler and Pickering, Washington, DC, January 2003.

# APPENDIX B

# MATERIALS RELIED UPON

**Case Documents**

Amended Complaint for Damages for Violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.*, filed February 9, 2011, with Exhibit A

Plaintiffs' Motion and Memorandum in Support of Judicially Supervised Notice under 29 U.S.C. §216(b), filed March 25, 2011, with Exhibits 1-8

Depositions

Deposition of Anderson, Hiram. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  August 7, 2012.

Deposition of Arvizu, Efran. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  August 31, 2012.

Deposition of Blakes, James. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  September 20, 2011.

Deposition of Blanchette, Bruce. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  September 11, 2012.

Deposition of Chambers, Patrick. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  July 17, 2012.

Deposition of Clark, Steven. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  September 15, 2011.

Deposition of Crowder, Gary. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  October 2, 2012.

Deposition of Deckys, Herman. With Exhibit 29, Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  August 23, 2011.

Deposition of Deckys, Herman. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  November 11, 2011.

Deposition of Denny, Gary. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  October 2, 2012.

Deposition of Ericson, Brian. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  October 4, 2012.

Deposition of Haynes, Ramsey. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  September 25, 2012.

Deposition of Hunt, Bradley. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. February 16, 2012.

Deposition of Hunt, Bradley. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. October 4, 2011.

Deposition of McKey, David. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. July 10, 2012.

Deposition of Olmstead, Elizabeth. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. July 24, 2012.

Deposition of Palenske, Jeff. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. September 27, 2012.

Deposition of Parro, Kirk. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. September 13, 2012.

Deposition of Porter, Phillipe. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. November 11, 2011.

Deposition of Porter, Phillipe. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. September 13, 2011.

Deposition of Rentschler, Mark. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. September 20, 2012.

Deposition of Roberts, Ernest. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. November 14, 2011.

Deposition of Roberts, Ernest. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. September 22, 2011.

Deposition of Schilling, Robert. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. July 19, 2012.

Deposition of Smith, Donald. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. July 31, 2012.

Deposition of Sterk, William. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. August 28, 2012.

Deposition of Tripolitakis, Emanuel. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. August 15, 2012.

Deposition of Williams, Larry. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336. November 7, 2011.

Deposition of Wright, Tony. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  August 9, 2012.

Deposition of Gigi Severson with Exhibits. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  July 12, 2012.

Deposition of Macon, Arether. Blakes et al vs. AT&T Corp. United States District Court for the Northern District of Illinois. Case No.1:11-cv-00336.  May 3, 2012.


**Databases and Documents from Illinois Bell**

JAM Data

    ATTBLAKES 000002.xls
    ATTBLAKES 015406 – CONFIDENTIAL.xls - ATTBLAKES 015429 – CONFIDENTIAL.xls


MSOC Data

    ATTBLAKES 000005.xls - ATTBLAKES 000007.xls
    ATTBLAKES 002764 - ATTBLAKES 002765.pdf
    ATTBLAKES 002766 - ATTBLAKES 002768.pdf
    ATTBLAKES 004743 - ATTBLAKES 004744.pdf
    ATTBLAKES 004745 - ATTBLAKES 004748.pdf
    ATTBLAKES 004781.xls
    ATTBLAKES 006797 - ATTBLAKES 006801.pdf
    ATTBLAKES 010030.xls - ATTBLAKES 010084.xls/xlsx
    ATTBLAKES 010472 – CONFIDENTIAL.xls - ATTBLAKES 010475 – CONFIDENTIAL.xls/xlsx
    ATTBLAKES 015448 – CONFIDENTIAL.xls
    ATTBLAKES 018894 – CONFIDENTIAL.xls
    ATTBLAKES 018917 – CONFIDENTIAL.xls
    ATTBLAKES 019495 – CONFIDENTIAL.xls
    ATTBLAKES 019496 – CONFIDENTIAL.xls
    ATTBLAKES 019819 – CONFIDENTIAL.xls
    ATTBLAKES 020216 – CONFIDENTIAL.xls
    ATTBLAKES 020235 – CONFIDENTIAL.xls
    ATTBLAKES 020259 – CONFIDENTIAL.xls
    ATTBLAKES 020283 – CONFIDENTIAL.xls
    ATTBLAKES 020297 – CONFIDENTIAL.xls
    ATTBLAKES 020311 – CONFIDENTIAL.xls


VTS Data

    ATTBLAKES 003116 - ATTBLAKES 003133.pdf
    ATTBLAKES 003134 - ATTBLAKES 003254.pdf
    ATTBLAKES 004777.xlsx
    ATTBLAKES 004780.xlsx
    ATTBLAKES 005481.xlsx

ATTBLAKES 005484.xlsx
ATTBLAKES 006809.xlsx
ATTBLAKES 015451- CONFIDENTIAL.xlsx
ATTBLAKES 018924 – CONFIDENTIAL.xlsx
ATTBLAKES 018926 – CONFIDENTIAL.xlsx
ATTBLAKES 019834 – CONFIDENTIAL.xlsx
ATTBLAKES 020269 – CONFIDENTIAL.xlsx
ATTBLAKES 020270 – CONFIDENTIAL.xlsx
ATTBLAKES 020353 – CONFIDENTIAL.xlsx
ATTBLAKES 000003.xlsx
ATTBLAKES 001649.xls
ATTBLAKES 003089 - ATTBLAKES 003112.pdf
ATTBLAKES 004775.xlsx
ATTBLAKES 004779.xlsx
ATTBLAKES 005482.xlsx
ATTBLAKES 006807.xlsx
ATTBLAKES 006808.xlsx
ATTBLAKES 006811.xlsx
ATTBLAKES 018920 – CONFIDENTIAL.xlsx
ATTBLAKES 018922 – CONFIDENTIAL.xlsx
ATTBLAKES 019832 – CONFIDENTIAL.xlsx
ATTBLAKES 020189 – CONFIDENTIAL.xlsx
ATTBLAKES 020268 – CONFIDENTIAL.xlsx
ATTBLAKES 020352 – CONFIDENTIAL.xlsx
ATTBLAKES 000004.xlsx
ATTBLAKES 003113 - ATTBLAKES 003115.pdf
ATTBLAKES 004776.xlsx
ATTBLAKES 004778.xlsx
ATTBLAKES 005483.xlsx
ATTBLAKES 006806.xlsx
ATTBLAKES 006810.xlsx
ATTBLAKES 018921 – CONFIDENTIAL.xlsx
ATTBLAKES 018923 – CONFIDENTIAL.xlsx
ATTBLAKES 019833 – CONFIDENTIAL.xlsx
ATTBLAKES 020190 – CONFIDENTIAL.xlsx
ATTBLAKES 020267 – CONFIDENTIAL.xlsx

Other Documents

ATTBLAKES 008758 - ATTBLAKES 008758 - CONFIDENTIAL - Supplemental Interr
Response Ex B.xls
ATTBLAKES 006536 - ATTBLAKES 006779 (FTI Definitions)