UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BLAKES, STEVEN CLARK, HERMAN DECKYS, BRADLEY HUNT, PHILLIPE PORTER, ERNEST ROBERTS, JR., LARRY WILLIAMS, for themselves and on behalf of similarly situated others,<br><br>                Plaintiffs,<br><br>    v.<br><br>ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T Illinois,<br><br>                Defendant. | Case No. 11-cv-336<br><br>Hon. Judge Kim |

**DEFENDANT'S RESPONSE IN PARTIAL OPPOSITION
TO PLAINTIFFS' MOTION TO TOLL THE STATUTE OF LIMITATIONS**

    Defendant Illinois Bell Telephone Company respectfully submits this response in partial opposition to Plaintiffs' December 31, 2013 "Motion to Toll the Statute of Limitations" (Doc. No. 235). As an initial matter, Plaintiffs' Motion states, "Plaintiff [sic] has discussed this motion with the Defendant but has not received a response." (Doc. No. 235, p. 4). Defendant's counsel told Plaintiffs' counsel when first contacted about this issue upon entry of the decertification decision that they would need to discuss the request with their client and additionally that the holiday period was a very difficult time period to do so. Plaintiffs then filed their Motion on New Year's Eve without further contacting Defendant. Also, Plaintiffs' counsel had suggested a *60-day* tolling period, not the 90 days now sought in their Motion.

    In any event, as to the relief sought in Plaintiffs' Motion, Defendant does not oppose the Court tolling the effectiveness of (i.e., holding in abeyance) its December 17, 2013 decertification decision, in order to allow Plaintiffs' counsel to confer with their opt-in clients and for the parties to discuss a potential settlement, as this Court has ordered. Defendant does

1

not agree though that this Court should decide which "claims" for which opt-ins would have their statutes of limitations tolled based on its decertification decision. That matter should be addressed in a future case if and when any opt-in elects to file an individual lawsuit. Further, Plaintiffs' request for a 90-day tolling period is excessive; Defendant suggests instead that any tolling of the Court's decertification decision be for 45 days from when it was entered (to January 31, 2014).

> A. **Any Tolling Should Be Limited To Suspending The Effectiveness Of The Court's Decertification Decision.**

Plaintiffs are not explicit as to what claims would be implicated by the tolling requested in their Motion. Plaintiffs refer to how opt-ins "might now have the right to re-file their respective claims" and how the Court's decision "could amount to a *de facto* determination on the merits of certain claims," leading to their request that the Court "equitably toll the statute of limitations for the Opt-ins to pursue their respective claims that are not part of this lawsuit[.]" (Doc. No. 235, pp. 1-2, *see also id.*, p. 4 (pointing to "the threat of a running statute of limitations on those claims that are no longer part of the collective")). But as this Court reiterated in its decertification decision, this case never concerned "any possible FLSA claim under the sun":

> Applying the lenient standard that pertains to conditional certification, this court determined that the named plaintiffs had made a modest showing that Illinois Bell's policy requiring cable splicers to maintain the security of their job sites routinely interfered with their lunch breaks. *Id.* at *3. The court characterized the claim that cable splicers miss lunch because of inter-site travel as being "[o]n shakier ground," but found the evidence sufficient to justify issuing notice on that claim as well. *Id.* at *4. Finally, the court agreed that the named plaintiffs had made a sufficient showing that cable splicers are similarly forced to work past the end of their shifts to complete time sheets. *Id.* This court agreed with Illinois Bell, however, that the proposed notice's language reached too far in describing unpaid work as that which

"includes, but is not limited to," working through meal breaks and completing time sheets post-shift. *Id.* at *8. Noting that the case is about unpaid lunch breaks and post-shift completion of time sheets, not "any possible FLSA claim under the sun," this court ordered the named plaintiffs to excise the "but is not limited to" language from the proposed notice. *Id.* (Doc. No. 233, pp. 2-3).

This Court's decertification decision further explained that Plaintiffs' "efficiency-pressure" theory was never presented at the conditional certification stage, that Plaintiffs "should not be allowed to engage in the kind of bait-and-switch that the plaintiffs' new theory represents here," and that "the plaintiffs should not be allowed to avoid decertification based on a theory they never asked the court to conditionally certify." (Doc. No. 233, pp. 22-25). As this Court recognized, none of the opt-ins consented to join a lawsuit based on this theory. (*Id.*, pp. 22, 24).

Accordingly, following this Court's conditional certification decision, the only claims for which the statute of limitations had stopped running upon an opt-in's consent filing were for alleged lunch break work from having to maintain job site security, alleged lunch break work due to intersite travel, and alleged post-shift electronic time entry. The post-shift, time entry claim is "the one aspect of the plaintiffs' case that supports a finding of similarity among the plaintiffs." (Doc. No. 233, p. 59) (emphasis added). Any *continued* tolling at this point that *could potentially* apply then would only be for the two lunch break claims that the Court conditionally certified and then decertified: "the named plaintiffs['] alleg[ations] that they are required to maintain the security of job sites and travel between job sites even during their lunch hour." (*Id.*, p. 2).[1]

---

[1] To be clear, although Plaintiffs' Motion refers to time spent on time sheets generally (Doc. No. 235, p. 1), there could be no question that the sole claim remaining collectively certified is what this Court has described as being "forced to work past the end of their shifts to complete time sheets," i.e., "post-shift completion of time sheets." (Doc. No. 233, p. 3, *see also id.*, p. 11 (referring to Plaintiffs' theory that cable splicers "work post-shift because they are unable to enter their hours before their shift ends"), p. 22 (citing the Court's order on Defendant's motion for a protective order "that it conditionally
(Footnote Continued)

By contrast, the theory that the "MSOC/JAM combination violates the FLSA" (Doc. No. 233, p. 26), or any other claims Plaintiffs introduced into this case post-conditional certification, could *never* be subject to tolling since this Court's conditional certification decision never precluded Illinois Bell cable splicers from raising these claims individually. Put differently, Plaintiffs' MSOC efficiency theory is no more appropriate for tolling than are claims that Illinois Bell did not pay cable splicers the FLSA-mandated minimum wage or miscalculated overtime premiums.

Nonetheless, Defendant submits that *this* Court need not determine what tolling, if any, is appropriate for purposes of any individual opt-in's future potential lawsuit. The Seventh Circuit has held that equitable tolling should be applied "sparingly" and in "extraordinary circumstances." *See Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 964 (7th Cir. 2005). Although Plaintiffs' Motion cites cases in which the court tolled the statute of limitations upon decertifying a collective action, none involved the circumstances present here, in which certain claims (as opposed to certain opt-ins) were decertified from the collective action, following a course of litigation in which Plaintiffs articulated shifting claims and theories. Indeed, those opt-ins who gave depositions in this case underscored the varying and individualized nature of their off-the-

---

certified the class 'based on the named Plaintiffs' FLSA allegations … about 'unpaid lunch breaks and post-shift work completing time sheets.'"), p. 52 (referring to "the post-shift claim"), p. 54 (finding "sufficient parallels among the plaintiffs' experiences of working *post-shift* to support a finding of similarity with respect to this aspect of their claim") (emphasis added), p. 54 (discussing determining "whether they submitted their time after their shift ended without being paid"), p. 55 (referring to "the post-shift aspect of the case"), p. 57 ("To the extent [Defendant] plans to challenge the credibility of the plaintiffs' claims that they stayed *past their shift* to record time and were not paid for it …") (emphasis added), p. 57 ("Another key distinction is that the unpaid post-shift work occurred in the garages, where managers often were present."), p. 58 (referring to "the post-shift work" and cable splicers "who submitted their JAM paperwork post-shift"), p. 59 ("[T]he court finds that the claim with respect to the post-shift time submission is sufficiently similar[.]"), p. 59 (referring to the "same question – whether Illinois Bell's policy of requiring cable splicers to report to their garages in a specific window of time causes them to submit their time records *post-shift* and without pay") (emphasis added)).

clock allegations.[2]  To what degree, if any, tolling should apply to any individual opt-in must depend on that individual's facts and circumstances and therefore is an issue best handled if and when any such new lawsuits are filed.  *See e.g.*, *Espenscheid v. Directsat USA, LLC*, No. 3:09-cv-00625-bbc, W.D. Wis. July 7, 2011, Doc. No. 664 (Crabb, J.) (attached hereto as Ex. A, p. 2) ("It would be inappropriate for this court to enter a broad order concerning tolling at this stage because the issue of tolling should be addressed by the courts in which those individuals file their lawsuits.").

The most equitable and cleanest approach at this point is to hold the Court's decertification decision in abeyance – that is, toll its effectiveness for 45 days from its entry to January 31, 2014 – in order to allow Plaintiffs' counsel to inform their clients of this decision and to confer regarding their options going forward.[3]

---

[2]  *See e.g.*, Doc. No. 208-2, p. 21 (citing opt-in Ericson testimony of various alleged pre-shift activities when he worked in Buffalo Grove but not in Gurnee); p. 24 (frequency of Crowder's alleged manhole work would vary day-by-day); p. 35 (opt-in Smith does not know of any activities he engaged in pre-shift that he believes he should have been paid for), pp. 35-36 (opt-in Schilling does not know any time in which he got equipment after his shift ended and was not paid for doing so); *see also id.*, p. 11 (referring to Plaintiffs' argument at the hearing on Defendant's motion for protective order that there are a "number of reasons" why employees allegedly have worked off-the-clock).

[3]  At least one Court in this Circuit has concluded that it lacks authority to stay its decertification decision retroactively, instead electing to toll the statue of limitations starting from the date of a subsequent order.  *See Hundt v. Directsat USA, LLC*, No. 08 C 7238, N.D. Ill. July 29, 2013, Doc. No. 300 (Gottschall, J.) (attached hereto as Ex. B).  If this Court agrees, it then should deny Plaintiffs' Motion and its request for tolling outright, as the Court did not authorize tolling upon issuing its decision, and Plaintiffs do not establish or even allege that any opt-in exercised due diligence but nonetheless was precluded from filing an individual claim.  *See Bensman*, 408 F.3d at 964; *cf. Espenscheid*, Ex. A, at *5 (plaintiffs "presented no evidence that any former class member who has exercised due diligence will be barred from filing suit because he or she has been unable to obtain the information necessary to realize that he [or she] may possibly have a claim.") (citations and quotations omitted).  Or, at the very least, the Court should limit tolling exclusively to the two lunch break claims at issue on conditional certification, starting from the entry of an applicable order and ending on January 31, 2014.

### B. The Effectiveness Of The Court's Decertification Decision Should Be Tolled For No More Than 45 Days From That Decision.

Plaintiffs do not explain why anything less than a 90-day tolling period purportedly would prejudice the opt-ins' rights. None of the cases Plaintiffs' Motion cites ordered tolling for such an excessive time period. *See e.g.*, *Zivali v. AT&T Mobility, LLC*, 08 Civ. 10310 (JSR), 2011 U.S. Dist. LEXIS 101084, at \*\*3-4 (S.D.N.Y. June 6, 2011) (ordering 45 days of tolling for collective of more than 4,100 opt-ins "who reside in nearly all states and two territories"); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 279, 284 (N.D. Tex. 2008) (30-day tolling for more than 1,000 opt-ins); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1121, 1128, 1135 (N.D. Cal. 2011) (30-day tolling for classes of 772 and 430 employees); *Johnson v. Big Lot Stores, Inc.*, No. 04-3201, 2008 U.S. Dist. LEXIS 123265, at \*\*4-5 (E.D. La. July 24, 2008) (denying plaintiffs' request for 90-day tolling, imposing instead 45 days from order on plaintiffs' motion to equitably toll the statute of limitations).[4]

To justify this atypical 90-day period, Plaintiffs only offer that "it *may* be difficult to advise Opt-ins of his or her rights until the beginning of the New Year" but do not represent that they indeed have encountered any such difficulties. (Doc. No. 235, p. 4) (emphasis added). Further, the premise of prolonging tolling in order to preserve the viability of individual opt-ins' claims is particularly inapplicable here considering this Court's recognition that Plaintiffs apparently "have abandoned their theory that inter-site travel cause splicers to work off the

---

[4] In the *Sliger v. Prospect Mortgage, LLC*, No. Civ. S-11-465 LKK/EFB, 2012 U.S. Dist. LEXIS 170701, at \*4 (E.D. Cal. Nov. 30, 2012) decision that Plaintiffs cite (Doc. No. 235, p. 4), the parties stipulated to decertification and submitted a proposed order to toll the statutes of limitations applicable to the federal and California state law claims alleged in the lawsuit for 90 days. The Court refused to issue the proposed order, finding instead that "the better approach would be for defendant Prospect to stipulate that, in the event that it raises the statue of limitations in an action brought by one of the opt-in plaintiffs, it will agree to extend any limitations period it asserts by 90 days." *Sliger*, 2012 U.S. Dist. LEXIS 170701, at \*7.

clock" and of certain Plaintiff/opt-in testimony refuting the notion that cable splicers forewent lunch breaks due to manhole work. (*Id.*, pp. 44-45, 48). A 45-day period during which the Court's decertification decision is suspended strikes a reasonable balance between allowing time for counsel to contact their clients, and avoiding needlessly delaying this litigation.

Plaintiffs also refer to the Court's order that the parties exchange settlement letters as a basis for a 90-day tolling period (Doc. No. 235, p. 4), but presently it is unknown whether any settlement is likely so as to justify essentially suspending this case for three months. If further tolling proves advisable, the parties can revisit this issue. To instead put this case on ice for 90 days simply because the parties have been ordered to discuss settlement is premature.

*   *   *   *   *

Therefore, Defendant opposes Plaintiffs' request for 90 days of tolling on any statute of limitations applicable to opt-ins' claims. Defendant does not oppose an Order tolling (a) the effectiveness of the Court's December 17, 2013 decertification decision, (b) for a period of 45 days from the date of that decision, to January 31, 2014.

Dated: January 6, 2014

Respectfully submitted,
Illinois Bell Telephone Company
d/b/a AT&T Illinois

By: s/ Gregory P. Abrams
    One of its attorneys

George A. Stohner (*pro hac vice*)
Morgan, Lewis & Bockius LLP
300 South Grant Ave., Twenty-Second Floor
Los Angeles, California 90071-3132
Phone: 213-612-2500
Fax: 213-612-2501

1111 Pennsylvania Ave., NW
Washington DC 20004

Phone: 202-739-3000
Fax: 202-739-3001
gstohner@morganlewis.com


Gregory P. Abrams
Rita Srivastava
Morgan, Lewis & Bockius, LLP
77 W. Wacker Drive
Chicago, Illinois 60601
Phone: 312-324-1000
Fax: 312-324-1001
gabrams@morganlewis.com
rsrivastava@morganlewis.com

## CERTIFICATE OF SERVICE

There undersigned attorney hereby certifies that on January 6, 2014, a true and correct copy of the foregoing document was served by electronic means through the Court's ECF System to:

>Aaron B. Maduff
>Michael L. Maduff
>Walker R. Lawrence
>Maduff & Maduff LLC
>205 North Michigan Avenue
>Suite 2050
>Chicago, IL 60601
>(312) 276-9000
>ABMaduff@madufflaw.com
>mlmaduff@madufflaw.com
>WRLawrence@madufflaw.com

>s/ Gregory P. Abrams