# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES BLAKES, STEVEN CLARK, HERMAN DECKYS, BRADLEY HUNT, PHILLIPE PORTER, ERNEST ROBERTS, JR., LARRY WILLIAMS, for themselves and on behalf of similarly situated others,<br><br>      Plaintiffs,<br><br>    v.<br><br>ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T Illinois,<br><br>      Defendant. | Case No. 11-cv-336<br><br>Magistrate Judge Kim |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JAMES BLAKES

ON THE MEMORANDUM OF LAW
George A. Stohner
Gregory P. Abrams
Rita Srivastava
Morgan, Lewis & Bockius, LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
312.324.1000
gstohner@morganlewis.com
gabrams@morganlewis.com
rsrivastava@morganlewis.com

DB2/ 25076968.1

I.   INTRODUCTION

Summary Judgment is proper on Plaintiff James Blakes' ("Plaintiff" or "Blakes") Fair Labor Standards Act ("FLSA") claim for multiple reasons. First, allegations of off-the-clock work beyond those pled in his complaint (i.e., lunch break work due to job site safety and traveling among job sites, or post-shift electronic timesheet entry) should be rejected. Blakes' FLSA claim also fails because he cannot establish either the occurrence or the frequency of alleged off-the-clock work. Further, Blakes cannot recover for allegedly uncompensated time he never reported working (in violation of company policy Blakes knew and understood) and his supervisors did not know about. Because Blakes raises no issue for trial, Illinois Bell is entitled to judgment as a matter of law.

II.  SUMMARY OF KEY FACTS[1]

   A. Background

Illinois Bell employs Cable Splicers in its Construction & Engineering ("C&E") division. (SOF ¶ 5.) One group of Cable Splicers is the "Business as Usual" or "BAU" Cable Splicers, who perform such work as splicing copper wires underground or at a cross box. (SOF ¶ 9.) DAVAR Cable Splicers conduct line testing and test aerial pairs, and First Mile Cable Splicers handle predominately maintenance work. (SOF ¶ 9.) Cable Splicers perform this work "in the field" rather than at Illinois Bell garages. (SOF ¶¶ 6-7.) Unless there was a special circumstance or a particular reason to return to the garage, a Cable Splicer is at the garage for only a small portion of his day at the start and end of his shift. (SOF ¶ 7.) Cable Splicers are non-exempt employees paid on an hourly basis and are typically scheduled for eight and one-half hour days,

---

[1] Citations to Illinois Bell's Rule 56.1 Statement of Undisputed Material Facts appear as ("SOF"__). This is a summary of the facts stated more fully in the accompanying statement of facts. These facts stated herein and in the accompanying statement of facts are proposed for purposes of summary judgment *only*. Should any claims proceed to trial, Defendant reserves the right to dispute any of these facts.

five days a week, with a thirty-minute unpaid lunch break. (SOF ¶ 14) Illinois Bell Cable Splicers are represented by the International Brotherhood of Electrical Workers ("IBEW"), which is signatory to a collective bargaining agreement ("CBA") with Illinois Bell. (SOF ¶ 19.)

Blakes has worked for Illinois Bell, or one of its predecessor companies, since 1992. (SOF ¶ 1.) Blakes worked at Illinois Bell garage at 2011 W. Hastings Street ("Hastings") in Chicago. (SOF ¶ 12.) Blakes' regularly scheduled shift was from 7:00 a.m. to 3:30 p.m. (SOF ¶ 15.)

### B. Illinois Bell Policies and Guidelines for Timekeeping and Lunch Breaks

Illinois Bell policy, articulated in multiple places, requires all Cable Splicers to take a lunch break every day and report all hours worked. (SOF ¶¶ 20-29.) The CBA sets forth provisions regarding daily, unpaid meal breaks and overtime compensation.[2] (SOF ¶¶ 21-22.) Additionally, the Code of Business Conduct ("COBC") states that:

> Nonexempt (overtime eligible) employees must accurately report all hours worked each day and each week and may not work overtime unless it is approved by a supervisor in advance. However, all overtime hours worked by nonexempt employees must be paid regardless of whether they were approved. Managers are prohibited from requiring or permitting nonexempt employees to work off the clock.[3] (SOF ¶ 23.)

Other company expectations provide that: "Employees are responsible for submitting accurate and complete daily timesheets at the end of their shift. Time documented must match the time actually worked" and "Daily time input … must match the time actually worked and

---

[2] The CBA states that "Employees shall be paid at the overtime rate of one and one-half (1 ½) times their basic hourly wage rate including applicable differentials for work performed…in excess of eight hours in a day or…in excess of forty (40) hours in a week[.]" (SOF ¶ 22.) It also states, "[t]he unpaid lunch period for full-time employees and part-time employees….shall be one (1) hour and it shall be taken between the third and sixth hour of the shift as scheduled by the Company. Shorter lunch periods may be mutually agreed upon by the Union and local management." (SOF ¶ 21.)

[3] Substantially similar language was included in subsequent years through links from the COBC to the AT&T portal. (SOF ¶ 24).

reported in the system. Time input should be accurate … it is the technician's responsibility to input his or her own time." (SOF ¶¶ 23-28.) Technicians are expected to receive advance approval to work any unplanned overtime. (SOF ¶ 28) However, if an employee nonetheless works through his lunch break or outside his shift without prior approval, he is required to be paid for such time. (SOF ¶ 29.)

Blakes understood these policies. Blakes knows that Illinois Bell policy is to record all hours worked, falsifying company records violates company policy, and he should tell his manager if he is not able to take his lunch. (SOF ¶¶ 38-39.) Blakes is unaware of a situation where he was not paid for all time reported, including overtime. (SOF ¶¶ 36-37.)[4]

### C. Blakes' Allegations Regarding Off-the-Clock Work

#### 1. Newly Alleged Pre-Shift Work

None of Blakes' complaints filed in this case alleged pre-shift work, and he did not allege any such work in the declaration submitted in support of conditional certification. (Dkt. 11; Dkt. 34-1.) During his deposition though, Blakes testified he typically arrives at work at 6:30 a.m. after dropping his child off at school. (SOF ¶ 46.) But "the majority of time I'm sitting inside the assembly room just waiting on, you know, the tailgate meeting." (SOF ¶ 47.)

Blakes did testify he "sometimes" reviewed his blueprint before the morning tailgate meeting, but he could not estimate the number of times he reviewed a blueprint before the start of his shift or how long he spent doing so, was never told to review a blueprint before the start of his shift, never told his manager or supervisor he did so, acknowledged there is no way to figure out what specific days he reviewed a job print before the tailgate meeting, and never requested to

---

[4] Although Blakes testified that he would subtract time from a particular job task to increase his efficiency scores, he admitted that doing so did *not* affect the total amount of time he was paid on a particular day. (SOF ¶ 44.)

be paid for or reported this time. (SOF ¶¶ 48-52.) Likewise, though Blakes testified he may get supplies before the start of his shift and "on occasion" told his manager, the amount of time he spent doing so varied, he does not know which days he would go to the supply room before the start of his shift versus after, he was never instructed to pick up supplies pre-shift, and he agreed it was his personal choice to do so. (SOF ¶¶ 54-58.) Blakes also testified to conversations with unidentified managers before 7:00 a.m. if he "need[s] to," but he could not remember how many times this happened. (SOF ¶¶ 59-60.) When asked why he might speak with a manager before his shift as opposed to after, Blakes could offer only "[s]ome days I may have needed questions answered; some days I wouldn't." (SOF ¶ 60.) In fact, contrary to the notion he worked pre-shift without pay, Blakes testified that "[o]utside of the lunch break thing," he has *never* worked overtime that was not preapproved. (SOF ¶ 41.)

        2.        **Alleged Lunch Break Work**

Blakes' complaints and pre-conditional certification declaration alleged lunch break work based only on maintaining job site safety and traveling among job sites. (Dkt. 11, Dkt. 34-1.) Along these lines, Blakes testified he may work through lunch if he was guarding a manhole or doing aerial work. (SOF ¶¶ 63, 65.) Yet he testified if the manhole was not open he could take a lunch and that a partner could be at the manhole while the other sits in his truck eating lunch. (SOF ¶ 64.) And as for aerial work, Blakes alleges that he worked through lunch "some days," and he is "sure" that on occasion he has spent 30 minutes eating lunch on days he worked aerial. (SOF ¶ 65.)

Blakes could offer nothing specific about his alleged lunch break work beyond representing he was unable to take a lunch "at least two days" per week. (SOF ¶¶ 62, 66-67.) Blakes acknowledged there is no way from looking at his manual or electronic timesheets to

know whether he worked through lunch. (SOF ¶ 67.)[5] Blakes suggested blueprints may reflect if he worked underground, but the blueprint does not show what particular technician went into the manhole, where the other technician would be, how much time the technician actually spent in the manhole, or whether the manhole had been open that day. (SOF ¶ 68.) Further, Blakes claims he worked through lunch to meet his numbers, but (apart from this allegation *never* being pled) he is not aware of any document that would allow him to determine which jobs may have caused him to work through lunch to meet his numbers and which jobs did not do so. (SOF ¶69.)

Notably, Blakes never requested to be paid for time he worked through his lunch. (SOF ¶ 70.) Nor did he report the time he worked through lunch on his timesheets, even though he admits that violates company policy. (SOF ¶¶ 71-72.) And Blakes he never told a supervisor or manager that he worked through lunch. (SOF ¶ 73.)[6]

## II.     ARGUMENT

### A.     Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 977 (7th Cir. 2008). While the facts and all reasonable inferences drawn therefrom are to be viewed in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), plaintiff bears the burden of going outside of the pleadings and presenting admissible evidence demonstrating that facts exist that raise genuine issues of fact that should be reserved for trial. *See Celotex Corp. v. Catratt*, 477 U.S. 317, 324 (1986). Plaintiff must present "significant probative evidence" to

---

[5] In response to his attorney's questioning, Blakes testified timesheets could depict if he worked underground; Blakes was referring though to "remarks" that may be entered on timesheets a technician may fill out, yet Blakes did not always put such remarks in his timesheets, (SOF ¶ 66.)
[6] Blakes makes no claim for alleged post-shift work. (SOF ¶¶ 74-76).

support his claims. *Tri-Gen Inc. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 433 F.3d 1024, 1038 (7th Cir. 2006) (internal quotation omitted). That is, plaintiffs confronted with a summary judgment motion "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Jones v. City of Elkhart, Inc.*, 737 F.3d 1107 (7th Cir. 2013) (quotations omitted). Summary judgment should be granted if the party with the burden of proof at trial fails to establish an essential element of his case. *See Celotex*, 477 U.S. at 322.

    **B.**  **The Court Should Reject Any Off-The-Clock Allegations Blakes Never Pled.**

In the more than three years since this lawsuit was filed, Blakes never sought to amend his complaint to allege pre-shift work or work during lunch breaks for reasons other than job safety or inter-site travel, despite ample notice from the Court that this case does not include "any possible FLSA claim under the sun." (Dkt. 56). Everything else was a "see-what-sticks" effort to try to preclude decertification. The Court should again reject any allegations that were never properly raised in this case – meaning all alleged pre-shift work and lunch break work for reasons other than job safety or traveling.

In this regard, the Court should also reject the new theory advanced during discovery that the Management System and Operating Control ("MSOC") system caused off-the-clock work. This Court recognized how "the efficiency theory represented a significant shift" in Plaintiffs' case and granted Illinois Bell's motion for a protective order for Plaintiffs' discovery requests on their new theory. (Dkt. 186, 233). Further, this Court also recognized, "the Seventh Circuit has cast doubt on the idea that an employer is liable for its employees' attempts to improve their standing by manipulating their time records." (Dkt. 233) (citing *Espenscheid v. DirectSAT*, 705 F.3d 770, 774 (7th Cir. 2013)). Consequently, even if Blakes' belated efficiency theory were before the Court, it does not preclude summary judgment.

The Court should therefore not consider these un-pled claims as properly in this case and should summarily dismiss them. *See e.g.*, *Smith v. Safety-Kleen Systems, Inc.*, No. 10-C-6574, 2012 WL 162206, *7 (N.D. Ill. Jan. 18, 2012) (finding employer had not consented to amendment of complaint where plaintiffs raised time rounding claim as a new theory of liability not part of plaintiffs' complaint, and plaintiffs did not move to amend their complaint); *Adair v. Wisconsin Bell, Inc.,* No. 08-C-280, 2008 WL 4224360, at *5 (E.D. Wis. Sept. 11, 2008) ("[i]t is patently unfair to expect a defendant to respond to a theory of liability that shifts with each response").

### C. Blakes' Speculation To Prove His Hours Allegedly Worked During His Lunch Breaks or Before His Shift Is Insufficient To Defeat Summary Judgment.

Regardless, all of Blakes' allegations fail. Blakes bears the burden of proving he performed overtime work for which he was not properly compensated. *See Kellar v. Summit Seating, Inc.*, 664 F. 3d 169, 173, 177 (7th Cir. 2011); *Brown v. Scriptpro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superceded on other grounds by statute*. Moreover, "'under the FLSA, the employee bears the burden to show that his or her mealtimes were compensable work.'" *White*, 699 F.3d at 874. Blakes is "'in the best position' to prove that [he] [was] working…and '[t]o require…[the employer] [to] prove a negative—that the employee was not performing "work"…would perversely incentivize employers to keep closer tabs on employees[.]'" *See White v. Baptist Mem.Health Care Corp.*, 699 F.3d 869, 874 (6th Cir. 2012) (quoting *Hertz v. Woodbury County*, 566 F.3d 775, 783 (8th Cir. 2009)).

A plaintiff meets this burden only "with definite and certain evidence." *Rose v. Digital Convergence.com Inc.*, No. 3:00-cv-2057X, 2001 WL 327843 (N.D. Tex. Mar. 30, 2001) (quotations omitted) (plaintiff's affidavit averring she worked 50 hours per week "does not

constitute 'definite and certain evidence' of actual hours worked and is insufficient to survive summary judgment"); *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 521 (E.D. Tex. 2005) (holding that plaintiff, who admitted he could not quantify the amount of time he worked and conceded he did not follow the employer's procedure to receive overtime, did not provide "definite and certain" evidence he performed uncompensated work). "A mere averment of hours worked does not constitute definite and certain evidence of hours worked" and, without more, is insufficient to withstand summary judgment. *Schremp v. Langlade County*, No. 11-C-590, 2012 WL 3113177, at *3 (E.D. Wis. July 31, 2012); *see also Harvill v. Westward Comm'ns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (plaintiff's assertion she worked 210 hours of unpaid overtime, without more, is insufficient as a matter of law to establish her FLSA action). As one court in this District explained, "[i]f Plaintiff himself cannot recall even a single instance in which he was required to perform…work during his lunch break, no reasonable jury could find that such instances occurred." *Wilson v. City of Chicago*, No. 02C3379, 2004 WL 2095675, at *7 (N.D. Ill. Sept. 20, 2004).[7]

Blakes' evidence of *facts*, not unsupported allegations, to demonstrate his alleged off-the-clock work is hopelessly wanting. If the Court considers allegations of pre-shift work that were never pled, Blakes has offered no basis for concluding when or why he engaged in such activities when "the majority of the time" he just sat and waited for the tailgate meeting. A jury could not

---

[7] Nor should the Court apply the "just and reasonable inference" test articulated by the Supreme Court in *Anderson*, 328 U.S. at 686-87. As the Seventh Circuit has explained, plaintiffs may take advantage of that test's burden-shifting framework only "where the employer's records [do] not provide [an] accurate record of time worked." *Brown v. Family Dollar Stores of Ind. LP*, 534 F.3d 593, 595 (7th Cir. 2008). Blakes does not allege Defendant told him to inaccurately report his time; indeed, his failure to record hours worked in derogation of company policy accounts for any purportedly inaccurate records. *Schremp*, 2012 WL 3113177, at *3 ("Where an employee maintains time records and there is no indication that the employer instructed the employee not to accurately report his time, the accurate time records will establish the amount of damages, and the general rule that precludes recovery of uncertain or speculative damages is appropriate.").

determine whether Blakes reviewed a blueprint, when Blakes provides not even an estimate of how frequently he did so and knows of no way to determine when he did so; collected supplies, when he cannot say which days he would go to the supply room pre-shift versus after his shift started); or talked to a manager, when he would do so only if he happened to have questions and cannot remember how many times this has happened. (*Infra*, pp.3-4.)

The same is true with alleged lunch break work. Blakes testified to working through lunch if a manhole was open, but not if it was closed; one person could eat lunch while the other was in a manhole; and no timesheets or blue prints would depict whether Blakes in fact was working in a manhole and allegedly unable to take a lunch (and he worked through lunch due to aerial work only "some days" and is "sure" he has spent 30 minutes eating lunch despite being assigned an aerial job). Nor could Blakes demonstrate when he worked through lunch to meet his "numbers" and when he did not. (*Infra*, pp. 4-5.)

Indeed, Blakes' offer of nothing but speculation as to his off-the-clock work is even more unavailing when he admits that had he, as policy dictated, recorded such time, he would have been paid, as he has always been paid for time he reported. (SOF ¶ 37.) Blakes admits he could offer nothing precise to identify which days he may not have reported his time correctly and which days he did. (SOF ¶ 43.) Consequently, no jury could be able to do this task for him.

Because Blakes fails to offer evidence regarding his time worked before his shift or during lunch break, none of these claims can survive summary judgment. *See Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 729 F. Supp. 2d 1038, 1064-65 (S.D. Iowa 2010) (granting summary judgment in case in which the plaintiff was "unable to provide even a single discrete instance where one of their lunch breaks at those locations was *actually* interrupted" … "Plaintiffs' vague and generalized assertions of frequent interruptions lend little to the analysis of

whether their time was spent predominantly for [defendant's] benefit rather than for their own.") (emphasis original); *Golden v. World Security Agency, Inc.*, 884 F.Supp. 2d 675, 700 (N.D. Ill. 2012) (granting summary judgment where plaintiffs provided no foundational testimony or other evidence regarding how estimates of overtime wages supposedly due were calculated and provided no information regarding days, time or number of hours worked); *Millington v. Morrow Cty. Bd. of Comm'rs*, No. 2:06-cv-347, 2007 WL 2908817, at *7 (S.D. Ohio Oct. 4, 2007) ("Plaintiff's bare allegation that he worked an average of five hours every week at home [was] insufficient to meet his burden of proof. Mere conclusory, factually unsupported allegations are insufficient to withstand a motion for summary judgment.").[8]

In sum, Blakes' inability to identify any instances in which he was required to perform uncompensated work, and his support of his claims with nothing beyond pure speculation, cannot create a genuine issue of material fact sufficient to overcome summary judgment.

### D. Blakes Fails To Create a Genuine Dispute Of Material Fact As To Illinois Bell's Knowledge Of Any Alleged Off-The-Clock Work.

Even if Blakes could show with sufficient specificity he performed uncompensated work, he would still raise no issue for trial because he cannot demonstrate Illinois Bell knew anything about it. An employee asserting an overtime claim "must show" that the employer "had actual or constructive knowledge of [the] overtime work." *Kellar*, 664 F.3d at 177; *Gaines v. K-Five Const. Corp.*, 742 F.3d 256, 270-71 (7th Cir. 2014) (an employer has no obligation to pay for

---

[8] *See also Goal v. Retzer Resources, Inc.*, No. 5:09-cv-00137, 2010 WL 4867966, at *9 (E.D. Ark. Nov. 3, 2010) (bare allegations regarding amount of overtime worked insufficient to avoid summary judgment); *Daniels v. Finish Line, Inc.*, No. 2:07-cv-1501-GEB, 2008 WL 4814008, at *3 (E.D. Cal. Oct. 31, 2008) (failure to submit any evidence beyond bare allegations and vague undocumented estimates to support claim insufficient to survive summary judgment); *Simmons v. Wal-Mart Assocs., Inc.*, No. 2:04-cv-51, 2005 WL 1684002, at *10 (S.D. Ohio July 19, 2005) (bald assertions of overtime hours worked, unsupported by any documentation, was insufficient to create a genuine issue of material fact); *Kolesnikow v. Hudson Valley Hosp. Center*, 622 F. Supp. 2d 98, 119 (S.D.N.Y. May 20, 2009) (plaintiff had not offered the "concrete particulars" or credible testimony approximating the number of hours worked without pay sufficient to withstand summary judgment).

work it did not know about and had no reason to know about); *see also* 29 U.S.C. § 203(g), 29 C.F.R. § 785.11. As one court recently explained in granting summary judgment on Wisconsin Bell cable technicians' off-the-clock claims:

> [I]t is undisputed that defendants' existing system could capture all work time, so long as employees accurately reported all the time they worked. It would be improper to hold defendants liable for plaintiffs' voluntary failure to comply with reasonable timekeeping procedures, particularly when there is no evidence that defendants discouraged plaintiffs from complying with the system or had any reason to believe plaintiffs would not comply with it. *Boelk v. AT&T Teleholdings, Inc.*, *et. al.*, No. 12-cv-40-bbc, 2013 WL 3777251, at *7 (W.D. Wis. July 19, 2013).

Here, Blakes could not identify one instance in which he made anyone aware that he worked time that he did not report. (SOF ¶ 42.) Blakes' falsification of time records in direct violation of Illinois Bell policy that Blakes well knew precludes recovery of this unreported time.

### 1. Blakes' Admitted Deception Defeats His FLSA Claim As A Matter of Law.

A plaintiff cannot build a FLSA claim on the foundation of his own misrepresentation. *See generally Boelk*, 2013 WL 3777251, at *7 (granting summary judgment for Wisconsin Bell and holding that "if any employee deliberately prevents the employer from acquiring knowledge of the overtime work, the employer should not be held liable for overtime pay under the FLSA"); *Debose v. Broward Health*, No. 08-61411-CIV-MOORE, 2009 WL 4884535, at *9 (S.D. Fla. Dec. 17, 2009) (employer "cannot be held liable for an FLSA violation where an employee prevents it from learning about overtime work by actively attempting to deceive [it] by performing overtime work without detection"). Illinois Bell has "the right to require employees to keep track of their work time." *Schremp*, 2012 WL 3113177 at *2. But "[w]hen [an] employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *White*, 699 F.3d at 876. Consequently, "where an employee elects to under-

report his or her work time, the employer is not liable for the failure to pay unreported overtime under the FLSA." *Schremp*, 2012 WL 3113177, at *2.

As noted above, Blakes understood Illinois Bell's policies required him to accurately report all hours worked, and there is no dispute when Blakes followed the policies he was paid for all hours recorded. (*Supra*, pp. 2-3.) Moreover, Blakes does not offer evidence, or even allege, he was instructed not to report all time or that anyone manipulated his time records. *Boelk,* 2013 WL 3777251, *7 (granting summary judgment where plaintiffs did not allege defendants instructed them not to report overtime, told them to delete overtime that they reported or refused to pay them for reported overtime). Thus, what happened here was not a "failure by [the employer]" to keep accurate records or properly pay overtime, but "a failure by [the employees] to comply with [the employer's] timekeeping system." *Brown*, 700 F.3d at 1230. Blakes' decision to disregard Company policy and deliberately submit inaccurate time records cannot entitle him to relief under the FLSA. To the contrary, "ceasing to keep track of one's missed lunches does not solve the problem of not being reimbursed, but instead precludes the possibility of future reimbursement by preventing the employer from discovering the unpaid work." *Berger v. Cleveland Clinic Found.*, No. 1:05 CV 1508, 2007 WL 2902907, at *13 (N.D. Ohio Sept. 29, 2007).[9]

Further, with respect to Blakes' testimony that he worked through lunch to boost his efficiency numbers, even if this allegation were properly in this case, this Court has recognized that "the very nature of the plaintiffs' efficiency-pressure argument hinges on management not

---

[9] *See also Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (affirming judgment for employer in case in which plaintiff "testified in his deposition that he 'did not mention any unpaid overtime work to any store official prior to filing his complaint'"); *Von Friewalde v. Boeing Aerospace Operations, Inc.*, No. 3:00-cv-2057x, 2009 WL 2391400, at *8 (5th Cir. Aug. 4, 2009) (holding plaintiffs could not recover claims arising from "days on which [they] failed to inform their managers that they had been forced to stay … late").

realizing that cable splicers are underreporting their time," and that "the strategy of hiding time to improve efficiency numbers only works if managers are unaware of the practice," but if an employee "'deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation' of the FLSA." (Dkt. No. 233, p. 40) (*citing Harvill*, 433 F.3d at 441). This sort of active concealment is precisely what courts have held *refutes* any suggestion an employer knew of the alleged overtime. *See, e.g.*, *Kellar*, 664 F.3d at 178 (affirming summary judgment for employer in case in which the plaintiff "would simply write in her time card that she arrived at the beginning of her scheduled work shift" whenever she forgot to punch in); *White*, 699 F.3d at 876 (holding that where plaintiff "decided not to follow [defendant's] procedure for being compensated for interrupted meal breaks . . . there [wa]s no way [defendant] should have known that she was not being compensated"); *Brown*, 700 F.3d at 1230 (affirming summary judgment for employer in case in which plaintiff "chose not to enter" his hours into the defendant "timekeeping system" even though "he was required to do so").[10]

### 2. Blakes Lacks Any Other Basis On Which To Assert Illinois Bell Had Notice That He Allegedly Worked Off-The-Clock.

---

[10] *See also Harvill*, 433 F.3d at 441 ("[W]here the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]."); *Wood v. Mid-Am. Mgmt. Corp.*, No. 05-4124, 2006 WL 2188706, at *3 (6th Cir. 2006) ("[A]n employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid."); *Forrester*, 646 F.2d at 414 ("[I]t is quite obvious that, besides not attempting to notify [defendant] of his alleged uncompensated overtime hours, [plaintiff] deliberately omitted the inclusion of those hours from his time sheet even though he admittedly knew that he would have been paid for those hours."); *Schremp*, 2012 WL 3113177 at *3 (entering summary judgment on claims of an employee who "was not accurately reporting his time"); *see also* Dkt. No. 233, p. 39: ("Although an employer has a duty to ensure that its employees are not engaging in work it does not want performed, 'the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about.' … And while knowledge of a supervisor can be imputed to the employer … access to records showing that employees worked unpaid overtime is not necessarily sufficient to show constructive knowledge[.]") (citations omitted).

Blakes has no other basis on which to charge Illinois Bell with knowledge of his alleged uncompensated work. Unlike many other work environments, Blakes spent the lion share of his day outside of any direct supervision, severely restricting the ability to detect off-the-clock work. (SOF ¶ 8). In addition, if he gathered supplies before his shift, this too would be away from managers within their offices in the garage. (SOF ¶ 17). In fact, when asked if his supervisors were aware of what days he did report his time correctly, Blakes testified, "I have no idea," and admits he never told or in any way conveyed such information to his supervisor. (SOF ¶ 44.)

Indeed, Blakes never told his supervisor or manager he had worked through lunch. (SOF ¶ 73). *See Boelk*, 2013 WL 3777251, at *7 (granting summary judgment where plaintiffs had not alleged that they told any of their supervisors or managers that they were working during their lunches without reporting it); *Forrester*, 646 F.2d at 414 (affirming judgment for employer in case in which the plaintiff testified in his deposition that he "did not mention any unpaid overtime work to any store official prior to filing his complaint"). Blakes testified to "on occasion" informing a manager he collected supplies before his shift or had a pre-shift conversations with his manager, but he offers no specific facts on these points and he does *not* allege that he informed management he was not reporting this time or that management did not know he failed to do so in derogation of company policy – indeed, Blakes cannot identify any specific day or circumstances where any such activities occurred. Such evidence is insufficient to show that Defendant had any knowledge of Blakes' alleged overtime work. *Kellar*, 664 F.3d at 177-78 (holding employer had no knowledge of pre-shift work even though management was aware that employee was punching in early because management had no "reason to believe that" plaintiff was actually performing work after she punched in); *Schremp*, 2012 WL 3113177 at *4 (the fact that supervisors observed plaintiff performing work outside of his regular hours did not

establish that the supervisors "knew that he was not being compensated for such time"); *Gaines*, 742 F.3d at 270 (noting that court could not make a reasonable inference that anybody knew plaintiff was performing pre-shift work based on the "simple fact" that supervisors may have seen plaintiff come to work early); *Darrikhuma v. Southland Corp.*, 975 F.Supp. 778, 783-4 (D. Md. 1997), *aff'd*, 129 F.3d 1258 (4th Cir. 1997) (although supervisors saw employee working on weekends, they did not know employee was working off the clock).

Moreover, despite Blakes' position as a union steward and his testimony that he was not afraid of discipline or retaliation by management or the company for filing grievances, he did not file a grievance involving off-the-clock allegations.[11]  Courts also have recognized that "[i]mputing constructive knowledge would be particularly inappropriate" when the evidence shows that employees were paid for the overtime they reported.  *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1085 (N.D. Cal. 2007); *see also Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1326 (S.D. Fla. 1999) ("It is . . . unclear why [an employee] would follow appropriate procedures for reimbursement for some overtime assignments, but not others.").  So too here, Blakes was indisputably paid for all time he did report.  Because Blakes cannot raise any material dispute regarding Illinois Bell's knowledge of his allegedly uncompensated work, his claim fails as a matter of law.

### III. CONCLUSION

For the reasons set forth above, the Court should grant Illinois Bell's Motion and enter summary judgment for Defendant on Plaintiff James Blakes' claims.

---

[11] *See generally Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 562 (S.D. Tex. 2011) (employee failed to show "that she ever complained about or reported overtime hours to [defendant]"); *Kellar*, 664 F.3d at 178 (employer "had little reason to know, or even suspect" that plaintiff was underreporting her time "in direct contradiction of" company policy).

Respectfully submitted,

By: s/ *Rita Srivastava*

    George A. Stohner
    Gregory P. Abrams
    Rita Srivastava
    Morgan, Lewis & Bockius, LLP
    77 West Wacker Drive, 5th Floor
    Chicago, IL 60601
    312.324.1000
    gstohner@morganlewis.com
    gabrams@morganlewis.com
    rsrivastava@morganlewis.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served on the following counsel of record of May 9, 2014 via the Court's ECF System:

>Aaron Maduff
>Maduff & Maduff LLC
>205 North Michigan Avenue
>Suite 2050
>Chicago, IL 60601
>ABMaduff@madufflaw.com
>
>Walker Lawrence
>Maduff & Maduff LLC
>205 North Michigan Avenue
>Suite 2050
>Chicago, IL 60601
>WRLawrence@madufflaw.com
>
>Michael Maduff
>Maduff & Maduff LLC
>205 North Michigan Avenue
>Suite 2050
>Chicago, IL 60601
>MLMaduff@madufflaw.com

s/ *Rita Srivastava*_____