**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES BLAKES, STEVEN CLARK, HERMAN DECKYS, BRADLEY HUNT, PHILLIPE PORTER, ERNEST ROBERTS, JR., LARRY WILLIAMS, for themselves and on behalf of similarly situated others, | |
| Plaintiffs, | Case No. 11-cv-336 |
| v. | Hon. Judge Kim |
| ILLINOIS BELL TELEPHONE COMPANY d/b/a AT&T Illinois, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' AND OPT-IN PLAINTIFFS' CERTIFIED CLAIMS CONCERNING POST-SHIFT ELECTRONIC TIMESHEET ENTRY**

George A. Stohner
Gregory P. Abrams
Rita Srivastava
Morgan, Lewis & Bockius, LLP
77 West Wacker Drive, 5th Floor
Chicago, IL 60601

## I.     INTRODUCTION

The sole class claim remaining certified in this case alleges that Illinois Bell Cable Splicers must return to the garage no earlier than 20 minutes before their shifts end, which purportedly leaves insufficient time to complete electronic timesheets on garage computers and results in them entering time post-shift and without pay.  Because this claim fails as a matter of law in numerous respects, the Court should grant summary judgment in Illinois Bell's favor.

First, the time at issue is not compensable under the FLSA, and the Court therefore should dismiss this claim in its entirety.  Plaintiffs[1] seek compensation for entering their time and waiting to do so.  Yet, as discussed below, the Department of Labor ("DOL") is clear that time spent "checking in and out and waiting in line to do so" is non-compensable.  *See* 29 C.F.R. § 790.7(g).  If waiting to punch a time card is not compensable work under the FLSA, then so too is this same time associated with its modern equivalent of electronic timekeeping.

Second, even if such time were "work," Plaintiffs cannot show that Illinois Bell has actual or constructive knowledge that Cable Splicers *throughout the collective* were systematically entering time after their shifts without pay.  As this claim remains certified for class treatment, Plaintiffs have to prove such knowledge on a class-wide basis.  Such proof is lacking because company policy requires that employees accurately report all time worked, Plaintiffs concede they were paid for all time reported, and Plaintiffs admit they were able to complete their timesheets on a different day if needed.  Although their supervisors reviewed and approved the relevant timesheets, they credibly disclaim knowledge of any off-the-clock time entry because *the timekeeping system does not display when the indicated time entries were actually submitted*.  Accordingly, supervisors reasonably relied on Plaintiffs to accurately report

---

[1] For purposes of this Memorandum, the named plaintiffs and those who consented to opt into this case are referred to herein as "Plaintiffs."

1

their time as mandated by Company policy and/or complete their timesheet on another day if necessary, both of which they failed to do.  Because there can be no genuine dispute that Illinois Bell lacked knowledge that unpaid, post-shift electronic timesheet entries were occurring class-wide, Plaintiffs cannot prove an essential element of their claim.

If summary judgment is not granted on either of these bases, summary judgment still is proper because the record establishes Plaintiffs cannot prove liability *as a class*.  Plaintiffs have maintained their post-shift electronic timesheet entry claim is amenable to class treatment; its viability necessarily stands or falls as a class.  Plaintiffs' allegations of a pervasive garage computer shortage state-wide, that they were systematically disciplined for not entering their time that day or returning to the garage more than 20 minutes before the end of their shifts, and that they regularly stayed past their shift at least 15 minutes completing time sheets were just that – allegations, not sustained with any actual class-wide evidence.  Indeed, the record shows anything but a systemic pattern of Cable Splicers entering time after their shifts and without pay. In fact, as discussed further below and in the Expert Report of John H. Johnson ("Johnson Report," Ex. A), there are multiple independent reasons why 74% of the class members cannot prove liability on even what appear to be post-shift, unpaid timesheet entries, such as, they did not occur during a 40-hour workweek or this time is offset by overtime premiums paid pursuant to a collective bargaining agreement.  When only 26% of the class (92 Plaintiffs) have 711 days of *potential* FLSA violations (or 3.8% of work days that occur during weeks of 40 hours or more), this class claim cannot survive. (SOF, ¶ 76).[2]

---

[2] Citations to Illinois Bell's Rule 56.1 Statement of Undisputed Material Facts appear as ("SOF"__).  This is a summary of the facts stated more fully in the accompanying statement of facts. The facts stated herein and in the accompanying statement of facts are proposed for purposes of summary judgment *only*. Should any claims proceed to trial, Defendant reserves the right to dispute any of these facts.

## II.   PROCEDURAL BACKGROUND

In their February 9, 2011 Amended Complaint, Plaintiffs alleged that they ended their shifts by completing timesheets on Illinois Bell computers located at the garages, after returning from their assigned job sites.  (Pls.' Am. Compl. (Dkt. 11), ¶¶ 22, 27).  Plaintiffs alleged they, and those allegedly similarly situated, were required to return to their garages "at no time more than 20 minutes before the end of their scheduled shift. (E.g., must return between 3:10 pm and 3:30 pm.)," but there were not enough computers to enable them to complete their timesheets before their shifts ended.  (*Id.*, ¶¶ 28-29).  Plaintiffs allegedly were required to complete their timesheets daily, "[o]n a regular basis" worked "at least 15 minutes beyond their scheduled shift completing their time sheets" and "have been disciplined and given verbal warnings for leaving at the end of their scheduled shift without completing their time sheets," and Illinois Bell allegedly "does not pay Plaintiffs and similarly situated others for completing their time sheets after the end of their scheduled shift."  (*Id.*, ¶¶ 30-32).

Plaintiffs thereafter moved for FLSA Section 216(b) conditional certification, again contending that "[b]efore they can leave for the day, Illinois Bell requires Cable Splicers to complete their time sheet for the day."  (Dkt. 34, p. 4).  Aside from Plaintiff James Blakes, each Plaintiff executed a declaration stating Illinois Bell required them to complete their time sheets each day at the end of their shifts beyond their scheduled end time of 3:30 p.m.  (Dkt. 34-1, ¶ 23(b)).[3]  This Court granted Plaintiffs' motion and authorized notice, in part, on "time spent post-shift completing time sheets."  (Dkt. 56, p. 16).

On December 17, 2013, the Court decertified all conditionally certified claims *except* "the claim that the plaintiffs are required to complete time sheets post-shift without pay."  (Dkt.

---

[3] Blakes testified at his deposition to never staying post-shift to complete his timesheets.  (SOF, ¶ 40).

233, p. 52).  The Court explained, "According to the plaintiffs, Illinois Bell's policy requiring cable splicers to return to their garage by 3:10 p.m. routinely results in unpaid time spent to complete their JAM paperwork, because 20 minutes is an insufficient window in which to clean up and prepare for the next day and also submit their time sheets," and that "[d]etermining whether that 20-minute period is sufficient is an objective inquiry untied to any questions about individual desires to pad efficiency statistics or other subjective motivations."  (*Id.*, p. 54). Illinois Bell now moves for summary judgment.

## III.  <u>FACTUAL BACKGROUND</u>

Plaintiffs are non-exempt employees who have worked as Cable Splicers for Illinois Bell. (SOF, ¶ 1).  Since December 2009, Cable Splicers have completed electronic timesheets on JAM (Jobs Administration Management system) via mechanized time reporting or "MTR."  (SOF, ¶¶ 5-7).  Before then, as Plaintiffs acknowledge, employees "still recorded their time in the same way.  It was just done on a paper timesheet that was faxed to an office where it was input into the JAM system by a CWC clerk."  (Pls.' Resp. to Mot. to Decert. (Dkt. 217-1), p. 18).[4]  Illinois Bell trained managers and technicians to use this new system.  (SOF, ¶ 14).[5]

Employees can and do self-report in JAM when they work any overtime hours.  (SOF, ¶ 10).  Company policy requires technicians to report all time worked accurately and prohibits technicians from working off-the-clock (as this Court already recognized)[6]:

- <u>Code of Business Conduct</u>:  Nonexempt (overtime eligible) employees must accurately report all hours worked each day and each week and may not work overtime unless it is approved by a supervisor in advance. However, all overtime hours worked by nonexempt

---

[4] *See also* (SOF, ¶¶ 8-9).

[5] Not all Cable Splicers though enter their time on garage computers, as DAVAR and DEG technicians can use laptops.  (SOF, ¶¶ 15-17).

[6] *See* Dkt. 233, p. 6 ("Several Illinois Bell policies officially reinforce the idea that cable splicers are required to report when they work through lunch or before or after a shift, regardless of whether they have received preapproval).

4

employees must be paid regardless of whether they were approved. Managers are prohibited from requiring or permitting nonexempt employees to work off the clock. (SOF, ¶ 22; *see also* SOF, ¶ 23).

- Telecom Operations Non-Management Employee Expectations: Employees are responsible for submitting accurate and complete daily timesheets at the end of their shift. Time documented must match the time actually worked. (SOF, ¶ 24).

- Construction Technician Expectations: Daily time input, closing of cable transfers, and releasing of delayed orders must be accurately completed after each job and must match the time actually worked and reported in the system. Time input should be accurate and all job steps closed when the job is complete. All overruns should be documented properly in the system. It is the technician's responsibility to input his or her own time. (SOF, ¶ 25).

Plaintiffs and those opt-ins who gave depositions in this case understood these policies and admitted to being paid for all time they reported, including overtime that was not pre-approved.[7] This includes time spent entering their work time in JAM.[8]

Once the technicians submit their time in JAM, it is sent to the manager to be approved or rejected; if approved, this time is loaded into E-Link, which is used by payroll to calculate pay. (SOF, ¶ 11). Notably, the JAM time submissions that supervisors review do *not* indicate a timestamp (aside from the date) to show when the technician submitted his or her time. (SOF, ¶¶ 12-13). Thus, a supervisor reviewing a technician's JAM timesheet entry would *not* see *when* during the course of a day the timesheet was submitted. Plaintiffs also admitted that, if needed, they could enter their time the following day rather than stay post-shift to do so.[9]

In addition, the theory that Plaintiffs routinely return to their garages only after 3:10 p.m. is contradicted by the record. In addition to Plaintiffs' testimony to the contrary, the Johnson

---

[7] *See* Dkt. 233, p. 26 ("Many of the deposed cable splicers acknowledged that when they reported overtime work, Illinois Bell paid them for it, whether or not they sought preapproval."); *see also* (SOF ¶¶ 26-36).

[8] *See* (SOF ¶¶ 37-39 (Deckys Dep. 226 (Q: Yeah. If you went to the garage at 3:27 and you stayed at the garage until 4:00 to do your time sheet, you would get paid until 4:00, correct? A: If that's what I put on my time sheet, correct."); Sterk Dep. 217 ("If I entered time after 3:30 and it was time stamped after 3:30, then, yes, I got paid for it."); Rentschler Dep. 240-41 (does not recall any day in which he entered time after 3:30 but was not paid overtime))).

[9] *See* (SOF, ¶¶ 45-53).

Report shows 6,183 instances of technicians *completing their timesheets before 3:10 p.m.*, meaning they were certainly back at their garages at least by then. (SOF, ¶ 80). Nor did Plaintiffs proffer evidence that they were systematically disciplined for returning to the garage early, that they routinely spent more than 15 minutes entering their time, or of a pervasive computer room logjam throughout all Illinois Bell garages. (SOF, ¶¶ 41-44).

## IV.    ARGUMENT

### A.    Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The facts and all reasonable inferences drawn from the facts are to be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986). However, it is Plaintiffs' burden of going outside of the pleadings and presenting admissible evidence demonstrating that facts exist that raise genuine issues of fact that should be reserved for trial. *See Celotex Corp. v. Catratt*, 477 U.S. 317, 324 (1986). Summary judgment should be granted if Plaintiffs fail to establish an essential element of their case. *Id.* As discussed below, such failure is evident on this class claim.

### B.    The Court Should Grant Summary Judgment on Plaintiffs' Post-Shift, Electronic Timesheet Entry Claim.

#### 1.    The Alleged Unpaid Time at Issue Is Not Compensable As a Matter of Law.

Plaintiffs' claim fails because, as a threshold matter, Illinois Bell is not required to pay for this time under the FLSA. The FLSA provides for a time and one-half premium for certain nonexempt employees who work more than 40 hours in one week. *See* 29 U.S.C. § 207(a)(1). However, the time at issue must qualify as work, a term not defined by the FLSA. *See Sandifer v. US Steel Corp.*, 134 S. Ct. 870, 875 (2014). As the Seventh Circuit has recognized, "Not all

work-related activities constitute 'work' that must be compensated." *Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 859 (7th Cir. 2009).

Thus, the Portal-to-Portal Act of 1947 ("PPA") excludes from compensable time "preliminary" or "postliminary" activities "which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(2). Of particular significance here, the DOL has made clear that "checking in and out and waiting in line to do so" may be considered "preliminary" or "postliminary" under the PPA. 29 C.F.R. § 790.7(g); *see also Tum v. Barber Foods, Inc.*, 360 F.3d 274, 281-82 (1st Cir. 2004) (denying compensation for time employees spent waiting to punch in at time clocks), *aff'd in part*, *rev'd in part on other grounds*, 546 U.S. 21 (2005).

At Illinois Bell, JAM (via MTR) is the timekeeping system in place for Cable Splicers. Indeed, Plaintiffs recognize that Cable Splicers enter time through JAM in the same way they had done with paper timesheets. (*Supra*, p. 4). Waiting in line to complete a timesheet does not become compensable simply because a more modern or sophisticated system is used.

Moreover, as the Supreme Court explained, preliminary and postliminary activities are only compensable "if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1)." *See Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956). Here too, the DOL has concluded that "activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities." 29 CFR § 790.8(c). Cable Splicers were hired to splice cable, not fill out timesheets after their productive work ended. *See* 29 C.F.R. §790.8(a) ("The 'principal' activities referred to in the statute are activities which the

7

employee is 'employed to perform[.]'").[10]  Therefore, the alleged post-shift timesheet entry is not

compensable for Illinois Bell Cable Splicers.

> **2.    Plaintiffs Cannot Establish Actual or Constructive Knowledge, on a Class-wide Basis, of Alleged Post-Shift Electronic Timesheet Entry.**

Even if the Court deems entering time in JAM compensable "work," liability does not

attach because Plaintiffs cannot show Illinois Bell knew or should have known that – on a class-

wide basis – Cable Splicers were entering time post-shift *and* without compensation.  *See Kellar*

*v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (employee asserting an overtime claim

"must show" that the employer "had actual or constructive knowledge of [the] overtime work.");

*Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 270-71 (7th Cir. 2014) (an employer has no

obligation to pay for work it did not know about and had no reason to know about).  In its

decertification decision, this Court considered "Illinois Bell's argument that knowledge is an

individualized defense not as strong" on the class timesheet entry theory.  (Dkt. 233, p. 57).

Thus, with this claim remaining certified, the question at trial then would be whether Illinois Bell

had knowledge that *throughout the collective* Plaintiffs were entering time after their shifts ended

and without being paid.  No trial is necessary, because the only answer is no.

To start with, there is no dispute that Illinois Bell requires Cable Splicers to (i) accurately

report all time worked, (ii) not work off-the-clock, and (iii) be paid for all overtime, even if it

---

[10] *See also IBP, Inc. v. Alvarez*, 546 U.S. 21, 40-41 (2005) ("[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' under *Steiner*."); *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (10th Cir. 2007) ("[T]he 'integral and indispensable' test is not a but-for test of causal necessity.").  Notably, in *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 735 F.3d 568, 570 (7th Cir. 2013), the Seventh Circuit observed how it has *not* explicitly adopted the test for "work" adopted by the Ninth Circuit, which is whether such activities are required by law, by the employer, or by the nature of the work.  The Ninth Circuit cited to these factors in *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 530 (9th Cir. 2013) to conclude time spent in security screenings upon leaving a warehouse was compensable, but the Supreme Court thereafter granted certiorari on this issue, *see* 134 S. Ct. 1490 (2014), suggesting a willingness to revisit this test (at least in the security screening context).

was not preapproved. Nor can Plaintiffs dispute that when they reported the time spent staying post-shift to enter their time in JAM, they were paid for all such time reported. Courts have recognized that "[i]mputing constructive knowledge would be particularly inappropriate" when the evidence shows that employees were paid for the overtime they reported. *See e.g.*, *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1085 (N.D. Cal. 2007); *see also Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1326 (S.D. Fla. 1999) ("It is . . . unclear why [an employee] would follow appropriate procedures for reimbursement for some overtime assignments, but not others."). And, not only did certain Plaintiffs' testimony undercut the notion of management knowledge,[11] managers disclaimed that they knew or should have known of post-shift unpaid computer entry time, in part because Cable Splicers can enter time on a subsequent day. *See e.g.*, (SOF, ¶¶ 54-65); *supra*, p. 5.

Moreover, of critical importance here, when a supervisor reviews a Cable Splicer's JAM submissions, the time *when* it is submitted is not displayed. Thus, a supervisor reviewing a Cable Splicer's JAM timesheet would not know from the face of the electronic timesheet if it was entered post-shift. This situation then is no different from a technician not reporting all time worked on a paper timesheet. As this Court recognized, knowledge cannot be inferred simply because *other* records outside of timesheets may indicate a technician had "worked" off-the-clock.[12]

---

[11] *See* (SOF, ¶¶ 66-68 (Schilling Dep. 215-16 (describing how he would not raise to manager's attention instances when he entered time post-shift); Clark Dep. 321-22 (could not name one supervisor who appeared to see him after he submitted his timesheet.); Smith Dep. 157-58 (describing how there was no manager on-site when he comes back to the garage))).

[12] *See* Dkt. 233, p. 39 ("Although an employer has a duty to ensure that its employees are not engaging in work it does not want performed, 'the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about.' … And while knowledge of a supervisor can be imputed to the employer … access to records showing that employees worked unpaid overtime is not necessarily sufficient to show constructive knowledge[.]") (citations omitted)

Under these circumstances, when an employee elects not to accurately record his time despite being instructed to do so, and there is no other basis to impute knowledge to the employer, there can be no conclusion other than Illinois Bell lacked the requisite knowledge to be held liable on a class-wide basis for post-shift, electronic timesheet entry. *See e.g.*, *Boelk v. AT&T Teleholdings, Inc.*, No. 12-40, 2013 WL 3777251, *7 (W.D. Wis. July 19, 2013) (by failing to record their hours accurately and failing to tell their supervisors or managers about lunch break work, plaintiffs prevented defendants from having actual knowledge of off the clock work); *White v. Baptist Mem'l. Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("When [an] employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA."); *Schremp v. Langlade County*, No. 11-590, 2012 WL 3113177, at *2 (E.D. Wis. July 31, 2012) ("where an employee elects to under-report his or her work time, the employer is not liable for the failure to pay unreported overtime under the FLSA"); *Kellar*, 664 F.3d at 178 (affirming summary judgment when plaintiff "would simply write in her time card that she arrived at the beginning of her scheduled work shift" whenever she forgot to punch in); *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230 (10th Cir. 2012) (affirming summary judgment when plaintiff "chose not to enter" his hours even though "he was required to do so").

Because Plaintiffs cannot establish an essential element of their class claim, i.e., actual or constructive knowledge of alleged unpaid work, summary judgment is proper.

### 3. Plaintiffs Present Insufficient Evidence to Support Their Class Post-Shift Electronic Timesheet Claim.

If the Court does not reject Plaintiffs' class claim for the reasons set forth above, summary judgment remains proper because the evidence shows that Plaintiffs cannot prevail at

trial *as a class*.[13]   Plaintiffs have little more at this stage to support their class-claim than their

own allegations, but "summary judgment is the put up or shut up moment in a lawsuit, when a

party must show what evidence it has that would convince a tier of fact to accept its version of

the events."  *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citations and quotations

omitted).  As discussed above (*supra* pp. 5-6), discovery showed there was no meat to bare-bone

allegations of regular post-shift timesheet entry lasting 15 minutes, or that they were routinely

disciplined for returning to the garage before 3:10 p.m. or for entering time a subsequent day.

Nor do Plaintiffs have actual proof a pervasive computer logjam precluded them from entering

their time by shift end – and, indeed, Johnson's Report (discussed below) proves the contrary.

Plaintiffs have pursued their electronic timesheet entry claim as a class, but because there is no

common proof that entitles them to relief, judgment as a matter of law for Illinois Bell is proper.

The applicable JAM data explained in the Johnson Report also underscores how any

notion that this claim may proceed on a class-wide basis crumbles, as there are multiple reasons

why even apparent unpaid, post-shift JAM submissions would not give rise to liability.

- **The Potentially Recoverable Time Period Should Start in December 2009 and End in May 2011.**

Because Cable Splicers did not start entering their time in JAM until December 2009, the

relevant time period for the class claim must start no earlier than then – thereby automatically

excluding 165 Plaintiffs.  (SOF, ¶ 69).  Further, Plaintiffs should not be entitled to damages

---

[13] Even though Plaintiffs have from the beginning represented the post-shift electronic timesheet entry claim is susceptible to class treatment, following this Court's decertification decision, some 150 individuals who consented to opt into this case have together filed four new lawsuits raising, in part, this electronic timesheet entry claim, including in a 141-plaintiff suit in this District.  *See Tinoco et al. v. Illinois Bell Tele. Co. d/b/a AT&T Illinois*, No. 1:14-cv-1456 (N.D. Ill.); *Anderson et al. v. Illinois Bell Tele. Co. d/b/a AT&T Illinois*, No. 1:14-cv-04025 (C.D. Ill.); *Denny et al. v. Illinois Bell Tele. Co. d/b/a AT&T Illinois*, No. 2:14-cv-02035 (C.D. Ill.); *Ferguson v. Illinois Bell Tele. Co. d/b/a AT&T Illinois*, No. 3:14-cv-00297 (S.D. Ill.).

through the present (or, if applicable, through the end of their employment), as that would countenance Cable Splicers deliberately violating company policy – policies Illinois Bell reiterated throughout this litigation.  These policies are explicit, yet, were there any doubt that employees must report all hours worked, Plaintiffs and their attorneys were on notice of Illinois Bell's position by no later than May 13, 2011 when it responded to Plaintiffs' conditional certification motion and emphasized the company's prohibition of off-the-clock work.  (*See* Dkt. 35, pp. 6-9).  Plaintiffs should not be able to "have their cake and eat it too" by being paid for continuing to disregard company policy, while simultaneously participating in this litigation fully informed of Illinois Bell's position.  This Court should therefore cut off any potential liability at no later than the end of May 2011.[14]

- **Plaintiffs Without "Qualifying Workweeks" Cannot Recover on the Class Claim.**

The FLSA provides for overtime compensation only if an employee works more than 40 hours in a workweek.  *See* 29 U.S.C. § 207(a)(2)(C).[15]  Thus, as reflected in the Johnson Report, eight Plaintiffs who did not work a 40 hour workweek during the applicable period, and 38 Plaintiffs who did not enter time post-shift in a 40-hour week, cannot recover on this claim. (SOF, ¶ 70).

- **Plaintiffs Cannot Recover on the Class Claim for Days in Which They Worked Less Than Eight Hours.**

The question certified for common treatment is whether Plaintiffs had sufficient time upon returning to the garage to complete their timesheets on garage computers.  But if a Cable

---

[14] In addition, for six individuals there are no JAM entries during the applicable time period. (SOF, ¶ 69). Because it would be impossible for them to prove they entered time after their shift (much less that they did so without pay), these individuals could not recover on this claim.

[15] *See also Franks v. MKM Oil, Inc.*, No. 10 CV 00013, 2012 WL 3903782, at *10, n. 9 (N.D. Ill. Sept. 7, 2012); *Brown v. Lulemon Athletica, Inc.*, No. 10 C 05672, 2011 WL 741254, at *4 (N.D. Ill. Feb. 4, 2011); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201-02 (2nd Cir. 2013).

Splicer entered time post-shift on a day in which he or she worked only six hours and had returned to the garage two hours earlier than normal, the late submission hardly could be attributed to any "jam up" problem associated with too many Cable Splicers vying at the same time for a limited number of computers. Thus, those who worked less than eight hours in a day should not qualify for recovery on this claim.

- **The Court Should Exclude Obvious Data Anomalies.**

Some JAM entries ostensibly depict unpaid post-shift electronic time entry, but almost certainly are anomalies. It is safe to conclude Cable Splicers did not have a start time between 12:01 AM and 3:00 AM and then submit their timesheets, on average, more than five hours after the end of their scheduled shifts without reporting this time. (SOF, ¶ 71). The 11 Plaintiffs in this category should be barred from recovering from these occurrences. (SOF, ¶ 71).

- **The Court Should Reject Any Post-Shift Time Entries That Are *De Minimis*.**

Time spent "working" under the FLSA may nonetheless be non-compensable as *de minimis*. *See Sandifer v. US Steel Corp.*, 678 F.3d 590, 593 (7th Cir. 2012), *aff'd*, 134 S. Ct 870 (2014); 29 C.F.R. § 785.47. There are 706 days across 104 Plaintiffs where the timesheets were submitted less than ten minutes after shift end, which the Court should exclude as *de minimis*. (SOF, ¶ 72). *See e.g.*, *Hesseltine v. Goodyear Tire & Rubber Co.*, 391 F. Supp. 2d 509, 519 (E.D. Tex. 2005) ("courts consider daily periods of approximately ten minutes to be *de minimis* as a matter of law"); *Lindow v. US*, 738 F.2d 1057, 1062 (9th Cir. 1984) ("Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable."); *cf. Kellar*, 664 F.3d at 177 (citing *Lindow*; "[Defendant] does not point to any cases that have found that work *exceeding* between 10 and 15 minutes in duration is *de minimis*.") (emphasis added).

13

- **Plaintiffs Cannot Recover for Post-Shift Electronic Timesheet Entries "Offset" by Other Overtime Compensation.**

There are two "offsets" that could preclude recovery for 183 days of post-shift timesheet submissions across 64 Plaintiffs. (SOF, ¶ 73). For 108 of these days, Plaintiffs appear to submit their timesheets at least 10 minutes after the end of their calculated work hours, but in that same week they also appear to submit their timesheet before the end of their recorded overtime on another day by an equal or greater amount of time. (SOF, ¶ 74). In other words, employees in these instances paid themselves overtime by "rounding up" their time in an amount equal or greater to any post-shift submissions on another day. Thus, in these instances, Illinois Bell has already compensated Cable Splicers for any unpaid overtime. For the other 75 days, Plaintiffs appear to submit their timesheets after the end of their recorded work hours, but in that same week they also appear to record more overtime hours than they actually worked due to their CBA's more generous pay treatment. (SOF, ¶ 75). Post-shift timesheet submissions in which the amount of unpaid time at issue was absorbed that week by premium compensation to which Plaintiffs were not otherwise entitled under the FLSA but were paid pursuant to the CBA, should not be considered on the class claim. (SOF ¶¶ 19-21). In effect, they have no damages. *See* 29 U.S.C. ¶ 207(h)(2); *Howard v. City of Springfield*, 274 F.3d 1141, 1145-48 (7th Cir. 2001).

After excising the purported FLSA violations on the bases discussed above, there remain 711 days across 92 Plaintiffs accounting for a total of 607.91 hours of time submitted after the calculated end of shift and overtime. (SOF, ¶ 76) Thus, only 26% of Plaintiffs even *potentially* could recover for only 3.8% of all applicable days in the data (SOF, ¶ 76) and cannot thereby sustain this class claim. When almost three-quarters of the class cannot establish liability, there can be no dispute that this claim pursued as a class fails.

\*     \*     \*     \*     \*

14

If the Court does not grant summary judgment, Defendant submits that it is evident that whatever claims do remain cannot be addressed on a class basis and therefore should be decertified and dismissed. Ascertaining why these 92 Plaintiffs did not enter time by shift end would require individualized analyses, not representative testimony or common proof. For example, the "start" and "end" times on JAM which depict a Cable Splicer's shift is automatically populated from whatever was included from the previous JAM submission. (SOF, ¶ 77). There are 333 days that have scheduled start times between 5:00 a.m. and 6:30 a.m. rather than 7:00 a.m. to 3:30 p.m.; if these start times are incorrect, it could suggest post-shift time entry that did not take place. (SOF, ¶ 78).[16] Likewise, for the 120 days where the JAM data suggest timesheets submitted more than one hour after the end of time worked, if the start times are incorrect, it would affect when the end of shift is calculated. (SOF, ¶ 79).[17] It would not be possible to determine what caused these occurrences without case-by-case investigation.

## V.     CONCLUSION

For the reasons set forth above, the Court should grant Illinois Bell's Motion and enter summary judgment for Defendant on Plaintiffs' post-shift, electronic timesheet entry claim.

Respectfully submitted,

Illinois Bell Telephone Company.

By: /s/ Gregory P. Abrams_____

---

[16] For example, in July 2010 Wallace Edwards had a scheduled shift start time of 6:00 AM and his calculated end of shift time was 2:30 PM. During this month he always submitted his timesheet before the calculated end of his shift, never later than 2:23 PM. Then, in August 2010, Mr. Edwards has seven days where he submits his timesheet after the calculated end of his shift. For these days, Mr. Edwards's scheduled shift start time is still 6:00 AM and his calculated end of shift time is still 2:30 PM. However, on these days he submits his timesheet between 3:07 PM and 3:18 PM. It is possible that Mr. Edwards's actual shift start time changed from 6:00 AM to 7:00 AM for some days, but this change in schedule was not reflected in the JAM records. (SOF, ¶ 78).

[17] For example, on September 21, 2010, Ernest Roberts had a scheduled start time of 7:00 AM. He recorded eight hours of time worked and his calculated end of shift time was 3:30 PM. However, he submitted his timesheet at 9:12 PM, more than 5.7 hours after the calculated end of his shift. (SOF, ¶ 79).

One of its attorneys

George A. Stohner (*pro hac vice*)
Morgan, Lewis & Bockius LLP
300 South Grant Ave., Twenty-Second Floor
Los Angeles, California  90071-3132
213-612-2500
1111 Pennsylvania Ave., NW
Washington DC 20004
202-739-3000
gstohner@morganlewis.com

Gregory P. Abrams
Rita Srivastava
Morgan, Lewis & Bockius, LLP
77 W. Wacker Drive
Chicago, Illinois 60601
312-324-1000
gabrams@morganlewis.com
rsrivastava@morganlewis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on May 9, 2014 a true and correct copy of the foregoing document was served by electronic means through the Court's ECF System to:


Aaron Maduff
Michael Maduff
Walker Lawrence
Maduff & Maduff LLC
205 North Michigan Avenue
Suite 2050
Chicago, IL 60601
312-276-9000
ABMaduff@madufflaw.com
MLmaduff@madufflaw.com
WRLawrence@madufflaw.com


/s/ Gregory P. Abrams

17