## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BLAKES, *et al.*, for themselves and on behalf of similarly situated others, | ) ) ) | No. 11 CV 336 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| ILLINOIS BELL TELEPHONE COMPANY, d/b/a AT&T Illinois, | ) ) ) | |
| | ) | January 9, 2015 |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

James Blakes, Steven Clark, Herman Deckys, Bradley Hunt, Phillipe Porter, Ernest Roberts, Jr., Larry Williams, and a class of opt-in plaintiffs (collectively, "the plaintiffs") brought this action against Illinois Bell Telephone Company ("Illinois Bell") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, claiming that Illinois Bell systematically fails to pay its cable splicers for all of their overtime work. The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 21). This court previously granted in part and denied in part Illinois Bell's motion to decertify the plaintiffs' conditionally certified class of cable splicers, (R. 233), and Illinois Bell has now moved for summary judgment on both the individual and certified claims pursuant to Federal Rule of Civil Procedure 56, (R. 257 to 283). Having already decided Illinois Bell's summary judgment motions regarding the individual claims in a prior decision, (R. 355), this court now turns to

Illinois Bell's motion as to the plaintiffs' certified claim. For the following reasons, Illinois Bell's motion for summary judgment on the certified claim is denied:

## Background

### A.    Local Rule 56.1

As an initial matter, the court notes that there are instances in the parties' Local Rule ("L.R.") 56.1 statements and responses in which the cited record evidence does not actually contradict the stated fact. For example, the plaintiffs attempt to "dispute" many of Illinois Bell's facts but fail in some instances to cite evidence actually demonstrating the dispute. (See, e.g., R. 348, DSOF ¶¶ 19, 26, 30-31.)[1] The plaintiffs also state in some of their responses that they deny the implications of a listed fact, (see, e.g., id. ¶¶ 11, 14, 19, 25-26, 37), but arguing over the possible implications stemming from an otherwise undisputed fact does not render that fact in dispute, *see Sommerfield v. City of Chi.*, No. 08 CV 3025, 2013 WL 4047606, at *2 (N.D. Ill. Aug. 9, 2013). To the extent these facts are not properly disputed, the court deems them admitted. Furthermore, where the plaintiffs include additional facts in their responses that do not bear on whether a dispute exists as to the fact listed by Illinois Bell, these facts should instead have been listed in the plaintiffs' statements of additional facts. (See, e.g., R. 348, DSOF ¶¶ 10-11, 22, 28); *see Sommerfield*, 2013 WL 4047606, at *2. That said, many of the facts the plaintiffs assert in their responses also are set forth in their own

---

[1] "DSOF ¶ __" refers to Illinois Bell's L.R. 56.1(a)(3) Statement of Material Facts, along with the plaintiffs' responses. "PSOF ¶ __" refers to the plaintiffs' L.R. 56.1(b)(3)(C) Statement of Additional Facts, along with Illinois Bell's responses.

responding statement of material facts, and thus are before the court. *See Rasic v. City of Northlake*, No. 08 CV 104, 2009 WL 3150428, at *3 (N.D. Ill. Sept. 25, 2009).

## B. Facts

Because the court has set forth this case's factual background in its prior decisions, *see Blakes v. Ill. Bell Tel. Co.*, No. 11 CV 336, 2013 WL 6662831, at *2-4 (N.D. Ill. Dec. 17, 2013); *Blakes v. Ill. Bell Tel. Co.*, No. 11 CV 336, __F. Supp. 3d.__, 2014 WL 6978813, at *2-3 (N.D. Ill. Dec. 10, 2014), only a summary of the facts relevant to the specific issues raised by the current motion will be repeated here. Unless otherwise indicated, the following undisputed facts are taken from the parties' L.R. 56.1 statements and will be viewed, as they must be at this stage, in the light most favorable to the plaintiffs. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Defendant Illinois Bell is one of the largest providers of local telephone services in Illinois. (R. 348, DSOF ¶ 2.) The plaintiffs are non-exempt employees who work or have worked for Illinois Bell as cable splicers, and whose primary duties include installing, maintaining, and repairing Illinois Bell's network of cable, fiber optics, and telephone services. (Id. ¶ 1; see R. 11, Am. Compl. ¶ 10.) Illinois Bell's official policies regarding compensation and time-reporting are set out in code of conduct and employee "expectations" documents, and also are codified in a collective bargaining agreement ("CBA") with the cable splicers' union. (See R. 348, DSOF ¶¶ 18-25.) These policies state that employees should accurately report all hours worked and that any overtime must be approved by a supervisor in advance.

(Id. ¶¶ 22, 24-25.) The policies also provide that all overtime hours worked by employees must be paid regardless of whether they were pre-approved, and managers are prohibited from "requiring or permitting nonexempt employees to work 'off the clock.'" (Id. ¶ 22.) Overtime hours include any time worked in excess of eight hours a day or forty hours a week. (Id. ¶ 20.) The plaintiffs generally agreed that they were familiar with these policies. (See, e.g., id. ¶¶ 26-28, 30-31, 36.)

Before December 2009, cable splicers used paper timesheets to record their time. (Id. ¶ 8.) Beginning in December 2009, Illinois Bell introduced electronic time reporting as part of its Jobs Administration Management System ("JAMS"), and since then most cable splicers have been entering their time using computers located in their garages. (See id. ¶¶ 5-6.) Once a technician submits his or her time, it is sent to a manager for review. (See id. ¶ 11.) If the record is approved, the time is loaded into "eLink," Illinois Bell's system for calculating pay. (See id.) The time submissions that supervisors review do not include a timestamp, aside from the date, indicating when the technician submitted his or her time. (Id. ¶¶ 12-13.)

Illinois Bell compensates cable splicers for inputting their timesheets both during and after their shifts, provided that they report any overtime spent doing so. (R. 353, PSOF ¶ 1.) A company manual explains that entering information in JAMS is considered time worked and that Illinois Bell attempts to capture and pay for such work. (Id. ¶ 2.) An Illinois Bell employee expectations document from 2008 also states that cable splicers were expected, based on workload, to return to their

garages no earlier than 15 minutes before the end of their scheduled shifts. (See id. ¶¶ 10-12.) A similar document from 2011 specifies that technicians should return no earlier than 10 minutes before the end of their shifts, based on workload. (Id. ¶ 13.) Records show that some of the plaintiffs were "coached" about returning to their garage too early, although the parties dispute whether such "counseling" was disciplinary in nature. (Id. ¶ 16.)

Certain plaintiffs testified that they told their managers about not having enough time at the end of the day to enter their time into JAMS. (Id. ¶ 17.) Several plaintiffs also stated that during the relevant time period, the garages where they worked did not have enough computers for technicians to complete their timesheets before the end of their shifts. (Id. ¶ 23.) They testified that on some occasions the computers were slow and would freeze, making it difficult for them to complete their timesheets. (Id. ¶ 24.) Illinois Bell presents declarations from managers denying knowledge of any complaints about insufficient time to complete timesheets, (id. ¶ 17), but two managers admitted that there may have been occasions when computer terminals were unavailable or when the computer system was running slowly, (see id. ¶ 21).

Some plaintiffs further testified that they were instructed not to record any overtime for time they spent inputting timesheets after their shifts. (Id. ¶ 18.) While Illinois Bell admits its managers told cable splicers that timesheets should be completed the same day that work was performed, (see id. ¶ 25), it also presents managers' declarations stating that when technicians asked them about staying

late to complete timesheets, the managers told them to either record overtime or input their time the following day, (see id. ¶ 18). Indeed, many of the plaintiffs testified that when they did report overtime they were paid for it, (see, e.g., R. 348, DSOF ¶¶ 29, 32-35, 37), and that on some occasions they submitted their time the following morning, (id. ¶¶ 46-53).

## Analysis

### A.    Summary Judgment Standard

This court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Illinois Bell bears the initial burden of informing the court of the basis for its motion, but once a proper motion has been made, the plaintiffs cannot rest upon mere allegations or denials, but must present affirmative evidence setting forth specific facts to show the existence of a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson*, 477 U.S. at 247-48, 257. Reasonable inferences drawn from the facts will be viewed in the plaintiffs' favor, but they are not entitled to the benefit of inferences "that are supported by only speculation or conjecture." *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation omitted).

B.     **Compensability of Time**

The heart of the plaintiffs' certified claim is their assertion that Illinois Bell's restrictions governing when they can return to their garages, their managers' instructions, and a shortage of functioning computers often caused the plaintiffs to perform off-the-clock work entering their time post-shift.  (R. 11, Am. Compl. ¶¶ 27-30.)  But before reaching the substance of the plaintiffs' claim, the court must first address Illinois Bell's contention that the alleged unpaid time is not compensable under the FLSA as a matter of law.

While the FLSA requires employers to "pay their employees a wage for all the 'work' that they do[,]" *Spoerle v. Kraft Foods Global Inc.*, 527 F. Supp. 2d 860, 862 (W.D. Wis. 2007) (citing 29 U.S.C. §§ 206, 207), not all work-related activities are compensable, *see Musch v. Domtar Indus.*, 587 F.3d 857, 859 (7th Cir. 2009).  Under the Portal-to-Portal Act of 1947 ("PPA"), employers are not required to pay employees for time spent performing "preliminary" or "postliminary" activities occurring "either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  *See* 29 U.S.C. § 254(a)(2).  As the Supreme Court recently explained, an activity is only compensable under PPA Section 254(a)(2) if it is "integral and indispensable" to the principal activities an employee is employed to perform, and meeting this test for compensability does not necessarily turn on whether the activity is required by, or done for the benefit of,

the employer.  *See Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517, 519 (2014).

Illinois Bell argues that completing electronic timesheets is a non-compensable postliminary activity because cable splicers "were hired to splice cable, not fill out timesheets after their productive work ended." (R. 277, Def.'s Mem. at 7 (citations omitted).) Illinois Bell also points to Department of Labor regulations stating that "checking in and out and waiting in line to do so" are considered preliminary or postliminary under the PPA. *See* 29 C.F.R. §§ 790.7(g), 790.8(c).[2] The plaintiffs respond by contending that entering information into JAMS is an "integral and indispensable" part of a cable splicer's job because Illinois Bell uses that information for more than just timekeeping. (See R. 347, Pls.' Opp. at 6-7.)

But the plaintiffs' more persuasive argument is that even if timesheet entry is considered a postliminary activity, Section 254(a)(2) of the PPA does not apply once the activity in question is compensable by "custom or practice." 29 U.S.C. § 254(b)(2). In other words, the plaintiffs are entitled to be paid for entering their time, a task which might normally be non-compensable under the PPA, if Illinois Bell did in fact pay them for doing so as a custom or practice. *See id.*; *Nichols v. Chi.*, 789 F. Supp. 1438, 1445 (N.D. Ill. 1992). The record shows, and Illinois Bell does not dispute, that cable splicers are compensated for time spent completing timesheets both during and outside of their shifts, provided that cable splicers

---

[2] Although the Department of Labor's interpretive regulations do not have the force of binding law, courts may rely on them as "persuasive evidence both of Congress's legislative and the Secretary [of Labor]'s regulatory intent." *Howard v. City of Springfield*, 274 F.3d 1141, 1146 (7th Cir. 2001).

record their overtime. (R. 353, PSOF ¶ 1.) In fact, Illinois Bell's own manual states that timesheet completion is "work" that should be compensated. (Id. ¶ 2.) Such evidence indicates that in this case, timesheet completion is compensable under Section 254(b)(2) of the PPA.

Other courts' analyses of "custom or practice" in similar contexts further support this conclusion. For example, in *Curry v. Kraft Foods Global, Inc.*, No. 10 CV 1288, 2012 WL 104626 (N.D. Ill. Jan. 12, 2012), the court first noted that a long-standing custom or practice may ripen into an implied term of a CBA. *See id.*, 2012 WL 104626, at *5 (citing *United Food & Commer. Workers, Local 1546 v. Illinois-American Water Co.*, 569 F.3d 750 (7th Cir. 2009)). Applying Section 203(o) of the FLSA, which allows unions and employers to bargain to exclude time spent changing clothes from compensable time, the court then found that the plaintiffs were not entitled to compensation because the parties had developed a custom and practice of non-payment over an extended period of time. *Id.*, 2012 WL 104626, at *6 (citing 29 U.S.C. § 203(o)). Similarly in *Marshall v. Amsted Rail Co.*, 817 F. Supp. 2d 1066, 1071 (S.D. Ill. 2011), the court found that under Section 203(o) of the FLSA, non-payment for donning and doffing protective gear was a custom or practice because the unions acquiesced to not getting paid. In another analogous case involving employees' eligibility under the Family Medical Leave Act ("FMLA"), a court in this district found that even though the plaintiffs would have failed to meet the hours-of-service requirement under the FMLA's plain language, they were nonetheless FMLA eligible under the parties' established custom or practice

because the employer had been crediting what was otherwise non-creditable time since at least 1997. *See Maples v. Ill. Bell Tel. Co.*, 594 F. Supp. 2d 937, 943-45 (N.D. Ill. 2009).

Applying the reasoning in these cases to the situation here, Illinois Bell's long-standing acquiescence to paying cable splicers for recording their time evidences a custom and practice of compensating for that time. Illinois Bell has willingly paid its cable splicers for time spent completing electronic timesheets, and continues to do so despite its current position that such time is "postliminary." In fact, it appears that Illinois Bell's policy has been to compensate for timesheet entry, even if done post-shift, for at least as long as electronic time entry has been in place. (See R. 353, PSOF ¶¶ 1-2.) Thus under Section 254(b)(2) of the PPA, Illinois Bell's custom and practice of paying technicians for inputting JAMS information obligates the company to compensate for that time, even if it would otherwise be non-compensable.

Illinois Bell attempts to avoid this result by citing to *Musch v. Domtar Industries, Inc.*, 587 F.3d 857, 860-62 (7th Cir. 2009), in which the Seventh Circuit found that time spent changing clothes and showering was non-compensable even though the company was willing to pay for these activities if done post-shift due to exposure to hazardous chemicals. However, *Musch* is distinguishable because the court in that case did not address the issue of whether changing and showering were compensable as a custom or practice; rather, the court found those activities were not compensable because the plaintiffs failed to demonstrate that chemical

exposure was so pervasive as to make showering integral or indispensable to their employment. *See id.* at 860-61. The *Musch* court also noted that the plaintiffs did not explain what was insufficient about the employer's policy of only paying them on occasions when a shower was in fact necessary, and that there was "nothing that would stop [an employee] from seeking compensation" in those instances. *Id.* In other words, though the court in *Musch* did not address custom or practice, it appears the employer's practice was to pay only occasionally for time spent showering. *See id.* In contrast, Illinois Bell does not dispute that it is willing to, and has in the past, compensated technicians for any recorded hours spent completing daily timesheets. Furthermore, as will be discussed below, unlike the plaintiffs in *Musch,* the plaintiffs here have submitted evidence that Illinois Bell's payment policies may have been thwarted by its own managers and garage computers. The holding in *Musch* therefore does not compel this court to side with Illinois Bell, and the court finds that any time the plaintiffs spent completing their timesheets post-shift is compensable.

## C.    Knowledge

The court now turns to the heart of the parties' dispute. To prevail on their certified FLSA claim, the plaintiffs must prove that: (1) they worked overtime without compensation; and (2) Illinois Bell knew or should have known of the overtime work. *See Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176-77 (7th Cir. 2011); 29 C.F.R. § 785.11. The court begins its discussion by addressing whether a

genuine dispute exists regarding Illinois Bell's knowledge of the plaintiffs' alleged unpaid post-shift work completing electronic timesheets.

Illinois Bell argues that it neither knew nor should have known that the plaintiffs were entering their time post-shift without compensation on a class-wide basis. (R. 277, Def.'s Mem. at 8.) In support of this position, Illinois Bell points to its policies requiring cable splicers to accurately report their time. (Id. at 8-9.) It also notes that when the plaintiffs did record their overtime, they were always paid for it. (Id. at 9.) As for the plaintiffs' assertions that management knew about their off-the-clock work, Illinois Bell cites to testimony and declarations undercutting the plaintiffs' cited testimony. (Id. at 9.) Lastly, Illinois Bell contends that since a record's time of submission is not displayed on the timesheet when a supervisor reviews it, supervisors would not know from the face of the record if it was entered post-shift. (Id.)

Though at first glance Illinois Bell's arguments seem persuasive, the record indicates otherwise. Even at the decertification stage, this court acknowledged that the plaintiffs had "submitted evidence showing that some cable splicers were specifically told by Illinois Bell management not to report time spent completing JAM paperwork off the clock." *Blakes*, 2013 WL 6662831, at *19. For example, this court noted that plaintiff Kirk Parro testified that he was "told in no uncertain terms that we were not to charge overtime for doing our time sheets." *Id.* (citing R. 217, Ex. 22, Parro Dep. at 65). Another plaintiff testified that working overtime to complete timesheets was "not approved," *id.* (citing R. 217, Ex. 14, Roberts Dep.

at 273-74), and yet another said that when he told his manager he would not have time to finish his timesheet before the end of his shift, his manager told him to "just get it done" and not to take any overtime, *id.* (citing R. 217, Ex. 8, Ericson Dep. at 81-82). The plaintiffs cite those statements again here, and also point to additional declarations and testimony from other plaintiffs stating that they were told not to charge time for completing timesheets. (R. 353, PSOF ¶ 18 (citing R. 350-17, Edwards Decl. ¶ 4; R. 350-8, McKey Dap. at 153-54).)

Illinois Bell nonetheless revisits its decertification arguments and contends that the plaintiffs fail to establish that it had knowledge "on a class-wide basis" that cable splicers were entering time post-shift without compensation. (R. 277, Def.'s Mem. at 8; R. 352, Def.'s Reply at 9-10.) Illinois Bell cites to a few cases in support of its argument, but those cases are distinguishable because they involved isolated incidents of only one or two complaints regarding off-the-clock work. *See Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996) (two employees' complaints about working off-the-clock were only "isolated incidents"); *Caseres v. S & R Mgmt. Co., LLC*, No. 12 CV 1358, 2013 WL 4010894, at *5 (D. Md. Aug. 5, 2013) (plaintiff's one conversation with another employee and occasional after-hours work with a supervisor were "isolated incidents" insufficient to show the employer had notice of off-the-clock work); *see also Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 171-72 (W.D.N.Y. 2007) (whether supervisor instructed employees not to record all of their time was immaterial because there was no evidence the alleged instruction prevented plaintiffs from claiming, and being paid for, all the time they worked). In

another case not cited by Illinois Bell but worth mentioning here, *Boelk v. AT&T Teleholdings, Inc.*, No. 12 CV 40, 2013 U.S. Dist. LEXIS 178476, at *13-14 (W.D. Wis. March 11, 2013), the court held that there was insufficient evidence of "companywide knowledge" to justify certification because there was only evidence that one manager might have known about technicians working through their lunch breaks.  But unlike in *Boelk* and the cases cited by Illinois Bell, here the plaintiffs have submitted evidence that multiple supervisors across several garages instructed them not to report overtime.  (See, e.g., R. 350-4, Parro Dep. at 59, 82 (supervisor Griffith at Orland Park garage); R. 350-17, Edwards Decl. ¶¶ 2-4 (supervisor Vasquez at State Street garage); R. 350-8, McKey Dep. at 153-54 (supervisor Martin); R. 350-11, Ericson Dep. at 80-82 (supervisor Murach); R. 217-4, Ex. 8, Ericson Dep. at 76, 149 (Buffalo Grove garage)); *see also Blakes*, 2013 WL 6662831, at *20 (noting that Illinois Bell's argument that knowledge is an individualized defense is weakened by evidence that several managers "knew cable splicers were working without pay and in some cases affirmatively instructed plaintiffs to work without pay").

Furthermore, since the plaintiffs have presented evidence indicating they were told by supervisors not to record their time spent completing timesheets, Illinois Bell cannot rely on its time-keeping policies to disclaim knowledge.  *See Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1072 (N.D. Ill. 2005); *see also Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 CV 5755, 2004 WL 1882449, *4 (N.D. Ill. Aug. 18, 2004) (employer cannot "escape its responsibility

to pay employees for all time worked by relying solely on the hours reported on employees' time sheets"). Though Illinois Bell did pay its technicians for time they actually reported, the plaintiffs' evidence indicates that Illinois Bell's own management may have had a role in preventing them from accurately recording their time. Illinois Bell cannot deny it had any knowledge of unrecorded time if "certain segments of its management squelched truthful [reporting]." *See Brennan*, 482 F.2d at 827-28. Nor can Illinois Bell disclaim knowledge based on the fact that technicians' timesheets did not display submission timestamps given the evidence that supervisors had other reasons to know that cable splicers were not reporting their time.

Finally, Illinois Bell's evidence rebutting the plaintiffs' assertions does not disprove their testimony, but rather creates a dispute over the credibility of their statements—an issue for a fact-finder to decide. *See Park v. Seoul Broad. Sys. Co.*, No. 05 CV 8956, 2008 WL 619034, at *8 (S.D.N.Y. Mar. 3, 2008) (denying summary judgment because defendants' evidence only undermined the reliability of the plaintiff's allegations, and assessment of credibility is a matter for the jury). To the extent Illinois Bell wishes to challenge the plaintiffs' testimony with its managers' statements denying they knew of any unpaid post-shift work, it can do so at trial. *See also Brennan v. Qwest Commc'ns Int'l, Inc.*, 727 F. Supp. 2d 751, 757 n.6 (D. Minn. 2010) (holding that whether the plaintiffs' own testimonial statements lack substantiation and corroboration is an issue regarding the weight and credibility of the evidence, precluding summary judgment). Accordingly, the court

finds that the plaintiffs have presented sufficient evidence to overcome summary judgment on the issue of whether Illinois Bell had actual or constructive knowledge of their off-the-clock work.

**D.     Performance of Off-The-Clock Work**

Having found that a genuine dispute exists as to Illinois Bell's knowledge, the court now turns to whether the plaintiffs have produced sufficient evidence that they performed unpaid work. *See Anderson*, 328 U.S. at 687; *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008). Illinois Bell argues that the plaintiffs have only "bare-bones" allegations to support their claim of off-the-clock work. (R. 277, Def.'s Mem. at 10-11.) But Illinois Bell's own evidence tracking when technicians submitted their timesheets shows that a significant number of the plaintiffs went unpaid for completing timesheets post-shift. (See id. at 14 ("[T]here remain 711 days across 92 Plaintiffs accounting for a total of 607.91 hours of time submitted after the calculated end of shift and overtime.").) Indeed it was evident even at the decertification stage that at least some of the plaintiffs spent time completing timesheets without pay. *See Blakes*, 2013 WL 6662831, at *19 (noting evidence showing that "at least 20 of 22 cable splicers went unpaid for time spent completing timesheets past their shift" (citing R. 193, Ex. B, Johnson Report, Ex. 5)). Given that Illinois Bell's own expert's report shows that some of the plaintiffs are entitled to compensation, Illinois Bell's argument that it should win summary judgment on the issue of liability is without merit.

Furthermore, not only does Illinois Bell's own evidence indicate that at least some of the plaintiffs performed unpaid work, the plaintiffs have also provided extensive testimony supporting their theory for why they had to work off-the-clock: that frequent and widespread computer log-jams prevented them from completing their timesheets before the end of their shifts. For example, one plaintiff testified that at one point there were only two computers in his garage for as many as 18 technicians. (R. 350-25, Schilling Dep. at 201.) Other plaintiffs testified to similar shortages in their garages. (See, e.g., R. 350-26, Clark Dep. at 23 (about 20 computers for 70 technicians); R. 350-23, Haynes Dep. at 101-02 (approximately 30 computers for 70 technicians); R. 350-8, McKey Dep. at 8 ("Because there were limited computers and multiple technicians . . . you had to [make] a mad dash for the computer."); R. 350-14, Smith Dep. at 139 ("If I get in at 3:10, I would have to sit in line and wait."); R. 350-24, Olmstead Dep. at 317 (two computers for "at least 15 people"); R. 350-27, Deckys Dep. at 280-81 (four computers for "about 30" technicians); R. 350-15, Williams Dep. at 347 (three computers for "30, 40 people").)

Numerous plaintiffs also testified that the computers were slow and often froze, adding another obstacle to timesheet completion. (See, e.g., R. 350-26, Clark Dep. at 23 (had to wait for a computer because "often not all the computers were working" or "the computer would freeze"); R. 350-23, Haynes Dep. at 102 ("[s]ome computers are broken, some don't have a network connection"); R. 350-13, Porter Dep. at 318-19 (waits 10 to 15 minutes on average for a computer, and computer sometimes "gets stuck" for 5 to 10 minutes); R. 350-14, Smith Dep. at 122 ("if you

17

weren't one of the first ones in, then usually the computers would freeze up on you"); R. 350-24, Olmstead Dep. at 318 (computers were "bogged down" and "really slow"); R. 350-4, Parro Dep. at 18 ("computers would quite often go down" and "you might have to reboot them").) In fact, two managers admitted that there may have been occasions when computer terminals were unavailable or when the computer system was running slowly. (R. 36-11, Ex. K, Hill Decl. ¶ 11; R. 36-15, Ex. O, Vasquez Decl. ¶ 11.)

If the plaintiffs had ample time to complete their timesheets before the end of their shifts, such computer issues might not be cause for concern. But Illinois Bell admits that cable splicers were generally expected to return to their garage no earlier than 10 or 15 minutes before the end of their scheduled shift, and its managers confirmed that expectation. (R. 353, PSOF ¶¶ 10-13.) The plaintiffs have also provided evidence that they were disciplined for returning to their garages too early. For example, plaintiff Bradley Hunt testified that he was disciplined for coming back early, (R. 350-10, Hunt. Dep. at 271), and other evidence shows the plaintiffs were "coached" or given "development plans" which included instructions not to return to their garage earlier than 15 or 20 minutes before the end of their shifts, (see, e.g., R. 216, Ex. 38, at ATTBLAKES 020212, ATTBLAKES 002655, ATTBLAKES 020225). Although Illinois Bell contends that such instructions constituted mere "counseling" and not disciplinary action, (R. 353, PSOF ¶ 16), a reasonable jury could conclude based on this evidence that the plaintiffs were effectively limited in the amount of time they had to complete their timesheets.

Illinois Bell asserts that even assuming there were computer shortages or operation issues, technicians could still complete their timesheets the following day. (R. 352, Def.'s Reply at 11; see R. 353, PSOF ¶ 14.) But Illinois Bell admits that its managers told cable splicers that their timesheets should be completed the same day that the work was performed, (see R. 353, PSOF ¶ 25), and one plaintiff testified that his supervisor specifically denied him the option of finishing his timesheet the next day and instructed him not to record any overtime, (R. 350-11, Ericson Dep. at 81-82). This conflicting evidence creates a genuine dispute as to whether the plaintiffs were required to complete their timesheets in the approximately 10 to 20 minutes before the end of their shifts and whether that time period provided a sufficient window to do so.[3] Furthermore, as this court noted in its decertification decision, these are questions that can be answered on a collective basis. *See Blakes*, 2013 WL 6662831, at *19. Even at the decertification stage the plaintiffs' evidence tended to show that "computer shortages or glitches often caused log-jams at garages" and that "the plaintiffs uniformly experienced difficulty getting through the expected tasks between 3:10 and 3:30 p.m." *Id*. As such, Illinois Bell's

---

[3] The complaint alleges that the plaintiffs were not allowed to return to their garages earlier than 20 minutes before the end of their shifts, (R. 11, Am. Compl. ¶ 28), and evidence indicates that some supervisors adhered to that timeframe, (see R. 216, Ex. 38, at ATTBLAKES 020212, ATTBLAKES 002655). However, Illinois Bell's policy documents specify that technicians should return no earlier than 10 or 15 minutes before the end of their shifts. (R. 353, PSOF ¶¶ 10-13.) Because the record is unclear regarding precisely how much time the plaintiffs had to complete their timesheets, this court assumes for current purposes that the plaintiffs had somewhere between 10 and 20 minutes before the end of their shifts to submit their timesheets.

position that there is "no meat" to the plaintiffs' "bare-bones allegations" is simply untenable. (See R. 277, Def.'s Mem. at 11.)

Illinois Bell nonetheless spends a substantial portion of its opening brief listing reasons why, based on its expert's report, even apparent unpaid post-shift timesheet submissions do not give rise to liability. (See R. 277, Def.'s Mem. at 10-15 (citing R. 278-2, Ex. A., Johnson Report).) But Illinois Bell's objections speak more to damages than liability. For example, Illinois Bell contends that much of the class should be excluded because of limits on the relevant time period, failure to meet qualifying workweek and workday requirements, "obvious data anomalies," *de minimis* amounts of overtime worked, and recovery "offsets." (Id.) Turning first to Illinois Bell's *de minimis* argument, the *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes are in dispute. *See Kellar,* 664 F.3d at 176 (citation omitted). When evaluating whether the work performed is *de minimis*, courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording the additional time, the regularity with which the additional work was performed, and the aggregate amount of compensable time. *Id.* (citing *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984); 29 C.F.R. § 785.47).

Illinois Bell asserts that unpaid time from several hundred days' worth of timesheets should be excluded as *de minimis* because the timesheets were submitted less than 10 minutes after the end of the scheduled shifts. But while many courts have held that daily periods of approximately 10 minutes are *de*

*minimis*, (see R. 277, Def.'s Mem. at 13 (citing cases)), other courts have found that "as little as ten minutes of working time goes beyond the level of *de minimis*[,]" *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 928 n.27 (N.D. Ill. 2003) (citing *Reich v. IBP, Inc.,* 38 F.3d 1123, 1126 (10th Cir. 1994)). More importantly, the amount of time spent performing the extra work is only one factor in the determination and the other factors weigh in the plaintiffs' favor. First, there is minimal administrative difficulty in recording the amount of additional time worked because JAMS records when timesheets are submitted and keeps track of each technician's scheduled shifts. Second, regarding the aggregate size of the claim, Illinois Bell's own evidence indicates that at least 92 plaintiffs were not paid for approximately 608 hours spent completing their timesheets post-shift, which is not an insignificant amount. (See R. 277, Def.'s Mem. at 14.) Finally, the record indicates that timesheet completion was generally performed on a daily or almost daily basis. Given the evidence in this case, the court finds that a reasonable jury could conclude that any additional work performed for less than 10 minutes post-shift was not *de minimis*.

As for Illinois Bell's other objections, to the extent any of the plaintiffs' timesheets fall outside of the relevant time period, fail to meet qualifying workweek and workday requirements, contain data anomalies, or are subject to recovery offsets, those instances can be accounted for by excluding them when calculating damages. *See Blakes*, 2013 WL 6662831, at *20 (noting that damages issues "can be parsed out as the case approaches the trial stage"). Indeed, resolution of such

21

issues is inappropriate at the summary judgment stage because genuine disputes exist as to whether these categories of the plaintiffs should be excluded at all. For instance, the plaintiffs admit that if a cable splicer stopped working at Illinois Bell before December 2009 when electronic time-keeping was implemented, he or she should be excluded from the collective. (R. 348, DSOF ¶ 69.) But the plaintiffs dispute whether the 165 plaintiffs for whom there is no JAMS data after December 2009 should automatically be excluded as Illinois Bell contends, because the plaintiffs assert that the JAMS data is incomplete. (See id.) More specifically, the plaintiffs point out that 21 class members show a termination date after December 2009, yet their JAMS data is not included in the record. (Id.) The parties also disagree about how a "qualifying" workweek or workday should be determined, how to treat alleged "anomalies" in the data, and whether Illinois Bell is entitled to offsets against any overtime owed. (See R. 277, Def.'s Mem. at 12-15; R. 347, Pls.' Opp. at 10-14; R. 348, DSOF ¶¶ 71, 73-75.) These are all determinations better suited for trial, in large part because they will likely involve delving into expert report methodologies and sifting through large amounts of data. *See United States v. Honeywell Int'l, Inc.*, 542 F. Supp. 2d 1188, 1201 (E.D. Cal. 2008) ("The calculation of damages is not ordinarily amenable to resolution at the summary judgment stage" and "Rule 56 clearly contemplates a full hearing on the question of damages."); *see also Anderson*, 477 U.S. at 255 (recognizing that a court may deny summary judgment when there is reason to believe that the better course would be to proceed to a full trial on the issue). Accordingly, this court finds it inappropriate

to resolve Illinois Bell's objections and defenses regarding class exclusions at the summary judgment stage and will address these issues leading up to or during trial as necessary.

## Conclusion

For the foregoing reasons, Illinois Bell's summary judgment motion on the plaintiffs' certified claim is denied in its entirety.

**ENTER:**


_____
**Young B. Kim**
**United States Magistrate Judge**